UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMMA GOIDEL, on behalf of herself and all
others similarly situated,

                *Plaintiff*,

    -against-

AETNA INC.;

               *Defendant*.

**CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

      1.    Plaintiff Emma Goidel, by and through her attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP and the National Women's Law Center, on behalf of herself and others similarly situated, for her Complaint alleges, upon personal knowledge as to herself and information and belief as to other matters, as follows:

### PRELIMINARY STATEMENT

      2.    This class action challenges Aetna's discriminatory health insurance policy that, on its face, engages in sex discrimination by denying LGBTQ (lesbian, gay, bisexual, transgender, queer, intersex, or non-binary) individuals equal access to fertility treatment.

      3.    Plaintiff Emma Goidel and her spouse, like many LGBTQ individuals, want to have children. And, like many LGBTQ individuals, Ms. Goidel cannot conceive through intercourse with her partner and can become pregnant only through fertility treatments such as intrauterine insemination ("IUI") and in vitro fertilization ("IVF").

      4.    Ms. Goidel and her spouse are enrolled in Aetna's Student Health Plan for Columbia University ("the Policy"), which provides broad coverage for IUI and IVF.

5.      Aetna's Policy provides immediate coverage, without any out-of-pocket cost, to individuals based on their representation that they have not gotten pregnant after having unprotected sex for 12 months.

6.      But Aetna's same Policy requires individuals who cannot conceive through intercourse due to their sexual orientation or gender identity to pay *out of pocket* for 12 cycles of IUI *before* Aetna will provide them with coverage for fertility treatments.

7.      Because of Aetna's Policy, Ms. Goidel and her spouse, and all other similarly situated LGBTQ individuals, have been forced to pay tens of thousands of dollars out of pocket—in Ms. Goidel's case, nearly $45,000 for one successful pregnancy—that others are not required to pay in order to become pregnant.

8.      Aetna's Policy language openly discriminates against Plaintiff and other LGBTQ individuals based on their sexual orientation and gender identity and violates their rights under Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

9.      Aetna's discriminatory Policy is an illegal tax on LGBTQ individuals that denies the equal rights of LGBTQ individuals to have children.

10.      At best, these individuals incur great costs due to Aetna's Policy language.

11.      At worst, these exorbitant costs are prohibitive and entirely prevent people who are unable to shoulder them—disproportionately LGBTQ people of color—from becoming pregnant and starting a family.

12.      In addition to financial injury, Aetna's Policy has caused Ms. Goidel and other LGBTQ individuals to suffer significant physical and emotional harm.

13.     Aetna's discrimination is deliberate. It has continued to enforce this discriminatory Policy against Ms. Goidel and other LGBTQ individuals despite the passage of Section 1557, despite the clear definition of sex discrimination under federal and state law to include LGBTQ individuals, and despite being specifically informed by the New York State agency that regulates Aetna and other health insurance issuers that such health insurance policies constitute illegal discrimination on the basis of gender identity and sexual orientation.

14.     Plaintiff brings this case now, on behalf of herself and all others who are unable to conceive through intercourse due to their sexual orientation or gender identity, to end Aetna's willful disregard of federal and state nondiscrimination law by prohibiting Aetna from implementing and enforcing this discriminatory policy in its New York student health plans.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under 28 U.S.C. § 1331. This action arises under 42 U.S.C. § 18116(a).

16.     This Court has supplemental jurisdiction over the pendent state and city law claims under 28 U.S.C. § 1367(a).

17.     The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court under 28 U.S.C. § 1391(b).

## THE PARTIES

18.     Plaintiff **EMMA GOIDEL** is a 31-year-old woman and is a citizen of the United States. At all relevant times, Ms. Goidel has been a resident of New York State, and she has had health insurance provided through the Columbia University student health plan supplied and administered by Aetna, Inc.

19.     Defendant **AETNA INC.** ("Aetna") is a company incorporated under the laws of the State of Connecticut and whose principal place of business is in Hartford,

3

Connecticut. Aetna is an insurance provider that supplies and administers health insurance plans for educational institutions, employers, and individuals in New York State. Aetna operates its business throughout the United States, including in the State of New York.

20.     Aetna receives federal financial assistance including through credits, subsidies, and/or contracts of insurance. For example, Aetna provides coverage of medical services in exchange for payments through Medicaid. At all relevant times, Aetna has provided and administered student health plans for all Columbia University students, spouses, and dependents, throughout all Columbia University schools, who choose to enroll in health insurance through the university. Aetna also provides and administers student health plans for numerous other colleges and universities in the State of New York.

