# Emery Celli Brinckerhoff Abady Ward & Maazel LLP

Jonathan S. Abady
Matthew D. Brinckerhoff
Andrew G. Celli, Jr.
Richard D. Emery
Debra L. Greenberger
Diane L. Houk
Daniel J. Kornstein
Hal R. Lieberman
Ilann M. Maazel
Katherine Rosenfeld
Zoe Salzman
Sam Shapiro
Earl S. Ward
O. Andrew F. Wilson

Attorneys At Law
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020

Tel: (212) 763-5000
Fax: (212) 763-5001
www.ecbawm.com

Vasudha Talla

Nairuby L. Beckles
Marissa Benavides
David Berman
Nick Bourland
Sara Luz Estela
Andrew K. Jondahl
Noel R. León
Sana Mayat
Harvey Prager
Vivake Prasad
Max Selver
Emily K. Wanger

December 27, 2022

*Via ECF*

Hon. Vernon S. Broderick, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:  *Goidel et al. v. Aetna Life Insurance Co.*, No. 21-cv-7619

Your Honor:

  The parties submit this joint letter, pursuant to the Court's Individual Rule 3, seeking the Court's assistance in resolving a discovery dispute the parties have been unable to resolve on their own.

  Plaintiffs filed this class action lawsuit alleging that Defendant Aetna Life Insurance Co. ("Aetna") discriminates against LGBTQ members in its coverage of fertility treatments such as intrauterine insemination and in vitro fertilization, in violation of Section 1557 of the Affordable Care Act. Plaintiffs assert putative classes which include New Yorkers enrolled in plans provided or administered by Aetna who have been or are currently being denied coverage for fertility treatment due to their sexual orientation or gender identity.

  <u>Dispute</u>: Plaintiffs seek unredacted names of Aetna plan members in New York who submitted discrimination complaints to Aetna based on Aetna's denial of coverage for fertility benefits due to the fact that the members were in same-sex relationships. Defendants contend that they cannot produce these names because they constitute personal health information ("PHI") protected from disclosure by law.

  <u>Parties' Attempts at Resolution</u>: Plaintiffs served a deficiency letter on Aetna on November 10, 2022, requesting unredacted discrimination complaints. Plaintiffs stated that they are available to meet and confer regarding the exact mechanism by which potential witness and class member information may be provided to Plaintiffs to address any privacy concerns Aetna

1

may have about providing unredacted information about members. The parties met and conferred on December 6, 2022. Aetna stated that it could not agree to disclose the names of the Aetna members whose redacted records have been produced in discovery. Aetna confirmed its position by email on December 9, 2022.

Plaintiffs' position:

Plaintiffs are entitled to unredacted names of Aetna plan members in New York who submitted discrimination complaints to Aetna based on Aetna's denial of coverage for fertility benefits due to the fact that the members were in same-sex relationships. These individuals likely possess crucial evidence which would establish that class members' claims involve common questions of fact and would speak to Aetna's intent to deny coverage to these individuals based on their sexual orientation.

Courts have required defendants in putative class actions to produce class member names *before* class certification "where it either relates to 'issues relevant to class certification such as numerosity or where contact with members of the class could yield information relevant to issues in the case.'" *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 565 (S.D.N.Y. 2013) (quoting *Dziennik v. Sealift,* No. 05–CV–4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006)). In *Chen-Oster*, former women employees of an investment bank had filed a class action alleging gender discrimination against the bank. They sought the unredacted names of gender-related discrimination complaints that employees had filed internally, in order to "establish common questions of law or fact at the class certification stage, establish pretext at the merits stage, and answer potential affirmative defenses raised by Goldman Sachs." *Id.* at 565. "Given the potential relevance of complainants' stories, the plaintiffs should have the same access as [defendant] to these potential witnesses." *Id.* at 566 (cleaned up). The court recognized that the complainants had a privacy interest in the contents of their complaints, but it ruled that their privacy concerns were best addressed through the protective order already in place in the case. *Id.*

