**BAKER BOTTS** L.L.P.

| | | |
|---|---|---|
| 30 ROCKEFELLER PLAZA | AUSTIN | MOSCOW |
| NEW YORK, NEW YORK | BRUSSELS | **NEW YORK** |
| 10112-4498 | DALLAS | PALO ALTO |
| | DUBAI | RIYADH |
| TEL +1 212.408.2500 | HOUSTON | SAN FRANCISCO |
| FAX +1 212.408.2501 | LONDON | WASHINGTON |
| BakerBotts.com | | |

February 9, 2023

Earl B. Austin
TEL: 2149536542
FAX: 2146614542
earl.austin@bakerbotts.com

**VIA ECF**

Hon. Valerie Figueredo
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   *Goidel et al. v. Aetna Life Insurance Co.,* No. 21-cv-7619

Dear Magistrate Judge Figueredo:

Defendant Aetna Life Insurance Company ("Aetna") submits this letter in follow up to the conference held before Your Honor on February 2, 2023 and to supplement Aetna's position set forth in the joint letter submitted by the parties in this matter on December 27, 2022 regarding a discovery dispute concerning the unmasking of certain Aetna member names in documents produced in discovery in this matter. We appreciate the opportunity to submit this additional material.

Plaintiffs initially sought the unredacted names of Aetna plan members in New York who submitted discrimination complaints based on Aetna's denial of coverage for fertility benefits due to the fact that the members were in same-sex relationships. *See* Dec. 27 Jt. Letter at 1. At the February 2 hearing, it became apparent that Plaintiffs also seek to lift the redactions of documents Aetna has produced concerning those discrimination complaints. Aetna redacted certain portions of those documents on the ground that they contained either personal health information ("PHI") protected from disclosure by law or communications protected by the attorney-client privilege.

With this letter, Aetna submits to Your Honor *in camera* (1) the subject documents in fully redacted form as produced to Plaintiffs and (2) the subject documents with all redactions removed except those necessary to protect personal identifying information potentially traceable to the members involved.[1] Aetna also is providing, both to Your Honor and to Plaintiffs' counsel, a log describing the basis for each redaction and the general nature of the information redacted (Exhibit 1 hereto).

Aetna will discuss below the nature of the particular documents at issue and the member-privacy redactions in dispute. Aetna also will supplement its previous briefing on the privacy protections applicable to these documents and the affected non-party individuals. Finally, Aetna

---

[1] These documents will be emailed to the Court via a secure file transfer link.

**BAKER BOTTS** LLP

- 2 -                                                                                                   February 9, 2023

will propose a compromise solution that would allow the parties to proceed with this litigation while still protecting the privacy of the non-party Aetna members.

**The Documents At Issue**

The subject documents involve discrimination complaints submitted to Aetna by two individuals. For the purposes of this litigation, Aetna has identified those individuals as MEMBER0000010478 and MEMBER0000011621 (hereafter "Member 10478" and "Member 11621").[2] The materials produced for each member fall into three categories: (1) documents reflecting the member's discrimination complaint and its resolution, (2) benefit claim files reflecting the member's request for coverage and Aetna's handling and approval of that request, and (3) internal communications among Aetna employees and, in some instances, employer-sponsors of the member's health benefit plan that discuss the request for coverage or the discrimination complaint.

Each category of document contains some elements of PHI, ranging from personal identifying information of the member (i.e., name, address, SSN, etc.) to specific medical and reproductive health information bearing on the member's fertility and sexual health (i.e., copies or summaries of the member's medical records). Some of the medical information is especially sensitive—for example, history of pregnancy attempts, results of fertility testing, and other medical conditions affecting fertility and sexual health. Aetna has redacted both types of information—personal identifying information and medical information—from the documents produced to Plaintiffs in this litigation.

This letter will address these two types of redaction.[3] As noted at the February 2 hearing, the two are related—the medical data consists of sensitive reproductive health information the members have not authorized Aetna to disclose and the personal identifying information permits the tracing of that sensitive data to a particular individual without their knowledge or consent. It is not possible to produce both and preserve the privacy of the affected individuals. Aetna suggests, however, that a compromise is possible that will allow both parties access to the

---

[2] Aetna has produced data for 12,638 New York members who requested coverage for a variety of medical services related to infertility. Given the sensitivity of the reproductive health issues inherent in these requests, Aetna has protected the identities of these individuals by assigning to each a unique identification number solely for the purposes of this litigation.

