UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMMA GOIDEL, ILANA LEE, MADELEINE
LEE, And LESLEY BROWN, on behalf of
themselves and all others similarly situated,

                    *Plaintiffs*,

       -against-

AETNA LIFE INSURANCE COMPANY,

                    *Defendant*.

Case No. 1:21-cv-07619 (VSB)

**DECLARATION OF
ZOE SALZMAN**

       ZOE SALZMAN, an attorney duly admitted to practice in the Southern District of New

York, declares under penalty of perjury:

       1.       I am a partner at Emery Celli Brinckerhoff Abady Ward & Maazel LLP

("ECBAWM"), attorneys for the Plaintiffs in above-captioned matter.

       2.       I respectfully submit this declaration in support of Plaintiffs' Motion for

Preliminary Approval of the class action settlement agreement (the "Settlement Agreement"),

which is attached as Exhibit 1, and to ask the Court to enter the Proposed Preliminary Approval

Order, attached as Exhibit 2.

       3.       Attached hereto are true and correct copies of:

       a.       The Settlement Agreement (Exhibit 1); and

       b.       The Proposed Preliminary Approval Order (Exhibit 2).

       4.       Subject to Court approval, the Named Plaintiffs Emma Goidel, Ilana Lee,

Madeleine Lee, and Lesley Brown ("Class Representatives" or "Named Plaintiffs"), individually

and on behalf of the class of individuals they seek to represent (collectively, the "Plaintiffs"), and

1

Defendant Aetna Life Insurance ("Aetna" or "Defendant") (together, the "Parties") have settled this class action on the terms set forth in the Settlement Agreement. *See* Ex. 1.

5.    Based on counsel's analysis of the records produced in discovery, as well as Aetna's estimates—*i.e.*, that 2.5% of those who were denied fertility coverage were also in an Eligible LGBTQ+ Relationship—it is unlikely that there will be more than 200 Class Members.

a.    The Parties have to date identified 67 Category A Class Members.

b.    There are approximately 1,941 potential Class Members receiving notice because they were denied IUI or IVF coverage by Aetna (comprising both Category B members denied for IUI and Category C members denied for IVF only). Based on counsel's analysis and estimates, approximately 2.5% of these individuals, or 49 additional potential Class Members (rounded up), will be able to sign an Attestation, bringing the total estimated Damages Settlement Class to 116 Class Members (assuming a 100% response rate from this population).

c.    The remaining Category C Class Members—who may learn of the settlement through publication or direct notice—are unlikely to total an additional 84 Class Members, to bring the Damages Settlement Class to 200 Class Members. Approximately 3,613 additional potential Category C Class Members will receive direct notice because they were *approved* for IVF treatment, but never sought coverage for IUI treatment. There is a low likelihood that individuals in this group were in Eligible LGBTQ+ Relationships, completed 6 or 12 IUI cycles, never sought coverage for those cycles, did not become pregnant from those cycles (obviating the

need to seek IVF coverage), and were thereafter approved for IVF coverage. Finally, publication notice is not expected to yield many additional Class Members because individuals learning of the settlement via publication instead of direct notice (*i.e.*, individuals who do not appear in Aetna's files at all) would have had to never have submitted any claims for fertility insurance coverage at all. The fertility treatments at issue in this case carry high costs, incentivizing individuals to seek insurance coverage; accordingly, publication notice is not anticipated to yield many additional Class Members. While it was important to ensure that notice was sent to the most inclusive group as possible to account for low-likelihood circumstances such as the above, it is not realistic that this notice will yield sufficient Class Members to amount to more than 200 in total.

6.  Because the proposed settlement satisfies all of the criteria for preliminary approval, the Parties respectfully request that the Court:

a.  Grant preliminary approval of the Settlement Agreement, including Appendix A (Administrator Proposal) and Appendix B (Allocation Plan) thereto, Ex. 1;

b.  Certify the two settlement classes (the "Injunctive Settlement Class" and the "Damages Settlement Class") and appoint Emery Celli Brinckerhoff Abady Ward & Maazel LLP and the National Women's Law Center as class counsel for the Settlement Classes ("Class Counsel");

c.     Approve Atticus Administration LLC as the settlement administrator (the "Administrator");

d.     Approve the form, content, and manner of notice to the Settlement Classes and authorize notice to be distributed in the manner described in the Declaration of Bryn Bridley  ("Bridley Decl."), as well as the proposed notices to Class Members and the proposed forms in the Claim Form Package, attached to the Bridley Declaration as Exs. B-F; and

e.     Order Defendant to pay the costs of notice and administration to the Administrator pursuant to the terms and conditions set forth in the Settlement Agreement.

