```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
EMMA GOIDEL,                                               :
on behalf of themselves and all others similarly           :
situated, et al.,                                          :
                                                           :                21-CV-7619 (VSB)
                                            Plaintiffs,    :
                                                           :                **OPINION & ORDER**
                       - against -                         :
                                                           :
                                                           :
AETNA LIFE INSURANCE COMPANY,                              :
                                                           :
                                            Defendant.     :
                                                           :
-----------------------------------------------------------X
```

Appearances:

Zoe Antonia Salzman
Debra Lea Greenberger
Eric Abrams
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
New York, NY
*and*
Alison Ann Tanner
Donya Khadem
Michelle Iris Banker
Sudria H Twyman
Noel Leon
National Women's Law Center
Washington, DC
*Counsel for Plaintiffs and the Proposed Class*

Earl B. Austin
Sarah Reeves
Baker Botts LLP
New York, NY and Dallas, TX
*and*
Mariellen Dugan
Calcagni & Kanefsky LLP
Newark, NJ
*Counsel for Defendant*

1

VERNON S. BRODERICK, United States District Judge:

This class action was filed on September 13, 2021, on behalf of a class of LGBTQ[1] individuals insured by Defendant Aetna Life Insurance Company ("Aetna") who want to have children but cannot conceive through sexual intercourse with their partners, and can become pregnant only with medical assistance, such as fertility treatments like intrauterine insemination ("IUI") and in vitro fertilization ("IVF"). (*See* Doc. 1 ¶¶ 2–14.) Plaintiffs allege that Aetna's policies require LGBTQ individuals Aetna insures to pay out-of-pocket for several rounds of fertility treatments before insurance will pay for treatment. (*Id*.) Non-LGBTQ individuals that Aetna insures, however, do not need to pay out-of-pocket for fertility treatment; Aetna will pay for non-LGBTQ fertility treatment immediately upon representation that the insured has not been able to conceive naturally in the past year. (*Id*.) Plaintiffs allege that this difference in treatment is unlawful discrimination on the basis of sexual orientation in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (*Id*.)

Before me is the joint motion by Plaintiffs Emma Goidel, Ilana Lee, Madeline Lee, and Lesley Brown, (collectively, "Plaintiffs"), on behalf of themselves and two putative classes of persons similarly situated, for preliminary approval of the class action settlement they have reached with Aetna. (*See* Doc. 92 (motion for preliminary settlement approval); Doc. 93 (the memorandum in support, or "Mem.")). The motion for preliminary settlement approval is unopposed. Along with the motion, Plaintiffs have submitted a declaration of Zoe Salzman, a partner at Plaintiffs' law firm, (Doc. 94 ("Salzman Decl.")), a declaration of Bryn Bridley, an

---

[1] "LGBTQ" means persons who identify as "lesbian, gay, bisexual, transgender, queer, intersex, or non-binary." (Doc. 1 ¶ 2.)

executive at Plaintiffs' chosen settlement administration firm, (Doc. 95 ("Bridley Decl.")), the proposed settlement agreement, (Doc. 94-1 ("Agreement")), and a proposed order preliminarily approving the settlement agreement, (Doc. 94-2). Because I find after a preliminary evaluation that the settlement is fair, reasonable, and the result of good faith negotiation, Plaintiffs' motion is GRANTED.

I. **Background**

I adopt the factual and procedural background set out in the "Factual and Procedural Background" section of the memorandum of law in support of the motion for preliminary settlement approval and provide a summary below. (Mem. at 3–11.)

"Plaintiffs are a class of individuals who want to have children but cannot conceive through sexual intercourse with their partners, and rather can become pregnant only with medical assistance, such as fertility treatments like intrauterine insemination ('IUI') and in vitro fertilization ('IVF')." (Mem. at 3.) "Plaintiffs alleged that Defendant issued, designed, marketed, and administered health benefits plans containing a discriminatory Definition of Infertility that, on its face, denied LGBTQ[] individuals equal access to their health benefits based on sex, in violation of federal law and New York state and city law." (*Id*. at 3–4.)