## FACTUAL ALLEGATIONS

### I.     Aetna's Discriminatory Policy

21.     Since May of 2019, Ms. Goidel and her spouse have been enrolled in the Policy.[1]

22.     At all relevant times, Ms. Goidel's spouse was a Columbia University student, and Ms. Goidel was enrolled under the Policy as her spouse's dependent.

23.     Under the Policy, Aetna covers "services for the diagnosis and treatment (surgical and medical) of infertility" for enrollees between the ages of 21 and 44 (inclusive).

24.     "Infertility" is defined under the Policy as:

> a disease or condition characterized by the incapacity to impregnate another person or to conceive, defined by the failure to establish a clinical pregnancy *after 12 months of regular, unprotected sexual intercourse or therapeutic donor insemination*, or after six (6) months of regular, unprotected sexual

---

[1] *See* Aetna, Aetna Student Health Plan Design and Benefits Summary: Columbia University, Policy No. 704502 (Policy Year 2020–2021), https://www.aetnastudenthealth.com/schools/columbia/pdbs2021.pdf.

intercourse or therapeutic donor insemination for a
female 35 years of age or older.

25.     This means that there are only two ways to meet Aetna's definition of
infertility for those under age 35: (1) "12 months of regular, unprotected sexual intercourse" or
(2) 12 months of "therapeutic donor insemination" (e.g., IUI[2]). For those age 35 and over, the
same conditions apply, but the number of months is reduced to 6.

26.     Under this Policy, an individual who has the capacity to become pregnant
through sexual intercourse with their partner can demonstrate infertility by simply representing
to Aetna that they have had 12 or 6 months, depending on their age, of "regular, unprotected
sexual intercourse" without a pregnancy.

27.     Aetna imposes no out-of-pocket cost for such individuals to meet Aetna's
definition of infertility.

28.     But for Ms. Goidel and other LGBTQ individuals, the only way to meet
Aetna's definition of infertility is to pay for 12 or 6 months of IUI, depending on their age.

29.     Aetna therefore imposes significant out-of-pocket costs on such LGBTQ
individuals that it does not impose on others before allowing LGBTQ individuals to qualify for
Aetna's insurance coverage for fertility treatment.[3]

30.     Once a member qualifies for coverage under the Policy, Aetna covers
"basic infertility services."

---

[2] Intrauterine insemination ("IUI") "is a procedure that places sperm past the cervix and in a woman's uterus around
the time of ovulation." *Intrauterine Insemination (IUI)*, Am. Soc'y for Reprod. Med.,
https://www.reproductivefacts.org/news-and-publications/patient-fact-sheets-and-booklets/documents/fact-sheets-
and-info-booklets/intrauterine-insemination-iui/ (last revised 2016).
[3] For purposes of this complaint, the terms "fertility" services or treatment and "infertility" services or treatment will
be used interchangeably. Plaintiff seeks equal access to services that will enable her to get pregnant, which she will
refer to as fertility services or treatments, but those services are defined by Aetna to be "infertility" services or
treatments as part of its infertility program.

31.     "Basic infertility services" include testing and evaluation services such as "[i]nitial evaluation," "[l]aboratory evaluation," "[e]valuation of ovulatory function," "[e]ndometrial biopsy," "[p]elvic ultra sound," "[h]ysterosalpingogram," "[s]ono-hystogram," and "[b]lood tests."

32.     Under the Policy, if basic infertility services do not result in increased fertility, Aetna covers "comprehensive infertility services."

33.     "Comprehensive infertility services" include "[o]vulation induction and monitoring," "[p]elvic ultrasound," "[a]rtificial insemination,"[4] "[h]ysteroscopy," "[l]aparoscopy," and "[l]aparotomy."

34.     Under the Policy, Aetna also covers "advanced infertility services" for those who demonstrate "infertility." The Policy does not set forth any other prerequisites for coverage of advanced infertility services.

35.     "Advanced infertility services" include "[t]hree (3) cycles per lifetime of in vitro fertilization,"[5] "[g]amete intrafallopian tube transfers or zygote intrafallopian tube transfers," "[c]osts for an ovum donor or donor sperm," "[s]perm storage costs in connection with in vitro fertilization," and "[c]ryopreservation and storage of embryos in connection with in vitro fertilization."