Here, as in *Chen-Oster*, "unredacted names are required in order for the plaintiffs to contact potential witnesses and develop anecdotal evidence of the alleged gender discrimination, and are thus relevant to their claims." *Id.* at 565. Aetna has represented to Plaintiffs that it has not kept systematic records of whether individuals who have been denied fertility coverage are LGBTQ. Aetna has also represented that employees staffing its National Infertility Unit hotline who speak to individuals about their fertility benefits typically do not take notes on their calls. Thus, Aetna has apparently kept minimal information about the members who seek fertility coverage which would be discoverable and could enable Plaintiffs to develop anecdotal evidence about the facts surrounding discrimination faced by class members. For this reason, the unredacted names of individuals who have already identified themselves to Aetna as putative class members by submitting discrimination complaints are necessary for Plaintiffs to develop evidence for class certification.

Additionally, as in *Chen-Oster*, the Protective Order governing discovery already adequately protects the privacy interests of individuals who submitted discrimination complaints to Aetna. HIPAA, the federal law governing the protection, disclosure, and use of personal health

information ("PHI"), permits disclosure of PHI for judicial proceedings under a qualified protective order. "[A] purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase." *Bayne v. Provost*, 359 F. Supp. 2d 234, 237 (N.D.N.Y. 2005) (citing 45 C.F.R. § 164.512(e)(1)(ii)). A qualified protective order under HIPAA must "[p]rohibit[] the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested" and "[r]equire[] the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding." 45 C.F.R. § 164.512(e)(1)(v)(A)-(B); *see also In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 53–54 (E.D.N.Y. 2008), *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008) (Disclosures of PHI are permissible "[i]n response to an order of a court[,] . . . provided that the covered entity discloses only the protected health information expressly authorized by such order[.]" (quoting 45 C.F.R. § 164.512(e)(1)(i))).

The Protective Order, entered on October 26, 2021, already provides for the disclosure and use of "Confidential Health Information," including the names and other identifying information of any Aetna subscriber. *See* ECF No. 18 at 2–5. This order ensures the protections required by HIPAA. However, should Aetna seek additional protections, such as the designation of PHI as "Attorneys' Eyes Only," Plaintiffs are willing to discuss an additional protective order.

Specifically, Plaintiffs seek all materials related to discrimination complaints—including complaints, appeals, and internal Aetna review documents—by the individuals referenced in the following emails and attachments to those emails, with the complainant's name unredacted:

- AETNA-GOIDEL_0006271-0006613
- AETNA-GOIDEL_0006628-0006735
- AETNA-GOIDEL_0023706-0023714
- AETNA-GOIDEL_0024041-0024043
- AETNA-GOIDEL_0025274-0025276
- AETNA-GOIDEL_0025280-0025280
- AETNA-GOIDEL_0025284-0025288
- AETNA-GOIDEL_0041072-0041074
- AETNA-GOIDEL_0066543-0066548

Defendant's Position:

Plaintiffs are not entitled to unredacted names of putative class members during the precertification stage. Before class certification, absent putative class members are complete strangers to the litigation—they have not yet been given notice of the action and are not represented by class counsel. *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 68-69 (S.D.N.Y. 2020). As such, courts are very cautious and generally disfavor compelling disclosure of the identities and contact information of putative class members at the precertification stage. *Charles v. Nationwide Mut. Ins. Co., Inc.*, No. 09 Civ. 94, 2010 WL 7132173, at *4 (E.D.N.Y. May 27, 2010); *Calabrese v. CSC Holdings, Inc.*, No. 02 Civ. 5171, 2007 WL 749690, at *6, n. 7 (E.D.N.Y. Mar. 7, 2007); *see also Bryant v. City of New York*, No. 99 Civ. 11237, 2000 WL

1877082, at *3 (S.D.N.Y. Dec. 27, 2000) (declining to compel the names of potential class members where plaintiffs failed to show a pressing need that would justify the privacy intrusion).