[3] As reflected in the unredacted documents produced to Your Honor *in camera* and in the log provided to Plaintiffs' counsel, Aetna also redacted portions of the documents on the grounds of attorney-client privilege. This letter will address the redactions relating to personal identifying information and medical information because, as discussed at the February 2 hearing, the two are related. Aetna notified Plaintiffs' counsel that the documents relating to the discrimination complaints contained redactions both for PHI and privilege by letter dated September 28, 2022. *See* Exhibit 2 hereto at 4. The parties have not yet met and conferred on Aetna's privilege redactions, and Aetna proposes that the parties do so before submitting that issue to Your Honor.

**BAKER BOTTS** LLP

- 3 -                                                                                              February 9, 2023

information reasonably necessary to prosecute and defend this litigation while still preserving the identities of the non-party Aetna members.

**Privacy Protections At Issue**

Plaintiffs requested in the joint letter that the names of the two individuals submitting discrimination complaints to Aetna be unmasked. Aetna summarized in the joint letter the case law in this District and the Second Circuit establishing the principle that plaintiffs in a putative class action are not entitled to unredacted names of putative class members during the precertification stage. *See* Dec. 27 Jt. Letter at 3-4.

Indeed, where disclosure of non-parties' sensitive medical information is at stake, these same privacy concerns remain even after certification of a class. *See, e.g., Romano v. SLS Residential Inc.*, 298 F.R.D. 103 (S.D.N.Y. 2014). In *Romano*, former patients brought a class action against a private residential mental facility. After certification of a class, the plaintiffs' class counsel sought access to the administrative record from an investigation of the defendant facility by a state agency, which record included medical charts of persons not parties to the litigation, and the court noted that the request for sensitive medical records of non-parties raised significant privacy concerns. *Id.* at 108-109.

After the class was certified, a notice was sent (apparently by the district court) to potential class members informing them of the litigation and that their treatment records might be disclosed. *Id.* at 112, n. 18. Following the notice, some individuals joined the suit, either by serving as named plaintiffs or by opting to remain in the case as class members. *Id.* at 112. The court allowed disclosure of those individuals' records, subject to a protective order, on the basis that they had consented to participate in the litigation and thereby waived their privacy concerns. *Id.* at 112-113.

Other individuals did not join the class, however. *Id.* at 114. As to those persons, the court found "we cannot make an inference of waiver of any privilege, and we are properly sensitive to the protection of the rights of those patients." *Id.* at 114. While New York law does not "invariably preclud[e] any use of non-litigant patient records regardless of circumstances," the circumstances under which such disclosure are permitted are limited and nevertheless often include the redaction of patient names and other potentially identifying information. *Id.* at 114-115. The court noted that the medical information contained in the individuals' records may be relevant, if not essential, to the parties' prosecution and defense of the litigation but that the non-parties' privacy interests should be protected by redaction of identifying information linking the records to any particular non-party. *Id.* at 115. The court cited the analysis of these conflicting interests in *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y. 1977) and noted that the court there "developed a compromise to allow plaintiffs' counsel access to treatment records because they were an important source of evidence in that case, while protecting the privacy of the patients by requiring a comparable form of redaction of patient-identifying information." *Id.* at 114-115.

Preserving the redaction of the members' personal identifying information also is consistent with the federal and state HIPAA requirement that when PHI is produced, that

**BAKER BOTTS** LLP

- 4 -                                                                                                February 9, 2023

production is *limited to the minimum necessary* information required to accomplish the discreet task at issue. *See* 45 C.F.R. § 164.502; N.Y. Pub. Health Law § 18(6) (any disclosure of patient health information to third parties "shall be limited to that information necessary in light of the reason for disclosure"). Where reproductive health information is concerned, moreover, members' privacy interests are even more acute and various state and federal laws provide even greater protections. Indeed, the Department of Health and Human Services recently issued guidance specifically addressing the application of the federal HIPAA rules to disclosures of information relating to a patient's reproductive health care. *See* 45 CFR 164.512(f)(1); https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/phi-reproductive-health/index.html (last accessed 2/9/23). This guidance makes clear that even where a disclosure is required by another law, that disclosure must be strictly limited to the relevant requirements of that other law. *Id.* Disclosures of PHI that do not meet the "required by law" definition in the HIPAA Rules, or that exceed what is required by such other law, do not qualify as permissible disclosures. *Id. See also* N.Y. Gen. Bus. L. § 394-e (restricting disclosure of information related to abortion services without the patient's consent).

In sum, while the medical information contained in non-party records may be deemed necessary for the pursuit of litigation to which those individuals are not parties, the identity of such non-parties should be protected, even after certification of a class.[4] Here, of course, no class has yet been certified.