7.     This declaration does not detail the full settlement or set out the entire history of the case. The declaration sets out only those aspects of the litigation and settlement that are not readily apparent from other documents attached as exhibits to this declaration or otherwise available to the Court.

**Discovery and Information Exchange**

8.     Before filing the action, Class Counsel thoroughly investigated the underlying claims and collected significant factual information through pre-suit research and data gathering from individuals who had been denied health care coverage for infertility benefits under their Aetna health benefits plans. Named Plaintiffs Emma Goidel, Ilana Lee, Madeleine Lee, and Lesley Brown provided substantial information about their experiences seeking coverage for infertility treatments under the terms of their Aetna health benefit plans.

9.     On September 13, 2021, Named Plaintiff Emma Goidel filed a Complaint on

behalf of herself and others similarly situated against Aetna Inc., alleging discrimination in health care on the basis of sex in violation of 42 U.S.C. § 18116(a) and discrimination on the basis of sex, sexual orientation, and gender identity or expression by a place of public accommodation in violation of New York law. ECF No. 1. On November 5, 2021, Plaintiffs filed a First Amended Complaint, adding Ilana Lee, Madeleine Lee, and Lesley Brown to the Named Plaintiffs. ECF No. 20. Named Plaintiffs sought to represent a class of individuals who (a) were LGBTQ individuals in New York; (b) were enrolled in health benefit plans underwritten or administered by Aetna; and (c) were denied coverage for infertility treatments and forced to pay out of pocket to obtain those treatments based on their inability to meet Aetna's definition of infertility. *Id.* ¶¶ 3-4, 7-8. The Named Plaintiffs sought injunctive relief and monetary damages along with all other members of the putative class.

10.     The Amended Complaint alleged that Aetna's definition of infertility discriminated against LGBTQ+ individuals in violation of Section 1557 of the Patient Protection Affordable Care Act ("ACA"), Section 296(2)(a) of the New York State Human Rights Law ("NYSHRL"), and Section 8-107(4) of the New York City Human Rights Law ("NYCHRL"). *Id.* ¶ 9.

11.     Defendant filed an Answer to Plaintiffs' Amended Complaint on January 21, 2022, denying the majority of Plaintiffs' allegations in the Amended Complaint. ECF No. 26.

12.     During discovery, Class Counsel diligently pursued all information relevant to Plaintiffs' claims, including through serving numerous rounds of discovery requests and reviewing tens of thousands of pages of documents Defendant produced (in total, Aetna produced approximately 77,400 pages of documents), which were used to understand the strengths and weaknesses of Plaintiffs' claims. The discovery requests sought relevant policies,

practices, and directives of Aetna; electronic and hard-copy data maintained by Aetna regarding

the design and implementation of CPB 327; staff training materials related to coverage for

infertility treatment; electronic communications between Aetna personnel regarding design and

implementation of the CPB; and information about and examples of the denial or approval of

infertility benefits for LGBTQ+ individuals. Class Counsel and Aetna engaged in numerous

rounds of meet and confers with Aetna's counsel in order to identify the types of data that could

lead to the identification of class members, including through several searches of multiple

different databases, which involved multiple rounds of exchanging and negotiating search terms

and parameters.

13.     Class Counsel consulted with various experts and consultants, including experts

on infertility treatments and insurance industry data, in order to determine the appropriate

injunctive relief for Injunctive Class Members and the best avenues to identify and appropriately

compensate all Damages Settlement Class Members.

14.     The Parties also engaged in extensive meet-and-confers regarding discovery in

this case and sought the Court's intervention when the Parties could not reach agreement on

discovery matters related to privacy interests of members of Aetna health benefits plan. ECF No.

41. After settlement negotiations began to intensify, the Parties filed several letters requesting

stays of all Case Management Plan deadlines to focus on the ongoing settlement discussions.

ECF Nos. 59, 61, 67, 71, 73.