Plaintiffs propose two classes as part of the settlement agreement: One "'Injunctive Settlement Class,' is defined as all individuals in an Eligible LGBTQ+ Relationship[2], who are currently covered by a health plan provided or administered by Aetna in New York, and who currently or will in the future want to obtain coverage for IUI or IVF treatments." (Agreement

---

[2] "Eligible LGBTQ+ Relationship" is defined as "a personal relationship (but not including a surrogacy relationship) involving two individuals who self-identify as 'LGBTQ+,' consisting of one individual with a uterus who was in an LGBTQ+ relationship with a partner who was incapable of producing sperm due to being an individual who was assigned the female sex at birth, was intersex, or was assigned the male sex at birth and had transitioned or was in the process of transitioning to the opposite gender." (Agreement ¶ 33.)

3

¶ 55.) In short, the injunctive relief sought by this class is for Aetna to change its policy so that LGBTQ individuals will not need to pay out of pocket for fertility treatments. (*See* Mem. at 1–2.) The other proposed class—the "Damages Settlement Class"—consists of individuals in an Eligible LGBTQ+ Relationship with an Aetna insurance plan that covered infertility treatments during the class period,[3] but that had to pay out-of-pocket for rounds of IUI or IVF because of the way Aetna defined "infertility."[4] (*See* Agreement ¶ 66.) These individuals will be eligible to receive payments meant to cover damages incurred in paying out-of-pocket for fertility treatments. (*See* Mem. at 4–5.) Specifically, class members will each receive a payment of at least $2,300 as direct compensation for any prior out-of-pocket payments, plus a lump-sum payment of approximately $10,000 for "additional damages suffered." (*Id*. at 15; *see also* Agreement ¶¶ 66(c), 67(a).)

Plaintiffs filed their complaint on September 13, 2021, (Doc. 1), and filed a First Amended Complaint on November 5, 2021, (Doc. 20.) Defendant answered on January 21, 2022. (Doc. 26.) Following an extensive period of discovery, the parties engaged in settlement discussions, including before a retained mediator. (*See* Mem. at 7–11.) Plaintiffs filed their motion for preliminary settlement approval on May 3, 2024, seeking: (i) preliminary approval of the settlement; (ii) preliminary certification of the settlement class and appointment of Emery

---

[3] The class period is September 1, 2017 to May 31, 2024. (Agreement ¶ 19.)

[4] The Damages class is separated into three categories: "Category A" are individuals the parties have already identified fit the class definition. (Agreement ¶ 65(a).) "Category B" are individuals with Aetna coverage who had to pay out-of-pocket for fertility treatments, but for whom the parties have not determined were in an Eligible LGBTQ+ Relationship during the class period. (*Id*. ¶ 65(b).) "Category C" are individuals with Aetna coverage who received fertility treatments, but for whom the parties cannot identify whether the individuals incurred out-of-pocket expenses for fertility treatments or whether they were in an Eligible LGBTQ+ Relationship during the class period. (*Id*. ¶ 65(c).) The Agreement contemplates that Category A class members will be entitled to payment upon verification of their address and without submitting additional documentation, and that Category B and C class members will need to submit additional documentation in order to be eligible for payment under the Agreement. (*Id*. ¶ 66.)

Celli Brinckerhoff Abady Ward & Maazel LLP ("Emery Celli") and National Women's Law Center ("NWLC") as class counsel; (iii) approval of Atticus Administration ("Atticus") as the settlement administrator; (iv) approval of the form, content, and manner of the proposed notice to the class members; and (v) an order that Defendant pay costs of notice and administration pursuant to the settlement agreement. (Mem. at 2–3.)

## II. Legal Standard

### A. Preliminary Settlement Approval

It is within a district court's discretion to approve proposed class action settlements. *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th ed. 2002)). The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle. *See Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement. Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing. *See Silver v. 31 Great Jones Rest.*, No. 11-cv-7442, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013). "[C]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). However, "[e]ven at the preliminary approval stage, the Court's role in reviewing the proposed settlement 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692

(S.D.N.Y. 2019) (quoting *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)). Thus, a district court must consider whether the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii)) (emphasis omitted); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (same). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MD-1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted). In making this determination, courts consider the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2)(A)–(D). In addition to these four factors, courts in this Circuit also consider whether the settlement is fair, reasonable, and adequate based on the nine factors[5] established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[6] which partially overlap with the factors in Rule 23(e)(2)(C)–(D).