---

[4] "Artificial insemination" includes "intra-uterine insemination [IUI]." Aetna, Infertility, Clinical Policy Bulletin No. 0237 at Sec. IV.A. (last reviewed Oct. 27, 2020), http://www.aetna.com/cpb/medical/data/300_399/0327.html
[5] In vitro fertilization ("IVF") is "method of assisted reproduction that involves combining an egg with sperm in a laboratory dish. If the egg fertilizes and begins cell division, the resulting embryo is transferred into the woman's uterus where it will hopefully implant in the uterine lining and further develop." *In Vitro Fertilization (IVF)*, Am. Soc'y for Reprod. Med., https://www.reproductivefacts.org/topics/topics-index/in-vitro-fertilization-ivf/ (last visited Aug. 17, 2021).

## II.    As a Same-Sex Couple, Ms. Goidel and Her Partner Need Fertility Treatments to Become Pregnant and Have Their First Child.

36.    Ms. Goidel and her partner have long planned for a family with a total of four children.

37.    Because Ms. Goidel cannot conceive through sexual intercourse with her partner, she requires fertility treatments, specifically IUI and/or IVF, to get pregnant for all their children.

38.    In 2018, Ms. Goidel and her spouse decided to start their family.

39.    Ms. Goidel and her partner were not covered by Aetna's Policy at that time.

40.    As a result of fertility treatments they obtained, Ms. Goidel successfully became pregnant and gave birth to their first child in the summer of 2019.

## III.    Aetna Repeatedly Denies Coverage to Ms. Goidel for Her Second Pregnancy Based on its Discriminatory Policy.

41.    Since May of 2019, Ms. Goidel and her partner have been covered by Aetna's Policy, and they will remain enrolled in the Policy until at least December 2022.

42.    In 2020, Ms. Goidel and her spouse decided to start pursuing fertility treatments for Ms. Goidel to become pregnant again and have their second child.

43.    In September 2020, in advance of attempting any IUI cycles, Ms. Goidel's doctor submitted a claim to Aetna for preauthorization for six cycles of IUI under the Policy.

44.    A representative from Aetna called Ms. Goidel to determine her eligibility for enrollment in the infertility program under the Policy.

45.    On September 21, 2020, Aetna formally denied Ms. Goidel's enrollment in the infertility program, and thus coverage of the IUI services, because she had not

demonstrated that she was "unable to get pregnant after egg and sperm contact by either: (1) frequent, unprotected sex or (2) ***donor insemination if there is no male partner*** for at least (a) one year at any age, or (b) six months if older than 35."

46.     Aetna's denial letter stated that in making its denial decision, it used Aetna's Clinical Policy Bulletin ("CPB") Criteria for Infertility. The CPB states that

> a member is considered infertile if he or she is unable to conceive or produce conception after ***1 year of frequent, unprotected heterosexual sexual intercourse***, or 6 months of frequent, unprotected heterosexual sexual intercourse if the female partner is 35 years of age or older. ***Alternately, a woman without a male partner*** may be considered infertile if she is unable to conceive or produce conception after ***at least 12 cycles of donor insemination*** (6 cycles for women 35 years of age or older).[6]

47.     As a result of Aetna's discriminatory denial of coverage, Ms. Goidel and her partner had to pay up front and out of pocket for fertility treatments.

48.     In the fall of 2020, Ms. Goidel attempted two IUI cycles.

49.     Ms. Goidel paid a total of $8,939 out of pocket for these two IUI cycles.

50.     The costs for IUI treatment include payments for donor sperm, payments to the fertility clinic for IUI treatments, and payments for prescription medications used as part of the IUI process.

51.     The first attempt in September was unsuccessful.

52.     On the second attempt in October, Ms. Goidel became pregnant, but she then experienced a miscarriage and lost that pregnancy.

53.     Ms. Goidel took a month off to recover physically and emotionally from the miscarriage.

---

[6] Aetna, Infertility, Clinical Policy Bulletin No. 0237 (last reviewed Oct. 27, 2020), http://www.aetna.com/cpb/medical/data/300_399/0327.html.

54.     In February 2021, Ms. Goidel attempted her third IUI cycle.

55.     Ms. Goidel paid another $5,169 for this third IUI cycle.

56.     Her third IUI attempt was not successful, and she did not become pregnant.

57.     In March 2021, Ms. Goidel appealed Aetna's September 2020 denial of preauthorization for six IUI cycles.

58.     In her appeal, Ms. Goidel explicitly stated that Aetna's denial of coverage discriminated against her on the basis of her sexual orientation. Ms. Goidel called Aetna's attention to a directive from the state agency that regulates Aetna, the New York Department of Financial Services ("DFS").

59.     DFS had just issued a bulletin in February 2021 making explicit that an insurance policy requiring LGBTQ+ individuals to pay out of pocket as a precondition for fertility treatments constitutes discrimination under N.Y. Ins. Law §§ 3221 and 4303.