Moreover, Courts have ordinarily refused to allow discovery of absent class members' identities before class certification out of concern that plaintiffs' attorneys would use that information to identify new clients rather than establish the appropriateness of certification. *Dziennik v. Sealift, Inc.,* No. 05-cv-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006); *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 283 (S.D.N.Y. 1967) ("The purpose of pre-trial discovery is to enable the parties to prepare their own bona-fide existing claims, not determine whether third parties may have similar claims.").

Plaintiffs here are not just seeking the identities of putative class members on their own—they are seeking their identities unredacted on documents related to their claims for health benefits, which include intimate, highly sensitive reproductive health information. Medical information has long been considered to implicate a more "intimate privacy interest" than other types of personal information, and its disclosure constitutes a "serious invasion of privacy." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09 Civ. 1148, 2010 WL 2362981, at *3 (S.D.N.Y. June 24, 2010). It is appropriate for the Court to limit disclosure where the discovery at issue involves highly sensitive information, and the adverse consequences of disclosure outweigh the benefits. *Bryant*, 2000 WL 1877082 at *2 ("Even if the plaintiffs could show that the discovery they seek is relevant and not privileged, I must still limit discovery if I determine that the burden or expense . . . outweighs its likely benefits," which includes where the burden is measured in "the adverse consequences of disclosure of sensitive, albeit, unprivileged, material.").

Further, although HIPAA does permit disclosure of certain information regarding parties to litigation pursuant to a protective order, it does not contemplate the disclosure of unredacted medical information of patients who are not parties to the litigation and are completely unaware their highly sensitive reproductive health information is being shared with litigants they do not know and lawyers who do not represent them or their interests. In addition to HIPAA, the health plans that cover the members at issue are governed by various state laws, and disclosure of any PHI must comply with those state's regulations. *See, e.g.*, N.Y. Gen. Bus. L. § 394-e (restricting disclosure of information related to abortion services without the patient's consent).

Furthermore, it is black letter law that HIPAA demands that when PHI is produced, that production is *limited to the minimum necessary* information required to accomplish the discreet task at issue.  45 C.F.R. § 164.502.  Plaintiffs have failed to provide any justification for this proposed privacy intrusion that would require disclosing the *names* of members who made discrimination complaints to Aetna. Aetna has produced redacted versions of the relevant complaints and related documents, which provide Plaintiffs with the information they are seeking about Aetna's alleged discriminatory behavior. Plaintiffs have failed to provide any legitimate reason why the identities of these individuals are necessary to establish the pre-requisites of class certification under Rule 23.  Their request poses an unnecessary intrusion into private medical histories of individuals who are not a party to this lawsuit and is patently improper at this time. See *Charles*, 2010 WL 7132173 at *8, n. 9 (denying a request for putative class member identities during the precertification stage where plaintiff had not explained why

the information being sought is necessary in light of discovery already provided, and why plaintiff is unable to gather sufficient information for class certification through the numerous discovery devices available to it.)

The parties thank the Court for its assistance in resolving this matter.

Sincerely,

_____/S_____       _____/S_____
EMERY CELLI BRINCKERHOFF      BAKER BOTTS LLP
ABADY WARD & MAAZEL LLP      Earl B. Austin
Zoe Salzman      Sarah Reeves
Debra Greenberger      30 Rockefeller Plaza
Noel R. León      New York, New York 10112
600 Fifth Avenue, 10th Floor      (212) 408-2500
New York, New York 10020
(212) 763-5000      CALCAGNI & KANEFSKY LLP
     Mariellen Dugan
NATIONAL WOMEN'S LAW CENTER      One Newark Center
Sunu Chandy      1085 Raymond Blvd, 14th Floor
Michelle Banker      Newark, New Jersey 07102
Alison Tanner*
11 Dupont Circle NW, Suite 800      *Attorneys for Defendant*
Washington DC 20036
(202) 588-5180

*Attorneys for Plaintiffs*

*Admitted pro hac vice*

---

SO ORDERED

/s/ Valerie Figueredo
VALERIE FIGUEREDO
United States Magistrate Judge
Dated: 1-20-2023

A discovery conference in this action is hereby scheduled for **Thursday, February 2, 2023 at 2:00 p.m.** Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial **(888) 808-6929; access code 9781335**.