**Proposed Solution**

Aetna recognizes the tension between giving the parties the information they need to prosecute or defend this litigation while also protecting the serious privacy interests of persons who are not parties to the litigation. Aetna suggests that the principles set forth in *Romano* and the other authorities Aetna has cited provide an outline for such a compromise.

First, Plaintiffs have not shown here that the specific information redacted from the records is relevant, much less necessary, to their understanding of the subject discrimination complaints or to the issues bearing on class certification. Consistent with HIPAA's requirements, the complaints themselves, together with Aetna's response to each, have been produced with minimum necessary redactions to protect the identity of the complainants. The redacted medical information, which is contained principally in medical records submitted to Aetna in support of the members' coverage requests or in internal clinical summaries prepared by Aetna from those medical records, reflects the medical data upon which Aetna relied in handling the members' claims for coverage—but nothing in those redactions bears directly on the discrimination claims.

---

[4] Conversely, disclosing the patient-identifying information for Aetna members who sought coverage for infertility treatment, even without providing the specific medical details, by itself violates those members' privacy interests because such disclosure by definition reveals sensitive reproductive health information traceable to individuals who have not consented to such disclosure.

**BAKER BOTTS** LLP

- 5 -                                                                         February 9, 2023

For example, the document AETNA-GOIDEL_0006672-77 relates to Member 10478 and contains PHI redactions at 6674-75 for entries providing a "Clinical Summary" of that member's detailed medical and reproductive history, including medical findings bearing on infertility and previous infertility treatments. The "Rationale" section, at 6675, also is redacted for PHI, but that section repeats the member's clinical information. But the portions of the record that Aetna produced to Plaintiffs without redactions show the rationale for Aetna's initial denial of the member's request for coverage (including Aetna's application of the member's plan document and the Aetna Clinical Policy Bulletin (CPB 0327) at issue in this litigation), as well as Aetna's handling of the member's subsequent administrative appeal. *See id.* at 6675-77. And the record as produced to Plaintiffs also makes clear that Member 10478 actually received coverage for the infertility treatments at issue in this litigation. *Id.* at 6676.

The document AETNA-GOIDEL_00066730-35 relates to Member 11621 and contains even fewer redactions and again only of the member's clinical information. And, as with the other member, the portions of the record that Aetna produced to Plaintiffs without redactions show the reason for Aetna's initial denial and application of the member's plan document and CPB 0327, as well as Aetna's review of the member's administrative appeal. *See id.* at 6733-35. And, again, even with the redactions, is it clear from the document that Member 11621 actually received the infertility coverage requested. *Id.* at 6735.

Other documents were redacted, sometimes in full, because they are medical records submitted to Aetna as part of the members' requests for coverage. For example, AETNA-GOIDEL_0006601 and 6637 detail the results of a uterine x-ray for Member 10478. Again, these records bear squarely on the members' private reproductive history but have no direct relevance to the discrimination complaints.

In sum, the redacted medical information in dispute sheds no light on the discrimination claims at issue. And the member's name, social security number, home address and other sensitive personal details certainly add no value here either. And, more importantly, the portions of the records that Aetna produced without redactions give Plaintiffs sufficient relevant information regarding their putative claims.

Second, even if the redacted medical information were necessary to Plaintiffs' case, or to the extent the information would assist counsel's understanding of the documents as a whole, that interest can be served, as the court suggested in *Romano*, by disclosing the now-redacted medical information (subject to a protective order) but preserving the redactions of any personal identifying information that would make the medical information traceable to a particular Aetna member. Such a balanced approach would give both parties the information necessary to pursue this action while still protecting the identities of the individual members who are not parties to this litigation—which, again, is still only at the putative class stage.

Aetna notes that this is but the first instance of an issue that likely will recur again as the litigation proceeds. For example, Plaintiffs have requested, and Aetna is collecting, internal Aetna records for 142 individuals who may qualify for inclusion in the proposed class and whose records

**BAKER BOTTS** LLP

- 6 -  February 9, 2023

will contain personal identifying information and detailed medical information similar to that redacted for the two members at issue here. Aetna suggests that the balanced approach discussed above—disclosing the medical information while withholding any personal identifying information that would make the medical information traceable to a particular Aetna member—would best meet the needs of both parties, while still reasonably protecting the interests of non-parties.

Once again, Aetna appreciates to opportunity to present this matter to Your Honor. Please advise if we may be of any further assistance in the *in camera* review.

Respectfully,

*/s/ Earl B. Austin*
Earl B. Austin
Sarah Reeves
BAKER BOTTS L.L.P
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 408-2500
earl.austin@bakerbotts.com

Mariellen Dugan
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Tel.: 862-397-1796
mdugan@ck-litigation.com