**Negotiation of the Settlement**

15.     While Class Counsel and counsel for Aetna had preliminary settlement

conversations for some time, those conversations picked up in earnest in May 2023, when the

Parties believed that document discovery was complete or near complete. At that point, the

Parties identified a settlement framework and agreed to pause further fact discovery, except as it related to discovering the individuals who may be potential Class Members.

16.     Class Counsel conducted significant data analysis for the purpose of settlement negotiations. For example, Class Counsel estimated, coordinating with counsel for Aetna, the number of individuals in Eligible LGBTQ+ Relationships within Aetna's records who may have sought, been approved for (after incurring out-of-pocket expenses), or denied coverage for artificial insemination or IVF within the Class Period; assessed the individual damages incurred by the Named Plaintiffs and the likely average damages incurred by Class Members; analyzed expert medical research studies; analyzed and researched the relevant insurance codes associated with the fertility procedures at issue; and consulted with industry experts, physicians, and medical personnel with firsthand knowledge of the fertility treatment process to determine the appropriate injunctive relief and the appropriate damages compensation.

17.     The Parties had multiple in-person and video, arm's-length negotiation sessions between May and September 2023 regarding the terms of a potential settlement.

18.     After extensive discussion about the proposed scope and size of the class and the structure of any settlement, the Parties agreed in principle as to the structure of Category A, B, and C Class Members; the Default Dollars for Benefits Amount of $2,300; a Common Fund to pay the Default Common Fund Amount and, to the extent funds remain, other damages; and that any settlement related costs, including administration, notice, class representative service awards, and attorneys' fees and costs would be paid by the Defendant, separate from and in addition to the Common Fund.

19.     In light of the complexity and size of this settlement, the Parties decided to first negotiate a term sheet with these essential terms before moving on to the details of a

comprehensive settlement. The Parties agreed on the scope of the Category A Class Members, and Defendant agreed to coordinate with Class Counsel to determine the best way to identify potential Category B Class Members within Aetna's system and to ensure all potential Category C Class Members receive proper notice of the settlement.

20.     The Parties negotiated the manner, extent, and nature of notice to potential Class Members extensively. Specifically, it was imperative to Class Counsel and the Named Plaintiffs that the settlement administration and notice structure ensured that they could identify and reach as many potential Class Members as feasible, including those who may not be identified in Aetna's system as having sought infertility treatment because they understood their plan would not cover the IUI cycles necessary to meet the CPB's prerequisite definition of infertility. Class Counsel learned from LGBTQ+ individuals who had been seeking infertility treatments, as well as from discussions with providers of infertility treatments, that insurance plans adhering to a discriminatory definition of infertility—like the Aetna plans at issue—may create a chilling effect on those seeking infertility care, resulting in some patients being dissuaded from filing claims. Class Counsel was concerned that notice should reach as many of these potential Class Members as feasible. In addition to providing a direct mailing to each potential Class Members identified in Aetna's system, the Parties agreed to issue a publication notice via an agreed-upon set of publications and social media sites. Defendant also agreed to publish the Summary Notice on its website.

21.     On September 22, 2023, the Parties informed the Court that a settlement term sheet had been signed, and the Parties would begin preparing a settlement agreement and a motion for preliminary approval. ECF No. 75. At that time, the Parties had not yet reached agreement on the amount Defendant would deposit into the Common Fund, as well as on several

other material terms, including the full scope and method of class notice, the terms of the non-disparagement clause, the scope and timeline of the implementation of the injunctive relief, the structure and timing of payment of individual awards, the amounts Aetna would pay for class service awards and for Class Counsel's attorneys' fees and costs, and many other terms.

22.    From November 2023 to April 2024, the Parties exchanged multiple drafts of the settlement agreement and participated in multiple in-person and video meetings to negotiate at arm's-length the outstanding terms.

23.    On December 5, 2023, the Parties participated in a mediation with the Honorable Steven M. Gold (retired). During the mediation, the Parties reached agreement that Defendant would deposit $2,000,000 into the Common Fund. Subsequently, the Parties also agreed during the mediation that Aetna would pay class service awards of $15,000 per Named Plaintiff and an attorneys' fees and costs award of $1,625,000, separate and apart from the $2,000,000 Common Fund. These amounts were negotiated and agreed to independently of, and only after the Parties had already agreed to, the $2,000,000 amount for the Common Fund. These amounts were also negotiated and mediated with the assistance of Hon. Steven M. Gold, who had received Class Counsel's billing and cost records.