### B.  Conditional Settlement Class Certification and Appointment of Class Counsel

Conditional settlement class certification and the appointment of class counsel have several practical purposes "including avoiding the costs of litigating class status while facilitating

---

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

[6] The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace the "*Grinnell*" factors. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment, subdiv. (e)(2)).

a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing." *Almonte v. Marina Ice Cream Corp.*, No. 16-cv-00660, 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016). A proposed settlement class must meet the requirements of Rule 23(a) and (b)(3). Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). "The party seeking class certification bears the burden of establishing each of these elements by a 'preponderance of the evidence.'" *Lizondro-Garcia*, 300 F.R.D. at 174 (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). Once each of these four threshold requirements are met, "class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)." *Id.* To certify a class under Rule 23(b)(3), as the parties seek to do here, a court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

    **III.**     <u>**Discussion**</u>

        *A.*     ***Preliminary Approval of Class Settlement***

Based on the materials Plaintiffs have submitted and for the reasons outlined below, I find that the settlement merits preliminary approval.

        **1.**     **Adequacy of Representation**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys

7

are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted).

Plaintiffs' interests are not antagonistic to the interest of the other class members; rather, Plaintiffs and unnamed class members alike each suffered the same denial of coverage for the infertility benefits within their health benefits plan based on Aetna's Definition of Infertility. (*See* Mem. at 24.) The injunctive relief Aetna will provide will affect Plaintiff and the absent class members equally, and Plaintiff and absent class members will all receive the same lump-sum payment for Aetna's denial of fertility care. (*Id.*) It is true that the portion of the monetary relief meant to provide direct compensation for each class member's out-of-pocket fertility treatment costs may result in some class members receiving higher payments than others. (*See* Agreement ¶¶ 66(c), 67(a).) However, I do not find this creates antagonism among the class members, because the variations in payments bear a direct relationship to the variations in out-of-pocket damages sustained by each class member. Further, each class member will receive at least $2,300, not an insubstantial sum.

Plaintiffs' attorneys have also demonstrated the necessary qualifications and skill in this matter through their prior results and experience. (*See* Mem. at 24–25.) *See also Wise v. Kelly*, 620 F. Supp. 2d 435, 445 (S.D.N.Y. 2008) (taking judicial notice of Emery Celli's "high reputation" and "finding it to be one of the most competent, successful, and reputable civil rights firms practicing in this Court"); *Rosenfeld v. Lenich*, No. 18-CV-6720, 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021) (preliminarily approving settlement and noting that Emery Celli "are well regarded and highly capable"). Plaintiffs' counsel has also demonstrated their skill through their work on this case, which involved substantial discovery and resulted in a successful

8

mediated settlement. Therefore, Rule 23(e)(2)(A)'s adequacy of representation prong weighs in favor of approval.

### 2. Existence of Arm's-Length Negotiations

The existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis. Rule 23(e)(2)(B) requires a court to consider whether a proposed settlement "was negotiated at arm's length." Here, counsel for Plaintiffs engaged in extensive pre-filing research and document review, (*see* Mem. at 7; Salzman Decl. ¶ 8), in addition to over twelve months of discovery during the litigation, (*see* Docs. 34, 40, 52 (discovery extensions)). Discovery in this case entailed review of over 77,000 documents, (Mot. at 7–8), and Magistrate Judge Valerie Figueredo resolved a substantive discovery dispute between the parties, (*see* Docs. 41, 53). Given this discovery, the Parties had a full opportunity to acquaint themselves with the strength of the case prior to initiating negotiations. The Parties were represented by experienced counsel who were then aided in their negotiations by an experienced, privately retained mediator. (Mot. at 8–11.) "Courts have [] recognized a presumption of fairness when a settlement is reached with the assistance of a mediator." *Lea v. Tal Educ. Grp.*, No. 18-CV-5480, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (citing *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014)); *cf. id.* (applying presumption of fairness to a settlement reached with the assistance of a privately retained mediator). This culminated in an agreement in principle, (Doc. 75), followed by further negotiations to draft the Settlement Agreement, aided by the mediator, (Mot. at 11). All of this strongly suggests that the Settlement is the result of good faith arm's-length negotiations.