60.     DFS's directive specifically noted:

> It has come to the Department's attention that some issuers
> may be requiring some individuals to incur costs, due to
> their sexual orientation or gender identity, that heterosexual
> individuals do not incur in order to meet the definition of
> infertility. In particular, some issuers have denied coverage
> of basic infertility treatments, such as intrauterine
> insemination procedures, for some individuals who are
> unable to conceive without such treatment due to their
> sexual orientation or gender identity. These individuals
> may incur the high costs of basic infertility treatments for
> up to 12 months to demonstrate infertility in order to
> qualify for insurance coverage due to their sexual
> orientation or gender identity. This results in unfair
> discrimination for individuals due to their sexual

orientation or gender identity, which is prohibited by
Insurance Law §§ 3221(k)(6)(C)(viii) and 4303(s)(3)(H).[7]

61.     DFS's directive ordered that insurance "issuers must provide immediate

coverage for basic infertility treatments (e.g., intrauterine insemination procedures) that are

provided to individuals covered under an insurance policy or contract who are unable to conceive

due to their sexual orientation or gender identity in order to prevent discrimination."[8]

62.     In March 2021, Ms. Goidel attempted her fourth IUI cycle.

63.     Her fourth IUI attempt was unsuccessful, and Ms. Goidel did not become

pregnant.

64.     At this point, Ms. Goidel's doctor raised the possibility of using IVF

instead of IUI because it would have a greater chance of success.

65.     Because of Aetna's discriminatory Policy, Ms. Goidel and her partner

were faced with a choice: pay the steep out-of-pocket cost for a single cycle of IVF (with an

increased chance of success) or continue paying the lower per-cycle out-of-pocket costs for

additional rounds of IUI (with a decreasing rate of success).

66.     At this point, Ms. Goidel and her spouse decided to try one more round of

IUI because IVF was significantly more expensive, and Aetna refused to pay for any of these

treatments.

67.     In April 2021, Ms. Goidel attempted her fifth IUI cycle.

68.     Her fifth IUI attempt was unsuccessful, and Ms. Goidel did not become

pregnant.

---

[7] Lisette Johnson, Ins. Circular Letter No. 3, *Health Insurance Coverage of Infertility Treatments Regardless of Sexual Orientation or Gender Identity*, N.Y. Dep't of Fin. Servs. (Feb. 23, 2021), https://www.dfs.ny.gov/industry_guidance/circular_letters/cl2021_03.
[8] *Id.*

69.     Ms. Goidel paid a total of $8,454.98 for these two treatment cycles.

70.     On April 19, 2021, Aetna sent Ms. Goidel a final appeal determination upholding its September 2020 denial. The letter again referenced the CPB and stated that Ms. Goidel did not meet the criteria of being "unable to get pregnant after egg and sperm contact by either: (1) frequent, unprotected sex of (2) donor insemination if there is no male partner for at least (a) one year at any age, or (b) six months if older than 35."

71.     On April 20, 2021, Aetna sent a separate letter responding to Ms. Goidel's allegation of discrimination. The letter did not explain how Aetna's Policy was not discriminatory and did not address the recent DFS directive. It summarily stated that it was "guided by its Clinical Policy Bulletins" and was in "compli[ance] with federal civil rights laws."

72.     On April 23, 2021, Aetna sent a separate letter denying coverage for fertility medication prescriptions.

73.     After seven months, five cycles of IUI, one miscarriage, significant emotional distress, and over $20,000 paid out of pocket, Ms. Goidel and her spouse decided, upon consulting with their doctor about the success rate of IVF versus IUI, to change course and try IVF.

74.     In May 2021, Ms. Goidel's doctor submitted a claim for coverage of IVF to Aetna.

75.     A representative from Aetna again called Ms. Goidel to determine her eligibility under the Policy.

76.     On May 14, 2021, Aetna formally denied coverage for Ms. Goidel's IVF treatment because she did not meet the requirement "for a member under 35 years of age" of

being "unable to conceive or produce conception after at least one year despite (1) frequent,

unprotected heterosexual sexual intercourse, or (2) at least 12 cycles of donor insemination if

there is no male partner." Aetna again noted that it used its CPB for Infertility in making this

determination.

77.     As a direct result of Aetna's discriminatory denial of coverage Ms. Goidel

had to pay $20,487.75 out of pocket to undergo IVF treatment.