24.    The Parties continued to engage in arm's-length negotiations regarding outstanding open terms over the next few months.

25.    The Parties filed several letters requesting stays of all Case Management Plan deadlines to focus on negotiating the final outstanding terms and to draft an agreement. ECF Nos. 77, 79, 81, 84, 86.

26.    On February 21, 2024, the Parties held a meeting with Judge Gold, who agreed to serve as the Special Master to assist in issuing compensation from the Common Fund. On March

20, 2024, the Parties held another meeting with Judge Gold, who reviewed, gave input on, and ultimately approved the Allocation Plan to administer the Common Fund. Ex. 1, Appendix B.

27.     Throughout this time, the Parties also solicited and reviewed multiple proposals from potential administrators, and thereafter agreed to select Atticus Administration LLC ("Atticus"), due in part to its extensive experience administering complex class action settlement agreements, and its comprehensive scope of work proposal.

28.     The Parties' negotiations culminated in an agreement on all terms of the Settlement Agreement, which was executed on April 18, 2024. Ex. 1.

29.     The Named Plaintiffs approved the material terms of the Settlement Agreement and were available during the negotiations and mediation to work with Class Counsel.

**Main Terms of Settlement Agreement**

30.     The Settlement Agreement is fair and reasonable and provides for critically important injunctive relief and significant compensation for all Class Members.

31.     In terms of injunctive relief, the Settlement Agreement provides that Aetna will implement a new policy for the administration of intrauterine insemination benefits ("IUI"), making IUI a standard medical benefit in all of the fully insured commercial plans it issues, subject to any legal or regulatory requirements (the "New IUI Policy"). Ex. 1 ¶ 57. For self-funded plans that Aetna administers that include coverage for infertility services, Aetna will incorporate the New IUI Policy in the same manner as its fully insured commercial plans, subject to a plan sponsor's request for a deviation. *Id*.

32.     The Agreement also provides that Aetna will revise its CPB No. 327 Definition of Infertility to include language that substantially conforms to the definition of "Infertility" published by the American Society for Reproductive Medicine ("ASRM") in 2023 such that the

criteria for determining whether a person is considered infertile shall include the need for medical intervention, including, but not limited to, the use of donor gametes in order to achieve a successful pregnancy. The Parties agree that individuals with a uterus in an Eligible LGBTQ+ Relationship qualify as infertile according to this definition. *Id*. ¶ 58.

33.     The Agreement requires that no later than the Final Approval Order, Aetna will implement all necessary programming changes and provide public and internal education and training to implement these policy changes. At minimum, this will include: (1) training sessions regarding these policy changes for all Aetna employees who make precertification and post-service coverage determinations and for all Aetna employees who answer Aetna member inquiries and complaints related to infertility; (2) an internal review of all public facing documents that mention Aetna's prior policy to change each document to reflect the policy changes; and (3) public communications advertising these policy changes. *Id*. ¶ 59.

34.     In terms of monetary relief, the Settlement Agreement is structured so that each eligible Class Member receives: (1) a Default Common Fund Amount of approximately $10,000, or if there are over 200 Class Members, equal pro rata payments of the Default Common Fund Amount; and (2) separate from the Common Fund, a Default Dollars for Benefits Amount of at least $2,300, if, according to Aetna's records, their claims have not yet been reimbursed for infertility treatments undergone during the Class Period that Aetna has determined should have been covered under the individual's health benefits plan but for the Definition of Infertility. *See id*. ¶¶ 66–67.

35.     The Agreement further provides that Class Members may receive a Dollars for Benefits Payment higher than $2,300 if they submit to Aetna a valid Proof of Greater Covered Care submission evidencing that they underwent covered fertility treatment that would have

resulted in reimbursement exceeding $2,300 under the terms of their Aetna health benefits plan during the Class Period, but for the Definition of Infertility, as determined by Aetna. Class Members whose claims have already been reimbursed and who submit a valid Proof of Greater Covered Care submission may receive the difference between the previously-reimbursed amount and the amount evidenced in their submission, as determined by Aetna. *Id.* ¶ 66(c).