### 3. Adequacy of Relief

In assessing the adequacy of a settlement under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *In re Payment Card*, 330 F.R.D. at 36 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). This inquiry overlaps with the *Grinnell* factors of "complexity, expense, and likely duration of the litigation" along with "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *See Grinnell*, 495 F.2d at 463.

Plaintiffs faced significant litigation risks due to (among other things) the novelty of their theory of liability, the complex regulatory backdrop, the fact-intensive potential damages inquiry, and the relatively small number of individuals who fit the class definitions. (*See* Mot. at 28.) Emerging and unsettled legal issues include whether Aetna's fertility policy discriminated on the basis of sex within the meaning of the Affordable Care Act and whether Aetna could be liable under the Affordable Care Act for its role as a third-party administrator of self-funded plans. (*Id.*) These considerations weigh in favor of preliminary approval.

Under Rule 23(e)(2)(C)(ii), a court must evaluate the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Tal Educ. Grp.*, 2021 WL 5578665, at *11 (internal quotation marks omitted). "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (internal quotation marks omitted).

As discussed, the distribution plan here has been formulated by experienced counsel and is being overseen by Atticus, an experienced claims administrator. (*See* Bridley Decl. ¶¶ 1–4.) Atticus will provide direct notice by first-class mail to potential class members. (Agreement ¶ 75.) As discussed, many potential class members have already been identified by the parties as eligible for damages payments, and other potentially eligible individuals may submit straightforward documentation of their eligibility for payment. (*Id.* ¶¶ 55, 66.) The notice will include copies of the forms required to file a claim, as well as electronic links to the settlement website, where class members will be able to submit claims electronically. (*Id.* ¶¶ 75, 84.) Atticus will also make the claim forms available on the settlement website, where class members can submit the applicable forms required for eligibility for the lump-sum payment, and the class members who need to submit additional documentation may do so online as well. (*Id.*; Bridley Decl. ¶¶ 14–16.) Given the relatively small number of potential class members—estimated to be approximately 116 members, (Salzman Decl. ¶ 5(b))—there is little risk that this process will be unduly demanding or unable to filter out unjustified claims. Therefore, I find that this plan is fair, reasonable, and adequate.

In assessing the adequacy of the relief, Rule 23 also requires the court to examine the proposed attorneys' fees. Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Plaintiffs anticipate filing an application for $1,625,000 of attorneys' fees in advance of their motion for final settlement approval, and the Agreement includes a term that Aetna will not oppose the application. (*See* Agreement ¶ 96.) The Agreement also includes a term that Aetna will pay this sum separately from the funds used to pay the class members, (*id.* at ¶ 97), the parties represent that they reached this agreement only after the parties had agreed to the amount to be placed in the common settlement fund, (Salzman Dec. ¶ 18.) Even though the proposed fee award "'is entirely

11

independent of money awarded to the class,'" *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-CV-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (quoting *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)), I must still "assess the reasonableness of the fee award, particularly because practical realities suggest that generally 'a defendant is interested only in disposing of the total claim asserted against it,' and not in 'the allocation between the class payment and the attorneys' fees,'" *id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819–20 (3d Cir. 1995)). The relevant factors are whether the fee was negotiated "at arm's length" and "only after agreement had been reached on the substantive terms of the Settlement benefiting the class." *Sow v. City of New York*, No. 21-CV-533, 2024 WL 964595, at *6–7 (S.D.N.Y. Mar. 5, 2024). As discussed, both conditions have been met here. Thus, I find for purposes of preliminary approval that the attorneys' fee request appears reasonable, subject to final approval.

Finally, a court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), which includes "any agreement made in connection with the proposal," Fed. R. Civ. P. 23(e)(3). The only prior agreement here is a term sheet negotiated by the parties after their mediation session with Magistrate Judge Figueredo. This has since been superseded by the Settlement Agreement. (Doc. 75.) Absent any agreements impacting the Settlement, this consideration does not weigh against preliminary approval. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696 ("The Court has reviewed . . . [a separate] agreement [made in the case] and finds that it has no bearing on the preliminary approval analysis.").

### 4. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Agreement provides

that each Class member will receive a minimum of $2,300 to account for out-of-pocket fertility costs, and a pro rata of approximately $10,000 from the common fund. (Agreement at ¶¶ 55, 66.) This pro rata distribution is sufficient evidence of equitable treatment. *See In re Payment Card,* 330 F.R.D. at 47 (finding that a "*pro rata* distribution scheme is sufficiently equitable").