78.     In May 2021, Ms. Goidel began IVF.

79.     The IVF process is physically grueling, involving surgical egg retrieval,

months of hormonal treatment via self-administered medication and injections, and frequent

medical monitoring.

80.     In July 2021, Ms. Goidel was overjoyed to learn she was pregnant as a

result of IVF. But a few days later, she experienced an early miscarriage.

81.     Later that month, Ms. Goidel and her partner decided that, rather than

attempt another physically and financially taxing IVF so soon, Ms. Goidel would attempt her

sixth IUI cycle.

82.     Ms. Goidel's sixth IUI cycle was successful; she became pregnant.

83.     Ms. Goidel paid a total of $1,810 for this IUI cycle.

84.     At the time of filing this Complaint, Ms. Goidel is in the early stages of

pregnancy and is seven weeks pregnant.

85.      Sadly, because Ms. Goidel has experienced two miscarriages in

consecutive pregnancies, the risk of a third miscarriage is now significantly higher. Should Ms.

Goidel endure another miscarriage, she will need to begin either IUI or IVF and incur its costs—

financial, physical, and emotional—all over again.

86.     At the time of filing this Complaint, Ms. Goidel and her partner are paying to store one embryo that remains following Ms. Goidel's IVF process and one vial of sperm, and they plan to use them in the future to fulfill their plan to have more children.

### IV.     Aetna Has Caused Ms. Goidel Emotional Distress and Physical and Financial Injury.

87.     Ms. Goidel has been injured by Aetna's discriminatory Policy that requires her and other individuals, based on their sexual orientation or gender identity, to pay out of pocket for fertility treatments as a prerequisite to receiving coverage for such services.

88.     Ms. Goidel has incurred tens of thousands of dollars in medical costs for the six IUI cycles and one IVF cycle that she has undergone while under Aetna's Policy.

89.     Ms. Goidel has endured great emotional distress in having to choose a course of treatment based on cost, rather than based on her personal and medical circumstances in consultation with her doctor. Had Aetna covered IUI and IVF for Ms. Goidel from the start, she would have been able to choose the best course of treatment for her based on her personal circumstances, in consultation with her doctor. Instead, because of its discriminatory Policy, Aetna has forced Ms. Goidel to undertake immense financial, physical, and emotional costs.

90.     For example, Ms. Goidel delayed trying IVF because of its cost. After her fourth cycle of IUI, her doctor presented IVF as an option based on her medical history and because IVF had a greater likelihood of success than IUI. But due to the immense out-of-pocket costs of IVF, Ms. Goidel delayed this more effective treatment.

91.     Delays in medically recommended treatment have likely resulted in Ms. Goidel becoming pregnant at a more advanced age than she would have absent Aetna's Policy.

92.     The delays caused by Aetna's discriminatory Policy threaten the health of Ms. Goidel and of her future children, and her ability to get pregnant again in the future. That is

because it becomes increasingly difficult to get pregnant with age. Pregnancy also becomes increasingly dangerous to a pregnant person's health, as well as to the health of the fetus, with age.

93.     Ms. Goidel has endured great emotional distress with each failed attempt to get pregnant.

94.     The knowledge that she was being subjected to unequal, discriminatory treatment by having to pay for these attempts at pregnancy compounded this emotional distress.

95.     Aetna's discriminatory Policy is causing Ms. Goidel ongoing emotional distress because she knows that if she has another miscarriage, or when she gets pregnant with other children, she will again have to confront Aetna's discriminatory Policy and will again be forced to spend thousands of dollars out of pocket to become pregnant.

96.     Ms. Goidel will also endure further financial injury by paying recurrent out-of-pocket costs to store embryo and sperm that she intends to use at a later date.

**V.     Class Allegations**

97.     Plaintiff seeks prospective injunctive relief and damages on behalf of two classes of similarly situated individuals under Rule 23(b)(2) and (b)(3), respectively, of the Federal Rules of Civil Procedure ("Plaintiff Classes").

98.     The Plaintiff Class under Rule 23(b)(3) comprises all individuals who, while covered by an Aetna student health plan in New York, have been denied coverage for fertility treatment by Aetna because the individual, due to their sexual orientation or gender identity, cannot meet Aetna's prerequisite of showing a "failure to establish a clinical pregnancy after 12 months of regular, unprotected sexual intercourse," or 6 months for those over 35 years old.

14

99.     The Plaintiff Class under Rule 23(b)(2) comprises all individuals who are or will be covered by an Aetna student health plan in New York and who will be denied coverage for infertility treatment in the future because the individual, due to their sexual orientation or gender identity, will not be able meet Aetna's prerequisite of showing a "failure to establish a clinical pregnancy after 12 months of regular, unprotected sexual intercourse," or 6 months for those over 35 years old.

100.     Aetna's policy language requiring members who, because of their sexual orientation or gender identity, cannot meet Aetna's prerequisite and therefore must pay out of pocket for infertility treatments before Aetna covers such treatments, poses an immediate threat to the Plaintiff Classes' rights under Section 1557 of the ACA, the NYSHRL, and the NYCHRL, to be free from discrimination on the basis of sex.

101.     The Plaintiff Classes are so numerous that joinder of all individual members would be impracticable. Plaintiff has identified numerous Aetna student health plans in New York that contain identical language to Plaintiff's Policy regarding infertility treatment. In addition to Columbia University, these include Aetna student health plans for Barnard College,[9] Brooklyn Law School,[10] Cornell University,[11] the Fashion Institute of Technology,[12] Hofstra

---

[9] Student Health Insurance Policy, Aetna Life Ins. Co. at 44 (eff. Aug. 22, 2020), https://www.aetnastudenthealth.com/schools/barnardcollege/masterpolicy2021.pdf.
[10] Student Health Insurance Policy, Aetna Life Ins. Co. at 37 (eff. Aug. 10, 2020), https://www.aetnastudenthealth.com/schools/bls/masterpolicy2021.pdf.
[11] Certificate of Coverage 2021–2022, Cornell University Student Health Plan at 40 (approved by N.Y. Dep't of Fin. Servs. June 1, 2021), https://www.aetnastudenthealth.com/schools/cornell2/coc2122.pdf; Certificate of Coverage 2021–2022, Cornell University Student Health Plan Plus at 36 (approved by N.Y. Dep't of Fin. Servs. June 1, 2021), https://www.aetnastudenthealth.com/schools/cornell2/cocPLUS2122.pdf (both have identical infertility language and together serve Cornell University, Cornell Tech, and Weill Cornell Medicine students).
[12] Student Health Insurance Policy, Aetna Life Ins. Co. at 39 (eff. Aug. 15, 2020), https://www.aetnastudenthealth.com/schools/fitnyc/masterpolicy2021.pdf.

University,[13] the Icahn School of Medicine,[14] Manhattanville College,[15] New York Film

Academy,[16] New York Institute of Technology,[17] New York Medical College,[18] Pratt Institute,[19]

Rochester Institute of Technology,[20] Syracuse University,[21] SUNY Maritime,[22] SUNY

Purchase,[23] Touro Colleges of Dentistry, Osteopathic Medicine, and Pharmacy,[24] and the

University of Rochester.[25]

       102.    These schools together enroll over 150,000 students in New York,

including over 60,000 professional and graduate school students. Upon information and belief,

many of these students are likely to be forced to pay out of pocket for fertility treatments based

on their sexual orientation or gender identity, because of Aetna's discriminatory policy.

---

[13] Student Health Insurance Policy, Aetna Life Ins. Co. at 45 (eff. Aug. 1, 2020),
https://www.aetnastudenthealth.com/schools/hofstrauniversity/masterpolicy2021.pdf.
[14] Student Health Insurance Policy, Aetna Life Ins. Co. at 47 (eff. Aug. 1, 2020),
https://www.aetnastudenthealth.com/schools/Icahn/masterpolicy2021-0801.pdf.
[15] Student Health Insurance Policy, Aetna Life Ins. Co. at 41 (eff. Aug. 1, 2020),
https://www.aetnastudenthealth.com/schools/manhattanville/masterpolicy2021.pdf.
[16] Student Health Insurance Policy, Aetna Life Ins. Co. at 45 (eff. Sept. 15, 2020),
https://www.aetnastudenthealth.com/schools/newyorkfilmny/masterpolicy2021.pdf.
[17] Student Health Insurance Policy, Aetna Life Ins. Co. at 42 (eff. Aug. 1, 2020),
https://www.aetnastudenthealth.com/schools/nyitdom/masterpolicy2021.pdf.
[18] Student Health Insurance Policy, Aetna Life Ins. Co. at 41 (eff. July 1, 2020),
https://www.aetnastudenthealth.com/schools/nymedical/masterpolicy2021.pdf.
[19] Student Health Insurance Policy, Aetna Life Ins. Co. at 44 (eff. Aug. 18, 2020),
https://www.aetnastudenthealth.com/schools/pratt/masterpolicy2021.pdf.
[20] Student Health Insurance Policy, Aetna Life Ins. Co. at 39 (eff. Aug. 15, 2020),
https://www.aetnastudenthealth.com/schools/rit/masterpolicy2021.pdf.
[21] Student Health Insurance Policy, Aetna Life Ins. Co. at 39 (eff. Aug. 1, 2020),
https://www.aetnastudenthealth.com/schools/syracuse/masterpolicy2021.pdf.
[22] Student Health Insurance Policy, Aetna Life Ins. Co. at 42 (eff. Aug. 10, 2020),
https://www.aetnastudenthealth.com/schools/sunymaritime/masterpolicy2021.pdf.
[23] Student Health Insurance Policy, Aetna Life Ins. Co. at 46 (eff. Aug. 14, 2020),
https://www.aetnastudenthealth.com/schools/purchase/masterpolicy2021.pdf.
[24] Student Health Insurance Policy, Aetna Life Ins. Co. at 40 (eff. July 1, 2020),
https://www.aetnastudenthealth.com/schools/dentaltouro/masterpolicy2021.pdf; Student Health Insurance Policy,
Aetna Life Ins. Co. at 40 (eff. July 1, 2020),
https://www.aetnastudenthealth.com/schools/tourocom/masterpolicy2021.pdf; Student Health Insurance Policy,
Aetna Life Ins. Co. at 40 (eff. July 1, 2020),
https://www.aetnastudenthealth.com/schools/tcop/masterpolicy2021.pdf.
[25] Certificate of Coverage 2021–2022, University of Rochester Student Health Insurance Plan at 41–42 (approved by
N.Y. Dep't of Fin. Servs. May 18, 2021), https://www.aetnastudenthealth.com/schools/rochester/coc2122.pdf.

103.    The questions of law and fact presented by Plaintiffs are common to all members of the Plaintiff Classes. Among others, questions common to the Plaintiff Classes include:

       a.   Whether Aetna's policy language regarding infertility treatment results in members who, due to their sexual orientation or gender identity, cannot meet Aetna's prerequisite of showing a "failure to establish a clinical pregnancy after 12 months of regular, unprotected sexual intercourse," or 6 months for those over 35," and therefore have to pay out of pocket for fertility treatments; and

       b.   Whether this policy constitutes discrimination on the basis of sex, including sexual orientation and/or gender identity.

104.    Common issues of law and fact predominate any individual issues.

105.    All members of the Plaintiff Classes are likely to be subjected to the same practices and policies of Aetna.

106.    Plaintiff's claims for prospective relief are typical of the Plaintiff Class under Rule 23(b)(2). Individuals enrolled in Aetna student health plans in New York are likely to continue to seek fertility treatment coverage under Aetna's plans, these individuals are likely to include many individuals who, due to their sexual orientation or gender identity, will not be able to meet Aetna's prerequisite of showing a "failure to establish a clinical pregnancy after 12 months of regular, unprotected sexual intercourse," or 6 months for those over 35 years old, and both Plaintiff and members of the Plaintiff Class are reasonably fearful that Aetna will continue to subject its members to discrimination on the basis of sex by maintaining their policy language across student health plans.

107.    The entire Plaintiff Class under Rule 23(b)(2) will benefit from the injunctive relief sought herein.

108.    Plaintiff has no conflict of interest with any members of the Plaintiff Classes, is committed to vigorous prosecution of all claims on behalf of members of the Plaintiff Classes, and will fairly and adequately protect the interests of the Plaintiff Classes.

109.    A class action is superior to any other method for the fair and efficient resolution of this legal dispute, as joinder of all members of the Plaintiff Classes is impracticable. Further, the prosecution of thousands of individual actions by individual members of the Plaintiff Classes would create the substantial risk of inconsistent or varying adjudications, which would establish potentially incompatible standards of conduct for Defendant Aetna.

110.    The Plaintiff Classes are represented by competent counsel experienced in litigating discrimination cases and class action cases.

## FIRST CAUSE OF ACTION
42 U.S.C. § 18116(a)
Discrimination in Health Care on the Basis of Sex

111.    Plaintiff and the Plaintiff Classes reallege as if fully set forth herein the allegations contained in the preceding paragraphs.

112.    Section 1557 of the ACA prohibits discrimination on the basis of sex, including discrimination on the basis of sexual orientation and gender identity, in any health program or activity that receives federal financial assistance.

113.    Aetna receives federal financial assistance and is a health program or activity, and it is therefore covered by Section 1557 of the ACA.

114.    Aetna discriminates on the basis of sex under Section 1557 by requiring LGBTQ individuals who cannot conceive through sexual intercourse because of their gender identity or their sexual orientation to incur substantial costs as a prerequisite to receiving coverage for fertility services.

115.    As a direct result of Defendant's violation of Plaintiff's and the Plaintiff Classes' rights under Section 1557 of the ACA, Plaintiff and the Plaintiff Classes have suffered emotional distress and physical and financial injury.

116.    All the acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

117.    Accordingly, Plaintiff and Plaintiff Class under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

118. Plaintiff and Plaintiff Class under Rule 23(b)(2) are entitled to injunctive and declaratory relief; as well as reasonable attorneys' fees, costs, and disbursements.

## SECOND CAUSE OF ACTION
### N.Y. Exec. Law § 296(2)(a)
### Discrimination on the Basis of Sex in Violation of NYSHRL

119. Plaintiff and the Plaintiff Classes reallege as if fully set forth herein the allegations contained in the preceding paragraphs.

120. The NYSHRL prohibits discrimination on the basis of sex, sexual orientation, and gender identity or expression by any place of public accommodation.

121. Aetna and Columbia University are both places of public accommodation within the meaning of NYSHRL, § 296(2)(a).

122. Aetna discriminates on the basis of sex under the NYSHRL by requiring LGBTQ individuals who cannot conceive through sexual intercourse because of their gender identity or their sexual orientation to incur substantial costs as a prerequisite to receiving coverage for fertility services.

123. As a direct result of Defendant's violation of Plaintiff's and the Plaintiff Classes' rights under the NYSHRL, Plaintiff and members of the Plaintiff Class have suffered emotional distress and physical and financial injury.

124. All the acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

125.     Accordingly, Plaintiff and Plaintiff Class under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

126.     Plaintiff and Plaintiff Class under Rule 23(b)(2) are entitled to injunctive and declaratory relief; as well as reasonable attorneys' fees, costs, and disbursements.

## THIRD CAUSE OF ACTION
N.Y.C. Admin. Code § 8-107(4)
Discrimination on the Basis of Sex in Violation of NYCHRL

127.     Plaintiff realleges as if fully set forth herein the allegations contained in the preceding paragraphs.

128.     The NYCHRL prohibits discrimination on the basis of gender or sexual orientation by any place or provider of public accommodation.

129.     Aetna and Columbia University are both places or providers of public accommodation within the meaning of NYCHRL, §§ 8-102 and 8-107(4).

130.     Aetna discriminates on the basis of sex under the NYCHRL by requiring LGBTQ individuals who cannot conceive through sexual intercourse because of their gender identity or their sexual orientation to incur substantial costs as a prerequisite to receiving coverage for fertility services.

131.     As a direct result of Defendant's violation of Plaintiff's and the Plaintiff Classes' rights under the NYCHRL, Plaintiff and members of the Plaintiff Class have suffered emotional distress and physical and financial injury.

132.     All the acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully maliciously, wantonly, recklessly,

negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

133.    Accordingly, Plaintiff and Plaintiff Class under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

134.    Plaintiff and Plaintiff Class under Rule 23(b)(2) are entitled to injunctive and declaratory relief; as well as reasonable attorneys' fees, costs, and disbursements.

**JURY TRIAL DEMANDED**

135.    Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendant as follows:

a.    Declaring that Defendant violated Plaintiff's and Plaintiff Classes' rights under Section 1557 of the ACA, the NYSHRL, and the NYCHRL, by virtue of its discriminatory policy on coverage for infertility treatments, and that Defendant is likely to continue to cause ongoing violations of Plaintiff's and Plaintiffs Classes' rights;

b.    Permanently enjoining Defendant from implementing and enforcing its discriminatory Policy as to infertility treatment coverage;

c.    Awarding compensatory damages in an amount to be determined at trial;

d.    Awarding punitive damages in an amount to be determined at trial;

e.    Awarding reasonable attorneys' fees, costs, and disbursements; and

f.    Awarding such other and further relief as this Court deems just and equitable.

Dated: New York, New York
           September 13, 2021


By: _____/s/_____
              EMERY CELLI BRINCKERHOFF
              ABADY WARD & MAAZEL LLP
              Zoe Salzman
              Noel R. León
              600 Fifth Avenue, 10th Floor
              New York, New York 10020
              (212) 763-5000


              NATIONAL WOMEN'S LAW
              CENTER
              Sunu Chandy
              Michelle Banker
              Lauren Gorodetsky
              Alison Tanner*
              11 Dupont Circle NW, Suite 800
              Washington, DC 20036
              (202) 588-5180

              *Attorneys for Plaintiff*

              *Motion for pro hac vice admission
              pending*