36.     The timeline of the settlement administration and payment is structured as follows in the Agreement:

   a.     If the Court preliminarily approves the Settlement Agreement, within 30 days after the entry of Preliminary Approval Order, Aena will deposit $2,000,000 into the Common Fund. *Id.* ¶¶ 23, 99.

   b.     On or before July 17, 2024, Aetna shall provide the Administrator with the list and addresses of potential Class Members currently identified (those who submitted precertification requests or claims from September 1, 2017, through December 31, 2023) and the Administrator shall send out the first round of notice. *Id.* ¶¶ 75–76; Ex. 2.

   c.     A second round of notice will occur in January 2025 in order to account for any potential Class Members who may have submitted or will submit precertification requests or claims for infertility services prior to Aetna's implementation of the injunctive relief on June 1, 2024 and who were not captured in the first round of notice. *See* Ex. 1 ¶ 75(e). New York's Prompt Pay Law allows providers to submit claims up to 120 days after the date of service, *see* N.Y. Ins. Law § 3224-A(g), and thereafter requires that claims be adjudicated and paid within 30 days for electronically

submitted claims, or within days for paper or fax claims. Therefore, the last data pull will have to be 165 days after the last date of possible service—May 31, 2024—to account for New York law's time allotment for providers to submit claims and for insurance companies to adjudicate and pay those claims.

d.   We propose that the Fairness Hearing be held no sooner than one year after the Preliminary Approval Order so as to allow time for potential Class Members receiving the second round of notice to submit, as applicable to their category, the Attestation Form, Out-of-Pocket Expense Documentation Submission, Miscellaneous Harm Submission, Proof of Greater Covered Care Submission, and Claim Form Submission (collectively, the "Forms") by the Bar Date, which we suggest shall be 45 days prior to the Fairness Hearing. *See* Ex. 1 ¶ 130.

e.   On or about 60 days before the Bar Date, the Administrator shall send Potential Class Members a reminder notice. *Id.* ¶ 78. On or about 30 days before the Bar Date, the Administrator shall send Potential Class Members a second reminder notice. *Id*. ¶ 79. Aetna will publish the Summary Notice on its website, and the Administrator will publish the Summary Notice in various media outlets and social media forums. *Id*. ¶¶ 80–81.

f.   If the Court finally approves the Settlement Agreement, the Effective Date for Payment will be the day on which the Final Approval Order becomes final, *i.e.*, (a) if no objector has lodged a timely objection, on the date of entry of the Final Approval Order, or (b) if an objector has lodged a timely

13

objection, when the time for that objector to appeal has expired or, if the objector has appealed from the Final Approval Order or any portion thereof, on the date when the appeal results in the affirmance of the Court's Final Approval Order of this Agreement. *Id*. ¶ 32.

g.     Aetna will process claims for Default Dollars for Benefits Amounts and for any additional payments pursuant to valid Proof of Greater Covered Care submissions between the entry of the Preliminary Approval Order and the Effective Date for Payment, and will issue payments on the Effective Date for Payment. *Id*. ¶ 66(d).

h.     The Administrator will process Form submissions of any potential Class Members seeking to participate in the Common Fund between the entry of the Preliminary Approval Order and the Effective Date for Payment. *Id.* ¶ 67(b)–(e). After the Administrator has allocated the Default Common Fund Amount pursuant to the Allocation Plan and the Special Master has determined and allocated the payments, if any, for Out-of- Pocket Expense Submissions and Miscellaneous Harm Submissions, the Administrator shall issue a check to each Class Member for their share of the Common Fund on the Effective Date for Payment. *Id*. ¶ 67(d), (g).

37.     The Agreement provides that Class Members will also be able to submit untimely claims, which must be received within two months of the Bar Date. If the claimant established "good cause," in Class Counsel's discretion, the Administrator will issue payment out of any amount remaining in the Common Fund. Depending on the timing of such claims and the funds then available, untimely claimants who have established "good cause" may not receive any

14

payment, may receive a pro rata share of their Default Common Fund Amount, and may not be entitled to payment from an additional Out-of-Pocket Expense Documentation Submission and/or a Miscellaneous Harm Submission. *Id*. ¶ 68.

38.     The Agreement provided for a joint press release announcing the proposed settlement, however, the Parties subsequently agreed that Plaintiffs alone would issue the press release in connection with the filing of the motion for preliminary approval.  *Id*. ¶ 73.

39.     The Agreement also provides that, at or about the time of the motion for Final Approval, Class Counsel will make an application seeking Court approval for attorneys' fees and expenses in the amount of $1,625,000.00, to be paid separate and apart from the Common Fund. Aetna shall not object or oppose (directly or indirectly) Class Counsel's application for attorneys' fees and expenses nor shall Aetna or its agents directly or indirectly encourage any person or entity to do so. *Id*. ¶¶ 96–97.

40.     Named Plaintiffs Emma Goidel, Ilana Lee, Madeleine Lee, and Lesley Brown have expressed their approval of the settlement by agreeing to the Settlement Agreement. In accordance with the Settlement Agreement, Plaintiffs will request in their motion for Final Approval that the Court approve service awards for the Named Plaintiffs in the amount of $15,000 each—to be paid separate and apart from the Common Fund, *see id*. ¶ 104—in recognition of the services they rendered on behalf of the class, including: approving material terms of the Settlement Agreement and being available during settlement conferences; exposing their private medical records and other intimate information to discovery and scrutiny; the bravery exhibited in undergoing personal risk by publicly identifying themselves as individuals in an LGBTQ+ relationship and in need of infertility treatments to build their families; and for any inconvenience, pain, suffering, and other non-pecuniary loss experienced as a result of

having been a named plaintiff in this action. The Named Plaintiffs have supported the

prosecution of this case for over two years, electing to defer any potential individual recovery

during that time, and will be paid at the same time as other Class Members.

**Administration of the Settlement**

41.     Pursuant to the terms of the Settlement Agreement, as well as Atticus's proposal

attached as Appendix A to the Agreement Atticus's duties as Administrator will include, but will

not be limited to: (1) issuing notice, including information about the right to object or opt out of

the settlement; (2) distributing Claim Form Packages to and receiving executed forms from the

Claim Form Package from Class Members, as applicable pursuant to Paragraph 75 of the

Settlement Agreement; (3) establishing and administering the Common Fund and, upon

conclusion of the process, closing the Common Fund; (4) determining eligibility for Default

Common Fund Amount awards on the basis of information provided by counsel for the Parties

and by the Class Members, validating the claims, and providing Class Counsel and Defendant's

Counsel a list of those persons found preliminarily eligible every 30 days; (5) evaluating Out-of-

Pocket Expense Submissions and calculating the amounts of payments for out-of-pocket

expenses pursuant to the Allocation Plan, in conjunction with the Special Master; (6) issuing and

mailing payments to eligible Class Members, and issuing and filing all required tax forms and

statements; (7) responding to inquiries from Class Members about this Agreement and the

procedures contained herein, including by the use of a toll-free number and a website;

(8) collating all objections to the Agreement for Class Counsel and Counsel for Defendant;

(9) creating a database of Class Members who have filed timely and valid forms, as applicable

pursuant to Paragraph 65 of the Settlement Agreement; (10) creating a database of Opt-Outs;

(11) coordinating and advancing payment for publication notice per Paragraphs 65(e) and 81 of

the Settlement Agreement; and (12) providing the Parties with regular bills and a final accounting. *See id.* ¶ 84.

**Advantages of Settlement**

42.     This section of my declaration sets forth some of the factual reasons that the Settlement Agreement should be approved, as well as some of the risks of the litigation. This declaration does not discuss the many advantages of the settlement that are apparent from the face of the Agreement.

43.     As detailed above, Defendant has agreed to implement ground-breaking injunctive relief, including the New IUI Policy and revisions to the definition of "infertility" in CPB 327, such that individuals with a uterus in an Eligible LGBTQ+ Relationship qualify as "infertile," without having to do, or pay for, any IUI cycles, and to ensure that individuals with a uterus in an Eligible LGBTQ+ Relationship will not be required to undergo any greater number of IUI cycles to qualify for IVF coverage than individuals with a uterus in a heterosexual relationship.

44.     Further, all Class Members are entitled to a significant default payment of approximately $10,000, paid out of the $2,000,000 Common Fund funded by Aetna, and to the extent money remains in the Common Fund after all Default Common Fund Amount payments are made, may be eligible to receive additional compensation for miscellaneous harms and additional out-of-pocket expenses. Separate from the Common Fund, to the extent their benefits claim has not already been reprocessed, Class Members are also eligible to have their claims reprocessed by Aetna and to receive a default payment of $2,300, and will have the opportunity to receive higher compensation for greater covered care, up to the limit of their plan's coverage, if supported by sufficient documentation. Aetna has also agreed to pay for the costs of the

settlement administrator and Special Master, Class Representative service awards, and Class

Counsel's attorneys' fees and costs, separate from, and in addition to, the Common Fund and

Dollars for Benefits.

45.     Given Aetna's extensive data indicating which members sought and were denied

fertility benefits due to the discriminatory definition of infertility, the categorization of the

Damages Class Members allows for a more streamlined and structured identification process for

the Parties and puts less burden on the Damages Class Members to produce documentation they

may not readily have access to.

46.     For example, the Parties agree that all Category A Class Members sought and

were denied coverage for infertility treatment due to the Definition of Infertility and were in an

Eligible LGBTQ+ Relationship, who were identified in discovery in Aetna's records due to the

recorded sexes of the primary plan member and her spousal dependent plan member, as well as

in some instances, the text of the relevant claim denial letter or chart note, which indicated that

the member was in a same-sex relationship. All Category A Class Members will receive the

Default Common Fund Amount and Default Dollars for Benefits payments automatically on the

Effective Date for Payment, without submitting any forms, so long as they do not opt-out and the

Administrator can verify their addresses.

47.     For Category B Class Members, Class Counsel was able to identify insurance

codes during discovery that reflected the denial of infertility coverage due to the Definition of

Infertility. Category B Class Members will therefore not need to submit documentation of their

interactions with Aetna, much of which would date back several years, which they may not have

access to, or which may be onerous, burdensome, and inefficient for Class Members to obtain,

particularly for those without a medical background. To be eligible for both the Default Common

Fund Amount and the Default Dollars for Benefits Amounts, Category B Class Members will only need to submit an Attestation establishing that they were in an Eligible LGBTQ+ Relationship at the time they sought coverage, information which is not available in Aetna's files for Category B Class Members.

48.     Finally, as a result of Class Counsel's negotiations, Category C Class Members will receive the Default Common Fund Amount and the Default Dollars for Benefits Amount so long as they submit the same Attestation as Category B members and a Claim Form Submission, even though Aetna never denied them IUI coverage, which is as inclusive as possible of potential Class Members who were harmed but may have had limited or no interactions with Aetna.

49.     This settlement amount represents a substantial value to Class Members given the uncertainty and delay attendant to litigation. With a class period dating back to 2017, significant amounts of necessary data analysis, and complex, cutting-edge, and evolving issues of law and fact, this case is extraordinarily complex. Further litigation here would inevitably cause additional, significant expense and delay. No depositions have been taken so far, including of high-level Aetna executives and other key employees, or of any of the Named Plaintiffs. Similarly, expert discovery in this case would be extensive, including the exchange of reports and expert depositions.

50.     After discovery, Class Counsel also anticipates summary judgment and class certification motions raising many technical and emerging issues of law, including whether Aetna's fertility policy discriminates based on sex under Section 1557 of the ACA, whether Aetna can be held liable under the ACA for its role as a third-party administrator of self-funded plans, and whether Aetna would challenge the suitability of class certification under Federal Rule of Civil Procedure 23. While Class Counsel believes the class would be certified and summary

judgment granted in its favor, both motions present legitimate risks to the class, and considerable time and resources would likely be expended on the inevitable appeals of the Court's decisions on class certification and summary judgment.

51.    Even assuming the successful certification of the class and favorable outcomes on summary judgment, a fact-intensive trial regarding damages would likely be necessary, and, depending on the outcome of any summary judgment motions, may also be needed to determine certain issues related to liability. A trial would be lengthy and complex. While Class Counsel believe that Plaintiffs could ultimately establish both liability and damages, this would require significant factual development, requiring hundreds of additional hours of discovery, plus the time and resources required to litigate dispositive motions and prevail at trial, and then prevail again on appeal.

52.    For a class of people who have been denied the equal right to have children and grow their family in the manner of their choosing, the Settlement Agreement provides immediate and profound relief. Without a settlement, Class Members would not obtain relief for years—and would potentially continue to be denied the infertility treatments they need to build their families. This settlement represents a significant percentage of the best possible recovery and makes relief available to Class Members promptly and efficiently.

53.    For the reasons stated above and in the accompanying Memorandum of Law, the Bridley Declaration, and exhibits, we believe the Settlement Agreement is fair and reasonable and we respectfully ask the Court to enter the Proposed Preliminary Approval Order, attached as Exhibit 2.

Dated:  May 3, 2024
      New York, New York

/s/
ZOE SALZMAN