As part of this factor, I must also consider the incentive payments proposed in the Agreement. "Rule 23(e)(2)(D) does not forbid incentive awards." *Moses*, 79 F.4th at 245. "At the same time, the rule requires that courts reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* The parties have proposed a $15,000 service award to each of the four named Plaintiffs. (Agreement ¶ 104.) This award is within the range of service awards approved by courts in this District given counsel's representation regarding the contributions of the named Plaintiffs to this case.[7] (*See* Salzman Decl. ¶ 40.) Thus, the incentive awards are reasonable in light of the particular circumstances of this case.

### 5. Remaining *Grinnell* Factors

The *Grinnell* factors not expressly assessed under Rule 23(e)(2) include "[] the reaction of the class to the settlement; [] the stage of the proceedings and the amount of discovery completed; . . . [] the ability of the defendants to withstand a greater judgment; [] the range of reasonableness of the settlement fund in light of the best possible recovery; and [] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

---

[7] "Awards on an individualized basis have generally ranged from $2,500 to $85,000." *Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020).

All five of these *Grinnell* factors favor preliminary approval. First, the named Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued. *See, e.g.*, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-cv-3538 (VSB), 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) ("[T]he Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued.") Second, named Plaintiffs have "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of [her] claims and the adequacy of the settlement," *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006), given, as previously noted, the volume of pre-settlement discovery exchanged. Third, despite the fact that Aetna could potentially withstand a greater judgment, this fact "does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (internal quotation marks omitted). Finally, in considering the settlement in light of the best possible recovery and the risks of litigation, the Agreement provides adequate recovery for the class, of which each member will receive a substantial pro rata payment from the common fund of approximately $10,000, in addition to at least $2,300 as compensation for out-of-pocket fertility treatment costs they have incurred. (Agreement ¶¶ 55, 66.) Given the litigation risks already discussed, this is a reasonable and adequate settlement.

      **B.**    ***Conditional Class Certification***

Plaintiffs have met the requirements for a class set out by Rule 23(a)(1)–(4). The class is sufficiently numerous because, according to the parties' estimate, it consists of approximately 116 members. (Salzman Decl. ¶ 5(b).) Common issues predominate across the class because their harms stem from Aetna's allegedly discriminatory definition of "infertility," which applies equally to all class members and allegedly resulted in Aetna-insured LGBTQ individuals paying

more for fertility treatments than Aetna-insured non-LGBTQ individuals. Plaintiffs' claims are typical of the class because their claims, like all class members, arise out of these factual and legal circumstances. The adequacy requirements are met both because Plaintiffs' interests are not antagonistic to those of the class and because, as discussed above, their attorneys have sufficient skill and experience to competently represent the class and have achieved a sound result. Because the class certification request is made in the context of settlement only, I need not address the issue of manageability. *See Soler v. Fresh Direct, LLC*, No. 20-cv-3431, 2023 WL 2492977, at *6 (S.D.N.Y. Mar. 14, 2023).

Furthermore, the predominance and superiority requirements of Rule 23(b)(3) are satisfied because the common legal and factual issues already discussed "predominate over any questions affecting only individual members" and a class action is a superior method of resolving these issues. Fed. R. Civ. P. 23(b)(3).

### IV. Conclusion

For the foregoing reasons, Plaintiffs' unopposed motion for preliminary approval of the settlement is GRANTED on the terms set out in the Order Preliminarily Approving Settlement, Directing Notice to Class Members, and Scheduling a Fairness Hearing that will issue in conjunction with this Opinion & Order. The Court will hold a hearing on October 10, 2025 at Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY, at 2:00pm in Courtroom 518.

Accordingly, it is hereby:

ORDERED that, pending the Final Approval Hearing, all deadlines in this action save those set out in this Opinion & Order and in the Order Preliminarily Approving Settlement, Directing Notice to Class Members, and Scheduling a Fairness Hearing, for the purpose of executing the Settlement are stayed.

IT IS FURTHER ORDERED that I shall retain jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement.

The Clerk of Court is respectfully directed to close the motion at Doc. 92.

SO ORDERED.

Dated: October 8, 2024
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge