# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

EMMA GOIDEL, ILANA LEE, MADELEINE
LEE, And LESLEY BROWN, On Behalf Of
Themselves And All Others Similarly Situated,

                         *Plaintiffs*,

     -against-

AETNA LIFE INSURANCE COMPANY,

                         *Defendant*.

Case No. 1:21-cv-07619 (VSB)

## <u>AMENDED SETTLEMENT AGREEMENT</u>

      **THIS CLASS ACTION LAWSUIT SETTLEMENT AGREEMENT** ("Agreement") is made and entered into as of the 18th day of April 2024, by and among Defendant Aetna Life Insurance Company and Named Plaintiffs Emma Goidel, Ilana Lee, Madeleine Lee, and Lesley Brown ("Class Representatives" or "Named Plaintiffs"), individually and on behalf of the class of individuals they seek to represent (collectively, the "Plaintiffs") (altogether, the "Parties").

      **WHEREAS,** on September 13, 2021, Plaintiff Goidel filed a Complaint alleging, *inter alia*, that Aetna is liable under 42 U.S.C. § 18116(a), N.Y. Exec. Law § 296(2)(a), and N.Y.C. Admin. Code § 8-107(4) for discrimination on the basis of sex, sexual orientation and gender identity; and

      **WHEREAS,** on November 5, 2021, the Named Plaintiffs filed a First Amended Complaint ("Amended Complaint") alleging, *inter alia*, that Aetna is liable under 42 U.S.C. § 18116(a), N.Y. Exec. Law § 296(2)(a), and N.Y.C. Admin. Code § 8-107(4) for discrimination on the basis of sex, sexual orientation and gender identity; and

Final Execution Copy

**WHEREAS,** in the Amended Complaint, the Named Plaintiffs sought prospective injunctive relief and damages on behalf of two classes of similarly situated individuals under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), who have or would have been denied healthcare coverage for infertility treatment; and

**WHEREAS,** Aetna denied any and all liability arising out of Plaintiffs' allegations; and

**WHEREAS,** Plaintiffs' Counsel thoroughly analyzed and evaluated the merits of the claims made against Defendant in the Amended Complaint, and based on their analysis and evaluation of a number of factors, and in light of the uncertainty and delay attendant to litigation, Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Named Plaintiffs and the Class Members; and

**WHEREAS,** Defendant denies all the allegations made in the Amended Complaint but nonetheless, without admitting or conceding any liability or damages whatsoever, has agreed to settle the action on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation; and

**WHEREAS,** the Parties desire to enter into an agreement to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability; and

**WHEREAS,** the terms of this Settlement Agreement ("Agreement") were extensively and vigorously negotiated in good faith over the course of approximately eleven months; and

2

WHEREAS, the Parties engaged in a mediation with Mediator the Honorable Steven M. Gold (retired) to further negotiate the terms of this Agreement; and

WHEREAS, the Honorable Steven M. Gold, who will serve as Special Master to assist in administering the Agreement, has reviewed and approved the Allocation Plan to administer the Common Fund (both as defined below); and

WHEREAS, the negotiations have resulted in this Agreement, which, subject to the approval of the Court, settles this Civil Action (as defined below) in the manner and upon the terms set forth below; and

WHEREAS, the signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Class Members to the terms and conditions hereof, subject to Court approval.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

## INTRODUCTION

1. The Parties consider this Agreement to be fair, reasonable, and adequate.

2. Defendant denies any and all liability and denies that it discriminated on the basis of sex, sexual orientation, and gender identity, as alleged in the Amended Complaint.

3. This Agreement does not, and shall not be deemed to, constitute an admission by Defendant as to the validity or accuracy of any of the allegations, assertions, or claims made by Plaintiffs. This Agreement does not constitute an admission, adjudication, or finding on the merits of this Civil Action.

4. This Agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of this Agreement.

3

5.    The Parties agree that this Agreement shall apply only to Commercial Plans, as that term is defined below.

6.    Class Counsel has extensively investigated and litigated the claims asserted in this Civil Action and—taking account of the contested issues involved, the expense and time necessary to prosecute the Civil Action through trial, the risks and costs associated with further prosecution of the Civil Action, the uncertainties of complex litigation, and the substantial benefits to be received pursuant to this Agreement—the Named Plaintiffs are sufficiently informed and satisfied that the terms of this Agreement are an appropriate and fair resolution of the Class Members' claims.

## DEFINITIONS

7.    The capitalized terms below shall have the meanings defined in this Section wherever used in this Agreement, any appendices integrated by reference, and for the purposes of this Agreement only.  Capitalized terms defined in other Sections of this Agreement shall have the defined meanings whenever used in this Agreement, and for the purposes of this Agreement only.

8.    "Administrative Costs" are the fees, charges, and expenses incurred by the Administrator in connection with or related to the implementation, administration, or performance of any of the duties of the Administrator set forth in this Agreement, including any expenses or costs the Administrator incurs for notice to Class Members, as described in paragraphs 75-95.

9.    "Administrator" means the Claims Administrator appointed by the Court to administer the Common Fund, disseminate the Claim Form Package and provide notice, and review and determine the validity and amount of claims submitted by Class Members, according to the procedures set forth herein, with its further duties defined in paragraphs 75-95, and described in further detail in the Administrative Proposal of Atticus Administration LLC attached as

4

Appendix A. In the event of any contradiction between the terms of this Agreement and the terms of the Administrative Proposal, the terms of this Agreement control.  The Parties agree that, subject to Court approval, Atticus Administration LLC will serve as the Administrator, and will act pursuant to terms of this Agreement and the terms of all Court orders, including the Preliminary Approval Order and the Final Approval Order.

10.    "Aetna" or "Defendant" means Defendant Aetna Life Insurance Company, and Aetna Health Inc. as administrator of certain Commercial Plans as defined herein.

11.    "Allocation Plan" means the plan setting the terms for the division and distribution of any settlement payments made to Class Members hereunder, as established by Class Counsel and the Administrator, with assistance from the Special Master, as appropriate.

12.    "Attestation" refers to the form, which the Parties will agree upon prior to submission of the preliminary approval motion, which will require that, in order to be eligible for payment pursuant to paragraphs 64-72, Category B, Category C and Category D-B Class Members provide information establishing that at  the time they received an infertility service for which they sought, or could have sought, coverage from Aetna, they were an individual with a uterus and in an LGBTQ+ relationship with a partner who was incapable of producing sperm due to being an individual who was assigned the female sex at birth, was intersex, or was assigned the male sex at birth and had transitioned or was in the process of transitioning to the opposite gender.

13.    "Bar Date" is the date established by the Court by which any Class Member who wishes to receive payment pursuant to this Agreement (other than payment of the Default Common Fund Amount to Category A Class Members) must submit online or by mail the requisite forms in the Claim Form Package to qualify as Class Members or to be eligible for additional payments pursuant to the Allocation Plan, as set forth in paragraphs 65-67 below, subject to the

exceptions set forth in paragraph 68 below.  The Parties agree that this date should be at least 45 days before the Final Approval Hearing.

14.    "Civil Action" means *Goidel et al. v. Aetna Life Insurance Co.*, No. 21-cv-7619 (S.D.N.Y.).

15.    "Claim Form Submission" means the form, which the Parties will agree upon prior to submission of the preliminary approval motion, and supporting documentation, that Category C and Category D Class Members will be required to submit in accordance with paragraph 65(c). below.

16.    "Claim Form Package" refers collectively to the forms for the Attestation, the Claim Form Submission, the Miscellaneous Harm Submission, the Out-of-Pocket Expense Submission, and the Proof of Greater Covered Care Submission, to be distributed to Potential Class Members, as appropriate, by the Administrator.

17.    "Class Counsel" means Emery, Celli, Brinckerhoff, Abady, Ward & Maazel LLP and the National Women's Law Center.

18.    "Class Members" means those persons who satisfy the qualifications to participate as a Class Member in Category A, B, C or D as set forth in paragraph 65 of this Agreement, and who do not file a valid and timely Opt-Out as provided in paragraph 105 of this Agreement, and thereby qualify for participation in the class.

19.    "Class Period" means the period commencing on September 1, 2017, and ending on May 31, 2024.

20.    "Class Representatives" or "Plaintiffs" or "Named Plaintiffs" mean Emma Goidel, Ilana Lee, Madeleine Lee, and Lesley Brown.

21.    "Commercial Plan" means domestic health benefits plans, student health benefits plans, or individually funded health insurance plans (including individually-sold Aetna plans eligible for a premium subsidy pursuant to the Patient Protection and Affordable Care Act) administered by Aetna Life Insurance Company or Aetna Health, Inc.  For purposes of clarity, the obligations on Aetna herein do not apply to (1) products and services offered outside the United States by Aetna International Inc. and its subsidiaries; (2) products or services provided to government entities or government-sponsored plans (i.e., Medicare Advantage plans and/or Medicaid plans) by Aetna Medicaid Administrators LLC, the Aetna Better Health entities or any other Aetna affiliate; (3) those plans, such as Joint Claim Administration plans, where Aetna Life Insurance Company was not or is not the party responsible for handling health benefits claims adjustment and adjudication, or medical necessity determinations; or (4) any benefits plan administered by any subsidiary or affiliate of CVS Health Corporation not within the definition of Commercial Plan above.  For the avoidance of doubt, the definition of Commercial Plan includes employer-sponsored plans whose membership includes individuals whose premiums were partly funded under New York State's Health Insurance and Premium Assistance program or a similar premium support program funded by the State of New York.

22.    "Common Fund" means a Qualified Settlement Fund ("QSF") bank account to be established by the Administrator for the benefit of the Damages Settlement Class containing the Common Fund Amount.  The QSF shall be interest bearing if the costs associated with making it interest bearing (such as tax preparation and bank fees) are less than the likely interest earned. If the QSF is an interest-bearing account, any amount remaining after the costs described in this paragraph will be subject to the conditions of paragraphs 67(e)-(f) herein.

23.    "Common Fund Amount" means the amount to be deposited into the Common Fund in the amount of $2,000,000.

24.    "Counsel for Defendant" or "Defendant's Counsel" means Baker Botts L.L.P. and Calcagni & Kanefsky LLP.

25.    "Court" means the United States District Court for the Southern District of New York.

26.    "CPB No. 327" means Aetna's Clinical Policy Bulletin Number 0327 regarding "Infertility" in all of its iterations, including all operative versions, past and present, in effect during the Class Period.

27.    "Damages Settlement Class" means the group of individuals who qualify to be Class Members.

28.    "Default Common Fund Amount" means the amount to be paid to each individual who satisfies the qualifications to participate as a Class Member in Category A, B C, or D. The Default Common Fund Amount shall be set in the Allocation Plan.

29.    "Default Dollars for Benefits Amount" means the amount to be paid to a Class Member who has not had their claims reimbursed by Aetna for dates of service prior to June 1, 2024, which shall be equal to $2,300.

30.    "Definition of Infertility" means the definition of infertility in Aetna's CPB No. 327 or in mirroring self-funded plan definitions in effect when the Amended Complaint was filed, which required individuals without a sperm-producing partner to undergo 6 or 12 cycles of IUI, depending on the individual's age, in order to establish unexplained infertility and qualify for healthcare coverage of infertility services.

31.     "Dollars for Benefits Payment" means the Default Dollars for Benefits Amount or other amount as determined by Aetna upon a Class Member's submission of Proof of Greater Covered Care.

32.     "Effective Date for Payment" or "Effective Date" means the day on which the Final Approval Order becomes final.  The Final Approval Order will become final (a) if no objector has lodged a timely objection, on the date of entry of the Final Approval Order, or (b) if an objector has lodged a timely objection, when the time for that objector to appeal has expired or, if the objector has appealed from the Final Approval Order or any portion thereof, on the date when the appeal results in the affirmance of the Court's Final Approval Order of this Agreement.

33.     "Eligible LGBTQ+ Relationship" for the purposes of this Agreement means a personal relationship (but not including a surrogacy relationship)_involving two individuals who self-identify as "LGBTQ+," consisting of one individual with a uterus who was in an LGBTQ+ relationship with a partner who was incapable of producing sperm due to being an individual who was assigned the female sex at birth, was intersex, or was assigned the male sex at birth and had transitioned or was in the process of transitioning to the opposite gender.

34.     "Execution Date" shall mean the date this Agreement is executed by Class Counsel and Counsel for Defendant.

35.      "Final Approval Order" means an Order by the Court, after a fairness hearing, granting Final Approval to this Agreement (which means the Court has found the settlement to be fair, reasonable, and adequate and approves this Agreement), approving Class Counsel's fees and costs, approving the Administrative Costs, approving Service Award Payments, and dismissing the Civil Action with prejudice.

36.    "Final Approval Hearing" or "Fairness Hearing" means the hearing to be scheduled by the Court to determine, among other things, whether the Court should approve the proposed Agreement as fair, reasonable, and adequate.

37.    "IUI" means intrauterine insemination, a medical procedure that can lead to a pregnancy. The procedures encompassed by this definition for the purposes of this agreement are those covered by CPT Codes S4035, 58321, and 58322.

38.    "IVF" means in vitro fertilization, a medical procedure that can lead to a pregnancy and that is more costly and more invasive than IUI.

39.    "Miscellaneous Harm Submission" means a form, which the Parties will agree upon prior to submission of the preliminary approval motion, and supporting documentation, evidencing damages incurred during the Class Period, which may be submitted by Potential Class Members, in accordance with the requirements set forth in the Allocation Plan, attached as Appendix B.

40.    "Opt-Out" is any potential Class Member who files a timely written request to be excluded from the Class, in accordance with the requirements set forth in paragraph 105.

41.    "Out-of-Pocket Expense Submission" means a form, which the Parties will agree upon prior to submission of the preliminary approval motion, and supporting documentation, evidencing expenses incurred during the Class Period, which may be submitted by Class Members, in accordance with the requirements set forth in the Allocation Plan, attached as Appendix B.

42.    "Parties" means Plaintiffs Emma Goidel, Ilana Lee, Madeleine Lee, and Lesley Brown, and Defendant.

43.    "PHI" means Protected Health Information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), encompassing any information within an

individual's medical record that can personally identify them and was generated, utilized, or shared during diagnosis or treatment.

44.    "PII" means personally identifiable information encompassing information that, when used alone or with other relevant data, can identify an individual, such as an individual's full name, Social Security Number, date of birth, and address.

45.    "Potential Class Members" means those persons who receive a Claim Form Package and apply for the right to participate in the settlement and receive benefits pursuant to paragraph 65.

46.    "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

47.    "Preliminary Approval Order" means the Order entered by the Court preliminarily approving this Agreement, certifying the Class subject to Final Approval, scheduling a Fairness Hearing, approving a plan of notice to the Class, and appointing the Administrator.

48.    "Proof of Greater Covered Care Submission" means a form, which the Parties will agree upon prior to submission of the preliminary approval motion, and supporting documentation, which may be submitted to Aetna by Potential Class Members demonstrating that person's having undergone IUI, and having incurred any other covered expenses related to IUI during the Class Period, which would have been reimbursed under the Class Member's healthcare plan in excess of $2,300.

49.    "Publication Notice Plan" means the Plan for Publication Notice prepared by the Administrator and included in the Administrative Proposal attached as Appendix A, subject to the terms of paragraphs 65(e).

50.    "Released Parties" means Aetna and all of its predecessors, successors, assigns, past, present or future direct or indirect parents, subsidiaries, affiliated entities and their respective plan administrators, shareholders, directors, officers, employees, trustees, accountants, representatives, administrators, insurers, agents and attorneys with respect to any Commercial Plan covered by this Agreement.

51.    "Special Master" means the individual appointed by the Court to administer the Common Fund after Default Common Fund Amount payments have been made, in order to determine payment of any residual funds according to the Allocation Plan attached as Appendix B.  The Parties agree that Hon. Steven Gold will serve as the Special Master, and will act pursuant to terms of this Agreement, the terms of the Preliminary Approval Order, and the terms of the Final Approval Order.

52.    "Summary Notice" means a one-page English and a one-page Spanish summary of this Agreement in a form approved by the Court.

## CLASS CERTIFICATION AND PRELIMINARY APPROVAL

53.    Class Counsel will move for Preliminary Approval of this Agreement and its motion will include proposed notices, a proposed Preliminary Approval Order, and a proposed Claim Form Package.  The proposed Preliminary Approval Order will request certification of the Injunctive Settlement Class and the Damages Settlement Class for settlement purposes and will include the findings required by Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). The Preliminary Approval Motion will also seek the setting of a Fairness Hearing for Final Approval of the settlement.  Defendant will not oppose Plaintiffs' motion so long as it conforms to the terms of this Settlement Agreement.

54.     The Parties agree to ask the Court to certify the Injunctive Settlement Class for settlement purposes pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure at Preliminary Approval.

55.     The "Injunctive Settlement Class" is defined as all individuals in an Eligible LGBTQ+ Relationship, who are currently covered by a health plan provided or administered by Aetna in New York, and who currently or will in the future want to obtain coverage for IUI or IVF treatments.

56.     The Parties agree to ask the Court to certify the Damages Settlement Class for settlement purposes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure at Preliminary Approval.

## INJUNCTIVE RELIEF

57.     ***Diagnostic IUI.***   On June 1, 2024, Aetna will begin rolling out implementation of a new policy for the administration of intrauterine insemination benefits ("IUI"), making IUI a standard medical benefit in all of the fully insured commercial plans it issues, subject to any legal or regulatory requirements (hereinafter "New IUI Policy"). For self-funded plans that Aetna administers that include coverage for infertility services, Aetna will incorporate the New IUI Policy in the same manner as its fully insured commercial plans, subject to a plan sponsor's request for a deviation.  The New IUI Policy may be updated by Aetna as needed based on changes to standardized procedure ("CPT") or diagnostic coding.

58.     ***Infertility CPB.***  Aetna will revise its CPB No. 327 - Infertility to include language that substantially conforms to the definition of "Infertility" published by the American

Society for Reproductive Medicine ("ASRM") in 2023[1] such that the criteria for determining whether a person is considered infertile shall include the need for medical intervention, including, but not limited to, the use of donor gametes in order to achieve a successful pregnancy. The Parties agree that individuals with a uterus in an Eligible LGBTQ+ Relationship as defined herein qualify as infertile according to this definition. Following the revision to CPB 327, as set forth herein, Aetna shall, where applicable and not otherwise modified by plan terms, administer future claims for infertility services in accordance with the revised CPB 327; provided, however, that Aetna will alert Class Counsel of changes to CPB 327 and Plaintiffs reserve the right to seek Court intervention if they believe the change is inconsistent with this Agreement and Aetna reserves the right to object to such Court intervention..

59.    ***Intent of Policy.***  Aetna will adopt training policies and procedures and implement necessary programming changes with the purpose and intent that CPB No. 327 and the New IUI Policy shall be applied and administered in a non-discriminatory manner, regardless of sexual orientation.

      a.    Aetna will apply and administer its clinical policies such that individuals with a uterus in an Eligible LGBTQ+ Relationship at the time of seeking IVF are not required to undergo any greater number of IUI cycles to qualify for IVF than individuals with a uterus in a heterosexual relationship; provided that Aetna may continue to provide individualized criteria for all members whose plans provide an IVF benefit to proceed to IVF after

---

[1] American Society for Reproductive Medicine, "Definitions of infertility: a committee opinion," Practice Committee of the American Society for Reproductive Medicine (Publication Date: December 1, 2023).

undergoing fewer or zero IUI cycles, including heterosexual members and members in an Eligible LGBTQ+ Relationship, to account for age and for qualifying medical conditions that impact fertility (for example, but without limitation, a history of ectopic pregnancy). The Parties understand and acknowledge that many plans do not cover IVF for any reason. Nothing in this section will be construed to require IVF coverage benefits to be made available to individuals on plans that do not cover IVF in the first instance.

b.    Aetna will apply and administer its clinical infertility policies in a manner which allows for treating physician peer to peer input regarding whether any IUI cycles needed to qualify for IVF coverage, *i.e.*, those pursuant to Aetna's "lesser before greater" policy, need to be medicated versus unmedicated.

60.    To effectuate these changes in all of Aetna's coverage products, including both the fully insured plans it underwrites and the self-funded plans providing coverage for infertility services that it administers, Aetna will ensure that relevant offerings, promotional materials, website content, and other publications will conform to the New IUI Policy and all changes to CPB No. 327 outlined in paragraphs 57-58.

61.    As soon as practicable and in no event later than the Final Approval Order, Aetna will implement all necessary programming changes and provide public and internal education and training to implement the New IUI Policy and all changes to CPB No. 327. At minimum, this will include: (1) training sessions regarding these policy changes for all Aetna employees who make precertification and post-service coverage determinations and for the Aetna employees who answer Aetna member inquiries and complaints related to infertility; (2)  an

15

internal review of all public facing documents that mention Aetna's prior policy to change each document to reflect the policy changes; and (3) public communications advertising these policy changes.

62.     Aetna will provide these new policy, education, and training materials referred to in the preceding paragraph to Plaintiffs for review and input as soon as practicable and on a rolling basis, with the first drafts to be provided on or about May 31, 2024, and will submit any policies subject to review and approval by regulators to any such regulator, including the New York Department of Financial Services as soon as is practicable.

63.     Aetna will finalize and publish the revision to its CPB No. 327 – Infertility, in accordance with paragraph 58, prior to the entry of the Final Approval Order. The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction for the implementation and enforcement of the injunctive relief described in this section for a period of four (4) years from the date of the Final Approval Order.

## CLAIMS AWARDS TO CLASS MEMBERS AND CLAIMS PROCESS

64.     Subject to the terms and conditions of this Agreement, Aetna agrees to pay Dollars for Benefits Payments, the Common Fund, payments for valid Proof of Greater Covered Care submissions, Administrative Costs, Class Representative Service Awards, and Attorneys' Fees and Costs as determined by the Court.

65.     ***Class Categories.*** The parties agree that the settlement is intended to cover New York Aetna Commercial Plan members who obtained or attempted to obtain one of an agreed-upon set of qualifying IUI services during the Class Period, which coverage Aetna denied or would have denied had it been submitted to Aetna, and who were in an Eligible LGBTQ+ Relationship at the time of seeking such services. For the avoidance of doubt, the Parties agree that the classes

16

below apply only to members who meet the criteria laid out elsewhere in the Agreement, which include the following: (1) they were covered, at the time of service, by a plan that offered coverage for infertility treatments, and (2) there is not a reason, other than the Definition of Infertility, why the individual does not qualify for coverage under the individual's healthcare plan. Using Aetna's member files, the parties have jointly identified certain individuals who meet the qualifications to participate in the class and other individuals who may so qualify upon the submission of additional information, as follows:

a.   Category A:  The Parties have jointly identified a group of individuals whose Aetna member files contain one of an agreed-upon set of qualifying IUI or mixed IUI and IVF codes associated with precertification or claim requests during the Class Period and whose Aetna member files also establish that the member was in an Eligible LGBTQ+ Relationship at the time of seeking such services.  These individuals are Category A Class Members and shall be automatically entitled to participate in the Damages Settlement Class, subject to member Opt-Out rights and upon verification of their address by the Administrator.

b.   Category B:  The Parties have jointly identified a second group of individuals whose Aetna member files contain one of an agreed-upon set of qualifying IUI codes associated with precertification or claim requests during the Class Period, but for whom Aetna cannot determine from its member files whether they were in an Eligible LGBTQ+ Relationship during the Class Period. These individuals will receive notice and an opportunity to submit the Attestation. The individuals who timely submit a

17

properly completed Attestation will be entitled to participate in the Damages Settlement Class.

c.    <u>Category C</u>:  The Parties have jointly identified a third group of individuals whose Aetna member files contain one of an agreed-upon set of qualifying IVF-only codes associated with precertification or claim requests during the Class Period, but for whom Aetna cannot determine from its member files their IUI history and whether they were in an Eligible LGBTQ+ Relationship during the Class Period.  The intent of this category is to cover individuals who, during the Class Period, were in an Eligible LGBTQ+ Relationship and who submitted claims or precertification requests for qualifying IVF-only codes but who also incurred out-of-pocket expenses for IUI services that would have been covered by their Aetna plan. These individuals will receive notice and an opportunity to submit (1) the Claim Form Submission and (2) the Attestation. The individuals who timely submit the items identified in (1) and (2) above will be entitled to participate in the Damages Settlement Class, subject to confirmation by Aetna that the individual was, at the time such out-of-pocket costs were incurred, a New York member of  a Commercial Plan that would otherwise have provided coverage for the IUI services for which the member incurred out-of-pocket expenses.

d.    <u>Category D</u>: The Parties have jointly identified a fourth group of individuals whose Aetna member files contain one of an agreed-upon set of qualifying IUI or mixed IUI and IVF codes associated with precertification or claim

requests during the Class Period, and whose Aetna member files also establish that the individual had a denial that was followed by an approval within 90 days, or was otherwise paid by Aetna.  There are two subcategories within Category D:

     i.  <u>Category D-</u>A: Members in Category D-A are individuals whose Aetna member files establish that the member was in an Eligible LGBTQ+ Relationship at the time of seeking such services.

    ii.  Category D-B: Members in Category D-B are individuals for whom Aetna cannot determine from its member files whether they were in an Eligible LGBTQ+ Relationship at the time of seeking such services.

All individuals in Category D will receive notice and an opportunity to submit the Claim Form Submission evidencing out-of-pocket expenses for IUI services prior to the claim's approval that would have been covered by their Aetna plan.  Individuals in Category D-B will also receive an opportunity to submit the Attestation. The individuals in D-A who timely submit the Claim Form Submission and the individuals in D-B who timely submit the Claim Form Submission and the Attestation will be entitled to participate in the Damages Settlement Class, subject to confirmation by Aetna that the individual's expenses were incurred prior to their claim being approved and was, at the time such out-of-pocket costs were incurred, a New York member of a Commercial Plan that would otherwise have provided coverage for the IUI services for which the member incurred out-

of-pocket expenses had their precertification request or claim been approved initially.

e.    <u>Direct Notice</u>.  The parties have jointly identified Potential Class Members, consisting of Category A individuals and individuals who may qualify for Categories B, C or D, and who will directly receive notice of the settlement, in a form agreed to by the parties.  The notice will advise Potential Class Members of their right to opt out of the settlement, pursuant to paragraph 105.  The notice also will advise Potential Class Members of their opportunity to submit Proof of Greater Covered Care, Out-of-Pocket Expense, and Miscellaneous Harm Submissions pursuant to paragraphs 66-67.  The notice also will advise each potential member of Category B of the Attestation necessary to qualify for the class, each potential member of Category C of the Claim Form Submission and Attestation necessary to establish that they qualify for the class, each potential member of Category D-A of the Claim Form Submission necessary to establish that they qualify for the class, and each potential member of Category D-B of the Claim Form Submission and Attestation necessary to establish that they qualify for the class pursuant to paragraph 65.

f.    <u>Published Notice</u>.  The settlement also calls for published notice, allowing individuals who were not previously identified by the parties an opportunity to submit (1) Claim Form Submission and (2) the Attestation. The individuals who timely submit the items identified in (1) and (2) above will be Category C Class Members, subject to confirmation by Aetna that the

individual was, at the time such out-of-pocket costs were incurred, a New York member of a Commercial Plan that would otherwise have provided coverage for the IUI services for the which the member incurred out-of-pocket expenses.

66.    ***Dollars for Benefits.***  Class Members shall be entitled to receive a Dollars for Benefits Payment as compensation for IUI benefits their individual plans would have paid had Aetna approved their request for coverage, as follows:

a.    <u>Aetna Preliminary Claim Review</u>.  For each Class Member, Aetna will review its records to determine whether such individual was covered at the time of service by a plan that offered coverage for infertility treatments or whether such individual otherwise does not qualify for such coverage under the individual's healthcare plan for reasons other than the Definition of Infertility.  If Aetna determines that any such individual either did not have infertility coverage at the time of service or the individual otherwise does not qualify for reimbursement, as set forth above, then such individual shall not be entitled to receive any Dollars for Benefits Payment hereunder. Aetna will inform Class Counsel of any individuals it has determined do not qualify for reimbursement and the justification for Aetna's determination. For the avoidance of doubt, the Parties understand and agree that no Class Member shall receive a Dollars for Benefits Payment hereunder for a claim for infertility treatment that has already been reimbursed or if the Class Member otherwise does not qualify for such coverage under their healthcare plan for reasons other than the Definition of Infertility.

21

b.     <u>Default Dollars for Benefits Amount</u>.  Each Class Member who has not already been reimbursed or is not otherwise excluded pursuant to paragraph 66(a) above, shall be entitled to receive a Default Dollars for Benefits Amount, in the amount of $2,300.

c.     <u>Proof of Greater Covered Care</u>.   Each Class Member, who is not excluded pursuant to paragraph 66(a) above, and who submits a valid Proof of Greater Covered Care submission evidencing that they underwent covered infertility treatment that would have resulted in reimbursement exceeding either (1) the amount the Class Member's claim was previously reimbursed by their Aetna healthcare plan during the Class Period, or (2) the Default Dollars for Benefits Payment, shall receive additional compensation equal to the amount their Aetna healthcare plan would have reimbursed, as determined by Aetna, in its sole discretion.   For the avoidance of doubt, the Parties understand and agree that no Class Member shall receive a Proof of Greater Covered Care payment hereunder for a claim for infertility treatment that has already been reimbursed. Class Members must submit valid Proof of Greater Covered Care submissions by the Bar Date.  If a Class Member's untimely submission is received within two (2) months of the Bar Date, Aetna shall pay such claims if the claimant establishes "good cause" for their untimely submission. If Aetna requires additional information from a Class Member to determine the additional compensation amount, it may pay such additional compensation after receiving said information, even if received after the Effective Date.

22

d.      <u>Timing of Dollars for Benefits Payments</u>.    Dollars for Benefits Payments
shall be processed and paid as follows:

i. By 90 days after the Bar Date, Aetna will inform the
Administrator as to whether: (1) the Class Member is entitled to
the Default Dollars for Benefits Amount; or (2) is excluded
pursuant to paragraph 66(a) above.  Class Counsel will have the
opportunity to contest this determination, which shall ultimately
be resolved by the Special Master.

ii. Category A Class Members who do not opt-out pursuant to
paragraph 105 will be entitled to the Default Dollars for Benefits
Amount, equal to $2,300, upon verification of their address by
the Parties, unless their claim has already been reimbursed or
they are otherwise excluded pursuant to paragraph 66(a) above.
On the Effective Date for Payment, this Default Dollars for
Benefits Amount payment will be sent to these members in a
check by Aetna.  Category A Class Members do not need to
submit anything to receive a check for the Default Dollars for
Benefit Amount.

iii. Category B Class Members will be entitled to the Default
Dollars for Benefits Amount, equal to $2,300, upon timely
submission of the Attestation, as set forth in paragraph 65(b)
above, and upon verification of their address by the Parties,
unless their claim has already been reimbursed or they are

23

otherwise excluded pursuant to paragraph 66(a) above.  On the Effective Date for Payment, this Default Dollars for Benefits Amount payment will be sent to these members in a check by Aetna.

iv.  Category C Class Members will be entitled to the Default Dollars for Benefits Amount, equal to $2,300, upon timely submission of a Claim Form Submission and Attestation, as set forth in paragraph 65(c) above, and upon verification of their address by the Parties, unless their claim has already been reimbursed or they are otherwise excluded pursuant to paragraph 66(a) above.  On the Effective Date for Payment, this Default Dollars for Benefits Amount payment will be sent to these members in a check by Aetna.

v.  Category D Class Members will be entitled to the Default Dollars for Benefits Amount, equal to $2,300, upon timely submission of a Claim Form Submission, and an Attestation for those in Category D-B, as set forth in paragraph 65(d) above, and upon verification of their address by the Parties, unless their claim has already been reimbursed or they are otherwise excluded pursuant to paragraph 66(a) above. On the Effective Date for Payment, this Default Dollars for Benefits Amount payment will be sent to these members in a check by Aetna.

24

vi. Class Members who submit a valid Proof of Greater Covered Care submission and who qualify for additional Dollars for Benefits compensation, as determined by Aetna, will be entitled to the Dollars for Benefit Payment upon completion of Aetna's approval of their Proof of Greater Covered Care submission. On the Effective Date for Payment, the Dollars for Benefits Payments will be sent to these members in a check by Aetna. The Parties agree that in certain circumstances, Aetna may be required to issue all or part of any additional Dollars for Benefits Payments to the member's healthcare provider (for example, where the member has a bill from an Aetna network provider for the service in question). The final determination whether any such member qualifies for any such additional compensation, and the amount of any such compensation, shall be made by Aetna, in its sole discretion.

vii. By 90 days after the Bar Date, Aetna will inform the Administrator of the Dollars for Benefit Payment applicable to each Class Member who also submits an Out-of-Pocket Expense Submission.

viii. No payment shall be made to Class Members before the Effective Date for Payment. Claims will be processed between the date of Preliminary Court Approval and the Effective Date

25

for Payment.  Upon the Effective Date for Payment, processed claims will be paid.

e.    Aetna agrees to re-issue the checks it previously provided for claims reimbursement to Named Plaintiffs.  For other Class Members who did not cash reimbursement checks or who otherwise believe that they were not reimbursed, and for whom Aetna's records reflect they previously received a check for the services for which they are now seeking reimbursement, Aetna will identify a customer assistance process through which that member can discuss their specific scenario with Aetna and attempt to reach a resolution.

67.    ***Common Fund.***  In addition to Dollars for Benefits, Class Members shall be entitled to receive compensation from the Common Fund for other pecuniary and non-pecuniary damages, as follows:

a.    Default Common Fund Amount.  Each Class Member shall be entitled to receive a Default Common Fund Amount pursuant to the Allocation Plan.

b.    Out-of-Pocket Expense Submission.  Each Class Member shall be entitled to submit an Out-of-Pocket Expense Submission evidencing expenses, other than or in addition to expenses reimbursed by any Dollars for Benefit Payment they are entitled to pursuant to paragraph 66 above, incurred during the Class Period and allegedly arising from Aetna's denial of their request for infertility coverage.  Any such submission shall be made in accordance with the requirements set forth in the Allocation Plan.  The Administrator will collect, process, and categorize all submissions, and after

the Bar Date, will send all Out-of-Pocket Expense Submissions to the Special Master for evaluation.

c.     Miscellaneous Harm Submission.  Each Class Member shall be entitled to submit a Miscellaneous Harm Submission evidencing additional, miscellaneous harm, not otherwise captured above, allegedly arising from Aetna's denial of their request for infertility coverage during the Class Period.  Any such submission shall be made in accordance with the requirements set forth in the Allocation Plan.  After the Bar Date, the Administrator will send all Miscellaneous Harm Submissions to the Special Master for evaluation.

d.     Special Master Evaluation.  After the allocation of all Default Common Fund Amount payments, the Special Master shall evaluate all submitted Out-of-Pocket Expense Submissions and Miscellaneous Harm Submissions and divide any funds remaining in the Common Fund after allocation of the Default Common Fund Amount among members who made such submissions, in the Special Master's sole discretion and pursuant to the Allocation Plan.

e.     Additional Payment to Class Members.  After all payments pursuant to paragraphs 67(a)-67(d) are made, to the extent there are funds remaining in the Common Fund that the Administrator determines are administratively feasible and reasonable to redistribute, the Administrator will divide the remaining funds equally among all Class Members in an additional payment.

27

f.  <u>Charitable Contribution</u>.  After all payments pursuant to paragraphs 67(a)-67(d) are made, to the extent the Administrator determines that any funds remaining in the Common Fund are administratively infeasible and unreasonable to redistribute, the Parties will ask the Court that any funds remaining in the Common Fund be donated to a qualified charity agreed to by the Parties.

g.  <u>Timing of Common Fund Payments</u>.  Common Fund payments shall be processed and paid as follows:

i.  After the Administrator has allocated the Default Common Fund Amount pursuant to the Allocation Plan and the Special Master has determined and allocated the payments, if any, for Out-of-Pocket Expense Submissions and Miscellaneous Harm Submissions, the Administrator shall issue a check to each Class Member for their share of the Common Fund.

ii.  No payment from the Common Fund shall be made to Class Members before the Effective Date for Payment.  Claims will be processed between the date of Preliminary Court Approval and the Effective Date for Payment.

68.  <u>Untimely Claims</u>.  If a Class Member submits an untimely claim that is received by the Administrator within two (2) months of the Bar Date, Class Counsel shall have the discretion to instruct the Administrator to pay such claims if the claimant establishes "good cause" for their untimely submission, to be determined by Class Counsel in their sole discretion.  For any claims received more than two months after the Bar Date, the Parties may agree to accept them, or

such applicants may seek relief from the Court. Any payment of untimely claims shall be made out of any amount then remaining in the Common Fund (including funds remaining due to the failure of claimants to timely cash their checks). Depending on the timing of such untimely claims and the funds then available, untimely claimants who have established "good cause" may not receive any payment, may receive a pro-rata share of their Common Fund amount remaining in the Class Fund, and may not be entitled to payment from an additional Out-of-Pocket Expense Documentation Submission and/or a Miscellaneous Harm Submission.

69.     The Administrator shall contact Category B Class Members who submit deficient Attestations and Category C and Category D Class Members who submit deficient Attestations and/or Claim Form Submissions to provide them the opportunity to correct their Attestations and/or Claim Form Submissions. The Administrator shall contact all Class Members who submit deficient Out-of-Pocket Expense Submissions and/or Miscellaneous Harm Submissions to provide them the opportunity to correct the same.

70.     The Administrator is permitted for good cause shown (including proper documentation) to issue a Class Member's check in a name other than the name in Aetna's database associated with the Class Member.

71.     Award checks for Class Members who submit timely claims, and for Category A Class Members who elect not to opt-out, shall be valid for no less than 180 days after initial issuance; the Administrator may provide a reasonable shorter validity period for checks that need to be reissued. Award checks for Class Members who submit untimely claims that are accepted pursuant to paragraph 68 shall be valid for no less than 60 days after issuance. If a check is returned as undeliverable to the Administrator ("Returned Award Checks"), the Administrator will run CLEAR searches and remail to the address on file or to any updated address determined

by the Administrator using the national change of address registry within two weeks of receiving the returned check.

72.     Class Counsel has the discretion to void checks mailed to Class Members who submit timely claims and whose checks are not cashed within 180 days of issuance, and must provide Aetna a list of the same.  Class Counsel has the discretion to void checks after a shorter period of time for reissued checks or for checks for Class Members who submit late claims.   The Administrator will distribute a reminder notice 60 days prior to the check expiration date, will attempt to contact Class Members who have not cashed their checks via telephone or email to the extent a Class Member affirmatively provides a telephone number or email address, and will re-send the checks if a Class Member provides an alternative address. Money from uncashed checks shall not be returned to Aetna.  Class Counsel shall have the discretion to (a) reissue uncashed checks; (b) issue checks to persons who make late claims for good cause shown pursuant to paragraph 68; and/or (c) seek an award by the Court consistent with *cy pres* principles.

## PRESS RELEASE AND PUBLIC STATEMENTS

73.     The Parties will issue a joint press release announcing the proposed settlement of this matter, to be agreed upon by the Parties, to be issued on or about the time of the filing of the motion seeking the Court's entry of preliminary approval of the settlement.

74.     The Parties agree that they will not publish or communicate to any person or entity, any Disparaging (as defined below) remarks, comments or statements concerning the other Party.  "Disparaging" remarks, comments or statements as commonly defined would include, but are not limited to, those that impugn the character, honesty, integrity, motivation, morality or business acumen or abilities of the individual or entity being disparaged.  However, this paragraph

does not limit Plaintiffs' court filings or the Named Plaintiffs' abilities to publicize this Settlement, or to communicate remarks, comments, or statements concerning Aetna while seeking medical care, at a doctor's office or similar place, or in private.

### NOTICE PLAN

75.     Direct Mailing: Notice of this Civil Action and information on how to access the Claim Form Package on the settlement website or request copies from the Settlement Administrator shall be provided to potential Class Members via direct mailing.  Notice to all Potential Class Members will inform them that:

a.     They may be entitled to $2,300 if according to Aetna's databases their claim has not already been reimbursed for eligible infertility services for which they submitted precertification requests or claims that would have been covered by their healthcare plan if not for the Definition of Infertility; and

b.     They may be entitled to an amount greater than $2,300 if they incurred expenses described in paragraph 66(c) and submit a Proof of Greater Covered Care submission evidencing that they underwent procedures for which claims would have been reimbursed by their healthcare plan but for the Definition of Infertility in an amount greater than $2,300; and

c.     If Aetna has already reimbursed their claims for procedures described in paragraph 66(c), they are entitled to any difference between the amount their healthcare plan would have covered and the amount of said reimbursement upon submission of a Proof of Greater Covered Care submission evidencing that they underwent procedures for which claims

would have been reimbursed by their healthcare plan in an amount greater than the amount Aetna reimbursed; and

d.    They are entitled to submit additional an Out-of-Pocket Expense Submission and/or a Miscellaneous Harm Submission that may be compensated according to the Allocation Plan, attached as Appendix B. Disbursements are subject to the availability of money in the Common Fund. Members who submit an Out-of-Pocket Expense Submission and/or a Miscellaneous Harm Submission may receive less than they are requesting and in some circumstances may receive nothing at all.

e.    The Parties agree that they will send two sets of direct notices with the intention of using best efforts to identify all Potential Class Members with dates of service on or before May 31, 2024.

76.    The forms of notice to Potential Class Members shall otherwise differ depending on the category of potential class member, and will all be filed along with the motion for Preliminary Approval:

a.    Notice to potential Category A Class Members, in a form the Parties will agree upon prior to submission of the preliminary approval motion, shall inform them that, in addition to the information in paragraph 75, they are entitled to the Default Common Fund Amount should they elect not to Opt-Out, without any further submission.

b.    Notice to potential Category B Class Members, in a form the Parties will agree upon prior to submission of the preliminary approval motion, shall inform them that, in addition to the information in paragraph 75, they are

entitled to the Default Common Fund Amount upon submission of the Attestation.

c.  Notice to potential Category C Class Members, in a form the Parties will agree upon prior to submission of the preliminary approval motion, shall inform them that, in addition to the information in paragraph 75, they are entitled to the Default Common Fund Amount upon submission of an Attestation and Claim Form Submission, in accordance with the requirements set forth in paragraph 65(c).

d.  Notice to potential Category D Class Members, in a form the parties have agreed to since submission of the preliminary approval motion, shall inform them that, in addition to the information in paragraph 75, they are entitled to the Default Common Fund Amount upon submission of a Claim Submission Form, and an Attestation Form for members in Category D-B, in accordance with the requirements set forth in paragraph 65(d).

77.  Addresses for Class Members:  The address used for the initial mailing to Potential Class Members shall be the address on file with Aetna if they are current Aetna members; for former Aetna members, the Administrator will verify the last known address according to Aetna's database through address research, including through the national change of address database and, where the address research does not provide a high-confidence result, CLEAR searches.   If any notices are returned as undeliverable, the Administrator will carry out a second round of address research, including CLEAR, to identify a better address match for re-mailing the notice.

78.     On or about 60 days before the Bar Date, the Administrator shall send Potential Class Members a reminder notice.

79.     On or about 30 days before the Bar Date, the Administrator shall send Potential Class Members a second reminder notice.

80.     Aetna will publish the Summary Notice on its website in a location agreed upon by the Parties.

81.     Class Counsel and the Administrator will publish the Summary Notice in various media outlets and social media forums, as listed in the Publication Notice Plan, in an effort to give notice to as many Potential Class Members as is reasonably practicable.

82.     Upon receiving a claim submission through the settlement administration website, the Administrator shall provide an immediate confirmation on the website, as well as a confirmation by email for those who provided email addresses, that the Administrator has received the information submitted.   After receiving a completed Attestation from Category B Class Members, an Attestation and Claim Form Submission from Potential Category C Class Members and Potential Category D-B Class Members, or a Claim Form Submission from Potential Category D-A Class Members, the Administrator shall send the potential Class Member a confirmation letter confirming receipt of the above forms, as applicable, or a confirmation by email confirming receipt of the same if the Class Member has provided an email address.

83.     Along with the motion for Final Approval, pursuant to a schedule to be set by the Court, Class Counsel shall file or cause to be filed with the Court a declaration from the Administrator confirming that notice was provided consistent with this Settlement Agreement and all Orders concerning Notice entered by the Court.

## ADMINISTRATOR

84.    The Administrator's duties shall include administering this class action settlement, including but not limited to the following matters: (1) issuing notice, including information about the right to object or Opt-Out of the settlement; (2) distributing Claim Form Packages to and receiving executed forms from the Claim Form Package from Class Members, as applicable pursuant to paragraph 75; (3) establishing and administering the Common Fund and, upon conclusion of the process, closing the Common Fund; (4) determining eligibility for Default Common Fund Amount awards on the basis of information provided by counsel for the Parties and by the Class Members, validating the claims, and providing Class Counsel and Defendant's Counsel a list of those persons found preliminarily eligible every 30 days; (5) evaluating Out-of-Pocket Expense Submissions and calculating the amounts of payments for out-of-pocket expenses pursuant to the Allocation Plan, in conjunction with the Special Master; (6) issuing and mailing payments to eligible Class Members, and issuing and filing all required tax forms and statements; (7) responding to inquiries from Class Members about this Agreement and the procedures contained herein, including by the use of a toll-free number and a website; (8) collating all objections to the Agreement for Class Counsel and Counsel for Defendant; (9) creating a database of Class Members who have filed timely and valid forms, as applicable pursuant to paragraph 65; (10) creating a database of Opt-Outs; (11) coordinating and advancing payment for publication notice per paragraphs 65(e), 81; (12) providing the Parties with regular bills and a final accounting; and (13) to the extent not listed here, the tasks enumerated in the Administrative Proposal attached as Appendix A.

85.    Aetna will pay the costs incurred by the Administrator separate and apart from the money used to fund the Common Fund.

**DATA**

86.     Aetna agrees to facilitate the work of the Administrator by, among other things, obtaining and providing to the Administrator information, data, documents, and records in Aetna's possession that are relevant and appropriate to facilitate the administration of this Agreement.  As soon as practicable, the Administrator will sign a Business Associate Agreement to facilitate handling PII and PHI belonging to potential Damages Class Members.

87.     Within 90 days of the Execution Date, Aetna will provide the Administrator with an agreed-upon list of Category A Class Members (for the first direct notice) and, where available, the full names of all such individuals, the individual's Social Security Number, date of birth, last known address, email address, cellphone number, and whether the Member is a current or former Aetna member.  Thereafter, Aetna will provide the Administrator with another agreed upon list of Category A Class Members containing the same information, where available, for the second direct notice pursuant to Paragraph 75(e) in January 2025.

88.     Within 90 days of the Execution Date, Aetna will provide the Administrator a list of the agreed-upon Aetna members who will receive notice of their eligibility for Categories B, C and D (for the first direct notice) and where available, the full names of all such individuals, the individual's Social Security Number, date of birth, last known address, email address, cellphone number, and whether the Member is a current or former Aetna member.  Thereafter, Aetna will provide the Administrator with another agreed upon list of Category B, C and D Class Members containing the same information, where available, for the second direct notice pursuant to Paragraph 75(e) in January 2025.

## CONFIDENTIALITY

89.    PHI and PII belonging to Potential Class Members, including any aggregated data collected by the Administrator for the purposes of providing notice, and any updates to such data through aggregation or address research, shall be treated as private and confidential ("Confidential Information"), and shall not be disclosed to anyone except Class Counsel, Defendant's Counsel, the Administrator, or the Court under seal.  No Party or the Administrator shall use Confidential Information for any other purpose other than in this litigation and for the administration of this Agreement.  All Parties and the Administrator shall take all possible steps to ensure that the Confidential Information concerning all Potential Class Members remains private and confidential.

90.    Nothing herein shall limit Class Counsel or the Administrator's ability to disclose data about a Class Member to that Class Member or their counsel.  Nothing herein shall limit Aetna's ability to retain or use data and information about Class Members it possesses separate from the administration of this settlement, and nothing herein shall require Aetna to destroy such data/information.

91.    In the event that any of the Parties or the Administrator is served with a court order or subpoena providing for or requiring disclosure of Confidential Information, they shall inform all other Parties no later than 2 business days after receiving such service, and in any event before disclosing any such information.  Before any such information is disclosed, any Party shall have standing to challenge the disclosure of such information before a court of competent jurisdiction.

## COMMON FUND

92.     The Administrator will apply for a tax ID number, if necessary, and take all necessary steps for the timely creation of the Common Fund, to be held in a QSF bank account.

93.     The Administrator shall provide Aetna the Employer Identification Number, a completed W-9 Form, and bank routing information for the Common Fund.

94.     The Administrator will provide to Class Counsel and Defendant's Counsel a monthly statement of expenses paid.   Neither Aetna nor Class Counsel nor the Class Representatives will be responsible for taxes, penalties, or interest incurred on the Common Fund. The Administrator shall issue all required IRS forms.

95.     Neither Aetna, nor Defendant's Counsel or Class Counsel have or will provide any advice or representations regarding any possible tax consequences of any payments or amounts received pursuant to this Agreement.

## ATTORNEYS' FEES AND COSTS

96.     At or about the time of the motion for Final Approval, Class Counsel will make an application seeking Court approval for attorneys' fees and expenses in the amount of $1,625,000.00.  Aetna shall not object or oppose (directly or indirectly) Class Counsel's application for attorneys' fees and expenses nor shall Aetna or its agents directly or indirectly encourage any person or entity to do so.

97.     Aetna will pay Class Counsel's attorneys' fees and costs separate and apart from the money used to fund the Common Fund.

## FUNDING OF THE SETTLEMENT

98.     Aetna shall pay all Administrative Costs to administer the Settlement and provide notice to Class Members.  The Administrator will carry out the tasks listed in the Administrative Proposal, attached as Appendix A.

99.     Within 30 days after Preliminary Court Approval, Aetna shall deposit the Common Fund Amount into the Common Fund.

100.    The Administrator has worked, and will continue to work, with Aetna on a process for invoicing and payment. Aetna will pay all invoices received from the Administrator in a timely manner consistent with its internal policies.

101.    If the Agreement is not ultimately approved by the Court, Aetna will be responsible for all Administrative Costs incurred prior to such point, though to the extent the Administrator possesses any unspent Administrative Costs, they shall be returned to Aetna.

102.    A copy of the Administrator's final accounting shall also be provided to Aetna and Class Counsel.

103.    All Court-approved attorneys' fees and costs and payments to the Class Representatives shall be payable to Class Counsel by Aetna within 30 days of receipt of all documentation necessary to effectuate payment.

## CLASS REPRESENTATIVE SERVICE AWARD PAYMENTS

104.    Subject to the Court's approval, Aetna agrees to pay awards for the services provided to the Class by the Class Representatives and for any inconvenience, pain, suffering, and other non-pecuniary loss experienced as a result of having been a named plaintiff in this action as follows: $15,000 to Plaintiff Emma Goidel, $15,000 to Plaintiff Ilana Lee, $15,000 to Plaintiff Madeleine Lee, and $15,000 to Plaintiff Lesley Brown.  These service award payments are in

addition to any amounts otherwise due to the Class Representatives with respect to their individual claim as Class Members.  The Service Award Payments shall be paid directly by Aetna to Class Counsel for payment to the Named Plaintiffs. Aetna will pay the Service Award Payments separate and apart from the money used to fund the Common Fund.

## EXCLUSION FROM THE SETTLEMENT CLASS

105.     Any potential Class Member who wishes to be excluded from the Damages Settlement Class must mail a request to be excluded from the Damages Settlement Class ("Request for Exclusion" or "Opt-Out Request") to the Administrator and the Request for Exclusion must be received by the Administrator on or before the Bar Date.  Any Request for Exclusion must be in writing and state the name, date of birth, address, and social security number (if any) of the person requesting exclusion and contain a clear statement communicating that such person elects to be excluded from the Damages Settlement Class.  Originals of all Requests for Exclusion shall be retained by the Administrator until such originals are filed with the Court with dates, addresses, and social security numbers redacted. Named Plaintiffs will not request exclusion pursuant to this paragraph.  A list of all exclusions, as well as a copy of the written Requests for Exclusions sent to the Administrator, shall be provided to Class Counsel and Defendant's Counsel.

106.     Any Class Member who does not timely file a Request for Exclusion shall conclusively be deemed to have become a Class Member and to be bound by this Agreement and by all subsequent proceedings, orders, and judgments herein.

## OBJECTIONS AND EXCLUSIONS

107.     Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement, including Class Counsel's Attorneys' Fees and Expenses Application, may do so by filing an objection as set out in the notice to be filed along with the

motion for Preliminary Approval and described below.  However, a Potential Class Member who requests exclusion from the Damages Settlement Class may not file an objection regarding the terms of the Settlement Agreement.

108.    A Class Member who wishes to object must submit to the Administrator at the address provided in the notice their objection(s), as well as the specific reason(s), if any, for each such objection and whether the Class Member wishes to speak at the Fairness Hearing.  The objection must state whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.  The Administrator shall promptly send a copy of each objection it receives to Class Counsel and Defendant's Counsel by email.

109.    A Class Member's objection must include the name and docket number of this Action and must also include the following information about the Class Member: (a) name; (b) address; (c) telephone number; (d) email address, if available; and (e) signature.

110.    All objections must be received by the Administrator on or before the Bar Date.

111.    A Class Member may object on their own, or through counsel hired at their own expense.

112.    Any attorney hired by a Class Member for the purpose of objecting to the proposed Settlement must serve a notice of appearance on Class Counsel and Counsel for Defendant and e-file the notice of appearance using the Court's CM/ECF system.  The notice of appearance must be received by Counsel and filed with the Court on or before the Bar Date.

113.    Any Class Member who does not make an objection in the time and manner provided in this Agreement shall be deemed to have waived and forfeited any and all rights they may have to object and shall be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement unless otherwise allowed by the Court.

## APPEARANCE AT THE FAIRNESS HEARING

114.    Class Member attendance at the Fairness Hearing is not necessary. However, any Class Member who submits a timely written objection to the Administrator in accordance with the requirements set out in this Agreement may appear at the Fairness Hearing either in person or through personal counsel retained at the Class Member's own expense.

115.    Class Members who intend to appear at the Fairness Hearing on their own behalf must send a letter to the Administrator notifying the Administrator of their intention to appear at the Fairness Hearing.  Such letter must also include the following information about the Class Member: (a) name; (b) address; (c) telephone number; (d) email address, if available; and (e) signature.  This letter must be received by the Administrator on or before the Bar Date.  The Administrator shall promptly send a copy of each letter it receives to Class Counsel and Counsel for Defendant by email.

116.    If a Class Member retains personal counsel (at the Class Member's expense) to appear on their behalf at the Fairness Hearing, such counsel shall serve on Class Counsel and Counsel for Defendant and e-file using the Court's CM/ECF system a notice of intention to appear, which must be received by Counsel and the Court on or before the Bar Date.

117.    Any Class Member who does not submit a letter to the Administrator or whose personal counsel does not file a notice of intention to appear with the Court in the time and manner provided in this Agreement shall be deemed to have waived and forfeited any and all rights

42

they may have to appear at the Fairness Hearing and shall be foreclosed from appearing at the Fairness Hearing unless otherwise allowed by the Court.

118.     Any Class Member who submits an objection to the proposed Settlement shall be deemed to consent to the exclusive jurisdiction of the Court with respect to such objection and all issues that arise or relate to such objection, including any order issued or findings made by the Court regarding the objection.

119.     At the time Plaintiffs submit their motion seeking Final Approval of the Settlement, they shall also submit to the Court all of the timely requests for exclusion, objections, and Class Member letters indicating an intention to appear personally at the Fairness Hearing that have been timely submitted to the Administrator.

120.     Counsel for the Parties shall promptly inform each other of any submission served on them (or that otherwise comes into their possession) pursuant to paragraphs 105, 107-09, and 115-16.

## RELEASES

121.     Upon the Effective Date of Payment, in consideration for the agreements between the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Class Representatives and Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, and assigns shall hereby release, remise, and forever discharge Aetna, its predecessors, successors, and assigns, together with all past and present representatives, officers, directors, attorneys, agents, employees, privities, and insurers,  from each and every Released Claim, as defined in the following paragraph, and shall forever be barred and enjoined from initiating, continuing, filing, or otherwise prosecuting any Released Claim against any of the Released Parties.  Unless a Class Member Opts-Out of the

43

Settlement pursuant to paragraph 105 above, this release shall apply whether or not such Class Member has executed and delivered any form from the Claim Form Package or otherwise actively participated in the Settlement.  A proposed stipulation of dismissal with prejudice will be filed along with the motion for Preliminary Approval, which will provide for the retention of exclusive jurisdiction by the Court, and any appellate court from which appeals of the Court's decisions may properly be brought, for a period of four (4) years from the date of entry of the Final Approval Order for the implementation and enforcement of the terms of this Agreement.

122.    Other than those claims specified in paragraph 123, below, every Class Member, except for those who Opt-Out pursuant to paragraph 105 above, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged, and dismissed all claims or causes of action that were or could have been raised by the Class Representatives and/or the Class or any Class Member based on the factual allegations in the Complaint and/or the Amended Complaint, including but not limited to alleging that Aetna or any of the Released Parties is liable under 42 U.S.C. § 18116(a), N.Y. Exec. Law § 296(2)(a), N.Y.C. Admin. Code § 8-107(4), and/or 20 U.S.C. § 1681 et seq., and 42 U.S.C. § 2000e et seq., including any discrimination laws or regulations incorporated thereunder, for discrimination on the basis of sex, sexual orientation, and gender identity during the Class Period ("Released Claims").  The Released Claims include any and all claims or causes of action that were or could have been raised by the Class Representatives and/or the Class or any Class Member arising from or relating to any Commercial Plans covered by this settlement for (1) any and all pecuniary injury, loss or damage, including but not limited to plan benefits and out-of-pocket costs or expenses; (2) any and all non-pecuniary injury, loss or damage, including but not limited to emotional distress, mental anguish and other intangible non-pecuniary harm or injury; (3) any and all civil penalties or fines and exemplary or punitive

44

damages; (4) any and all administrative claims for benefits under ERISA or for relief under any civil rights or discrimination law or regulation; and (5) any and all manner of retrospective and prospective regulatory, administrative, injunctive or declaratory relief.  For the avoidance of doubt, "Released Claims" include only those claims that have been or may be raised by a New York member of a Commercial Plan in any pending or future putative class action lawsuits alleging that the policies, plan terms, and/or practices described in the Complaint and/or Amended Complaint are unlawful.  This release shall be with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.  No Opt-Out shall share in any monetary benefits provided by this Agreement.

123.    To the extent a new or renewing commercial self-funded plan sponsor that otherwise provides coverage for infertility services requests to deviate from the New IUI Policy or whose plan does not conform to the changes to CPB No. 327 outlined in paragraphs 57-58, Aetna agrees to use best efforts, at the next renewal or when first approached by a new commercial self-funded customer, to request to include a clause in its contract with that self-funded plan sponsor that requires the self-funded plan sponsor to indemnify Aetna for any costs incurred to defend against any claims brought in connection with that self-funded plan sponsor requiring individuals with a uterus in an Eligible LGBTQ+ Relationship to pay more for infertility services than individuals with a uterus with a sperm-producing partner.  The term "best efforts" in this context shall mean that Aetna will make this request of all self-funded plan sponsors, unless a sponsor uses a contracting process that makes it impracticable for Aetna to make such a request. The parties understand and agree, however, that nothing in this agreement shall require Aetna to refuse to renew or administer a self-funded plan for a sponsor who requests such a deviation and who

declines Aetna's request to include such an indemnification clause in its contract or for which it is impracticable for Aetna to make such a request. The parties further understand and agree that nothing in this Agreement shall be construed to bar any claims of Class Members against Aetna or a self-funded plan or plan sponsor that deviates from the New IUI Policy or whose plan does not conform to the changes to CPB No. 327 outlined in paragraphs 57-58.

124. The Parties and Class Members acknowledge that the covenants and promises made by Aetna herein constitute adequate consideration in exchange for the releases in paragraphs 121-122.

125. Nothing in this Agreement shall be construed to bar any claims of Class Representative or Class Members based on or arising out of events occurring outside of the Class Period. Nor shall anything in this Agreement be construed to bar any claims by Class Representatives or Class Members based on or arising out of claims in any class action certified as of the Effective Date, other than this Civil Action, in which the Class Representative or Class Member already is a member of the certified class.

## MUTUAL FULL COOPERATION

126. The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Agreement and exercise good faith efforts to accomplish the terms and conditions of this Agreement.

127. The Parties hereby agree not to appeal or challenge any aspect of this Agreement, or to otherwise collaterally attack or challenge this Agreement.

128. The Parties will take all necessary and appropriate steps to obtain approval of the Agreement and dismissal of the action with prejudice. If the District Court approves this

Agreement, and if there is an appeal from such decision by a non-party, Defendant will join Class

Counsel in defense of this Agreement on any such appeal or subsequent proceeding.

129.   Plaintiffs will move for Preliminary Approval and Final Approval.

130.   The Parties shall propose to the Court for approval the following settlement

schedule:

- Deadline to submit forms from the Claim Form Package, file Objections, or Opt-Out (Bar Date): 45 days before the Final Approval Hearing;

- Deadline to move for Final Approval: 20 days before the Final Approval Hearing; and

- Final Approval Hearing: at least one (1) year after the Preliminary Approval Date.

## EFFECT OF THE AGREEMENT ON THE PENDING CIVIL ACTION AND CONTINUING JURISDICTION

131.   The Court, and any appellate court from which appeals of the Court's

decisions may properly be brought, shall retain jurisdiction for the implementation and

enforcement of the terms of this Agreement for a period of four (4) years from the date of entry of

the Final Approval Order, and all Parties hereto and their counsel shall submit to the exclusive

jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in

this Agreement.

## MODIFICATION OF THE AGREEMENT

132.   This Agreement represents the entire agreement among the Parties, and no

oral agreement entered into at any time nor any written agreement entered into prior to the

execution of this Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the

terms and conditions contained herein, or to determine the meaning of any provisions herein.  This Agreement can be modified only on the written consent of all the Parties.

## COUNTERPARTS

133.    This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument, and it will be binding when it has been executed and delivered by the last signatory.  A facsimile or scanned signature is an original signature for purposes of this Agreement.

## GOVERNING LAW

134.    This Agreement shall be governed by and construed and interpreted according to the laws of the State of New York without reference to conflicts of law principles.

## MUTUAL INTERPRETATION

135.    The Parties stipulate that this Agreement was negotiated on an "arm's length" basis between parties of equal bargaining power to resolve a bona fide dispute between the Parties concerning liability and the availability of damages.  Also, Class Counsel and Counsel for Defendant jointly drafted this Agreement.  Accordingly, this Agreement shall not be construed in favor of or against any of the Parties.  Neither Party shall be considered the drafter of this Agreement for purposes of interpreting the Agreement, or the application of any rule of construction.

## BINDING UPON SUCCESSORS

136.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective personal representatives, administrators, heirs, successors, and assigns.

## NULLIFICATION

137.    This Agreement is null and void in the event that any of the following do not occur:

    i.    Preliminary Approval of this Agreement by the Court; or

    ii.    Final Approval by the Court or an appellate court with jurisdiction.

Dated: November 4, 2024
    New York, NY

_____
EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Zoe Salzman
Debra L. Greenberger
Eric Abrams
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

NATIONAL WOMEN'S LAW
CENTER
Michelle Banker
Noel R. León
Alison Tanner (*pro hac vice*)
Sudria Twyman (*pro hac vice*)
1350 Eye Street NW, Suite 700
Washington DC 20005
(202) 588-5180

*Attorneys for Plaintiffs and the
Putative Class*

_____
BAKER BOTTS LLP
Earl B. Austin
Sarah Reeves
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500

CALCAGNI & KANEFSKY LLP
Mariellen Dugan
One Newark Center
1085 Raymond Blvd, 14th Floor
Newark, New Jersey 07102

*Attorneys for Defendant*

# Appendix A

Atticus Administration, LLC
Chris Longley - CEO

**Goidel v Aetna**

Prepared for

**Eric Abrams | Attorney**
eabrams@ecbawm.com
P: 212.763.5000

Emery Celli Brinckerhoff Abady Ward & Maazel, LLP
600 Fifth Avenue at Rockefeller Plaza, 10th Floor
New York, NY 10020



Class Action Administration

**Estimate E2024-01-E07**
Goidel v Aetna

Prepared on April 25, 2024
By Chris Longley – CEO | Atticus Administration LLC

April 25, 2024

# Estimate Summary

| Atticus Services & Cost Description | |
|---|---|
| NOTICE MAILING-Mailed First Class | $101,324 |
| *Initial Notice (22 to 28 pages) and BRE (3 versions)* | Included |
| *Undeliverable/Return Mail Processing* | Included |
| *Enhanced search services (75 individuals)* | Included |
| *Reminder postcards notices (2 rounds)* | Included |
| *Digital Ad media plan and press release* | Included |
| *English only* | Included |
| PROJECT MANAGEMENT/ADMIN FEES/Technical | $16,050 |
| CAFA (limited scope) | $ 350 |
| CLAIMS   [95% of 75] + [30% of 139] = 113 | $1,695 |
| COMMUNICATIONS | $5,908 |
| *PO Box rental* | Included |
| *800# with IVR and live operators* | Included |
| *Case website (interactive,3 versions of claims filing)* | Included |
| *correspondence, opt-outs, objections* | Included |
| FUND, TAX REPORTING | $1,934 |
| *setup QSF, file annual tax returns, file & 1099's.* *1099's mailed with check (no postage)* | included |
| DISTRIBUTION | $3,338 |
| *check printing, payment calculation & verification, bank fees* *includes ONE round of distributions* | included |
| **TOTAL:** | **$130,599** |

## Key Assumptions

- Class Size: **5,621 potential class members.**
- Notices in English only (22 to 28 pages for each notice packet, including claim form and BRE).  There will be three versions of notice – customized to the respective sub-group.
- Noticing includes enhanced search lookup services for 75 individuals.
- Noticing includes 2-rounds of reminder postcards
- Notice plan includes a press release and a digital Ad campaign (see separate media plan for details).
- Data review, cleansing and preparing file for mailing; including NCOA, and new address searches (skip-tracing).
- Claims anticipated at 30% (see pricing variables below).
- Communications includes PO box rental, 800# with IVR, live operator phone coverage and correspondence.
- Communications includes a case website with interactive (claims filing) capabilities.
- Award checks sent to all class members that file a valid claim.

**Options**

- CAFA priced as a limited scope CAFA, if full scope CAFA is necessary, adds $1,500.
- Claims levels for Category B subclass currently priced at 30%, if <20% reduces fees by $200, if =<15%, reduces fees another $200.
- Pricing to retain a Special Master will be mutually agreed upon pending necessity (if residual funds exist from the common fund).

PRINT NAME

Client Signature

*By signing above, I understand and agree to the pricing terms and services to be provided by Atticus Administration for the stated project.*

**PLEASE NOTE:** *This estimate and pricing is for the services stated herein and is valid for 30 days from the date of the estimate. If the Settlement Agreement or other service scope document(s) require additional services not included or priced in this estimate, we will separately price those scope changes and submit an updated quote prior to proceeding with the work.*

ROLE

Date

*Payment Terms:*
*85% payable at Notice*
*FINAL 15% payable at Distribution*



Estimate 02/2024 · FOR - Voided - Review                                              June 25, 2024

# Detailed Budget

| Atticus Services & Cost Description | | | |
|---|---|---|---|
| **DESCRIPTION** | **UNITS** | | **SUBTOTAL** |
| | | | |
| **NOTICE MAILING (Data Cleansing & Analysis) Mailed First Class** | **5,621** | **Class Mbrs** | **$101,324** |
| *Class Data List - Cleaning & Processing* | 12.00 | Hrs | $1,482 |
| *Class Notice Create, Review, Proof, Finalize* | | | $16,838 |
| *Digital Ad Campaign* (Social Media Ads) | | Ads | $62,334 |
| *Print Published Notice* | NONE | Ads | $0 |
| *Press Release* | | | $1,000 |
| *PRINTING Class Notice   22-28 pgs: 12-14 shts w/QR code (3-versions)* | 5,621 | notices | $7,823 |
| *Postage Stamp (within 1 ounce max weight)* | 5,621 | ct to mail | $4,087 |
| *Postcard reminder notices* (2 rounds) | 6,000 | postcards | $3,315 |
| *Enhanced addess lookup service* | 75 | est ct | $970 |
| *Undeliverable/ NCAO /Return Mail Processing & Remail* (15%) | 450 | 8% of class | $1,279 |
| *Notice Request Re-Mailing* | 281 | 5% of class | $2,196 |
| **PROJECT MANAGEMENT** | **75** | **hrs** | **$15,000** |
| **TECHNICAL SET UP (includes project kick-off)** | **6** | **hrs** | **$1,050** |
| **CAFA (limited scope)** | | | **$350** |
| **CLAIMS** | **113** | | **$1,695** |
| **COMMUNICATIONS** | | | **$5,908** |
| *Telephone - Set-Up + Monthly Fee* | 12 Months | | $263 |
| *Website (INTERACTIVE claims filing capabilities)* | 12 Months | | $2,500 |
| *Telephone - Messages/IVR (live operators)* | 12 Months | | $2,133 |
| *PO Box - Setup & Monthly Fee* | 12 Months | | $100 |
| *Correspondence - Mail* | v arious | | $913 |
| **FUND, TREASURY & TAX Reporting** | | | **$1,934** |
| *Set-Up QSF* | 2.00 | Hrs | $260 |
| *Prepare/File Annual Fund Return and 1099/1096 filings* | 8.00 | Hrs | $1,040 |
| *Mail  1099's*   no postage - mailed with check | - | postage | $0 |
| *W9 Solicitations* (outreach, correspondence) | 4.00 | Hrs | $520 |
| *Print  1099's* | 113 | 1099's | $114 |
| **DISTRIBUTION, Payment Calculations & Reporting** | | | **$3,338** |
| *Cover Letter & Check - Design/Review/Finalize* | 4.00 | Hrs | $494 |
| *Payment Data - Calculate & Verify Payments* | 6.00 | Hrs | $741 |
| *Prepare Payment Reports* | 6.00 | Hrs | $741 |
| *Check - Print Set-up/Printing/Mail Prep* (2 checks per claimant) | 226 | checks | $305 |
| *Check Mailing Postage* | 226 | mailed | $145 |
| *Check - Undeliverable/ NCAO /Return Mail Processing & Remail* (5% Return) | 281 | 5.0% est | $325 |
| *Bank Fees (Account Set-Up & Monthly Fee)* | 24 | months | $586 |
| **DATA STORAGE** | n/a | | **$0** |
| | **TOTAL** | | **$130,599** |

## Operating Assumptions

- Class Size: **5,621 potential class members**

- Class Notice forms (three versions) 22 to 28 pages + a BRE). Price includes postage and handling fees. Notice in English only.

- Data review, cleansing and preparing file for mailing; including NCOA, and new address searches, and skip tracing if required.

- Communications includes, PO BOX and mail correspondence and toll-free 800# with IVR and live operators.

- Communications includes a case website with claims filing capabilities.  Claims filing will require customization to each of the three separate sub-groups.

- Project management assumes 81 hours at a blended rate of $198 per hour. Includes summary reporting on a weekly basis.

- Qualified Settlement fund assumes 9 months. Price includes tax reporting both state and federal returns. All bank fees are included in pricing.

- Includes one round of distributions.

- Disbursement includes positive pay "anti-fraud" features.  Two rounds of distributions included.



# Scope Details

---

| **sub-Class Details (potential class members)** | **Related Claims Process and Award notes** |
|---|---|

- Class Size is actually a *POTENTIAL* class of: **5,621**
  **separated into three sub-categories as follows:**

**Category "A" (est 75 individuals)**
- Basic sub-class, denied basic fertility coverage for sexual orientation
- Notice w/ Opt-OUT option only
- Send notice and request for address verification
  up to 22 pages total with BRE to return any address update(s).
  also a QR code to update address only.

**Category "A"**
- There is NO required claims process for Tier 1 award.
- Sub-class A receive up to a $10,000 award payment
  ..unless they Opt-OUT
- May also claim out-of-pocket monies, Tier 2 award.
- This sub-class qualifies for "additional compensation"
  from common fund for additional intangible harm
  (subject to Special Master review), Tier 3 award.

**Category "B" (est 775 individuals)**
- These are POTENTIAL class members
- "Denied Fertility Service" sub-class, confirmed.
- Need to CLAIM (verify) part of defined group of sexual orientation.
- denied basic fertility coverage for sexual orientation
- Notice w/ CLAIM Form and BRE.
- Send notice and request for address verification
  up to 24 pages total with BRE to return claim form.
  also a QR code to file online claim.

**Category "B"**
- This sub-class must file a simple claims of ATTESTATION
  that they are part of the defined group of sexual
  orientation (the defined class) for Tier 1 award.
- These claims receive up to a $10,000 award payment.
- May also claim out-of-pocket monies, Tier 2 award.
- This sub-class qualifies for "additional compensation"
  from common fund for additional intangible harm
  (subject to Special Master review), Tier 3 award.

**Category "C" (est 4,771 individuals)**
- These are POTENTIAL class members
- Need to verify CLAIM (verify) part of defined group of sexual orientation.
- denied basic fertility coverage for sexual orientation
- Notice w/ CLAIM Form and BRE.
- Send notice and request for address verification
  up to 28 pages total with BRE to return claim form.
  Also a QR code to file online claim.

**Category "C"**
- This group must file a claim that proves they are part of the
  class and may only claim actual fertility treatment expenses
  incurred but denied for reimbursement from Aetna. These
  claims are this group's Tier 1 award.
- May also claim out-of-pocket monies, Tier 2 award.
- This sub-class qualifies for "additional compensation"
  from common fund for additional intangible harm
  (subject to Special Master review), Tier 3 award.



Eliminate 22024537 LCA | Voided 01/25/2024 25, 2024

# Scope Details (continued)

## Supplemental explanation of service line items…..

(1)   Notice Design is included in noticing pricing.

(2)   Monthly phone and URL charges are included in communications pricing.

(3)   Processing Details
  o   Claims:
    ▪   Creating paper form, developing processing procedures, copying, and scanning documents, data entry, staff training, creating online form validation and verification logic, and testing time, and staff time to verify claims.
    ▪   Management of Deficient claims, including development of cure letters, sending, receiving, and processing responses.
  o   Opt Out Processing Details

(4)   Communications includes:
  o   Website – content development and site build
  o   Telephone – drafting script, training CSRs, providing detailed call reporting.

(5)   Distribution Services includes:
  o   Monthly bank fees
  o   Account reconciliation
  o   Per Check bank transactional fees
  o   Breakdown of checks by Tiers 1, 2, and 3

(6)   Project Management/Admin/Technical Fees includes:
  o   Client meetings and correspondence
  o   Weekly and all reporting
  o   Handling class member escalations
  o   Day to day oversight and direction
  o   Declarations



Case 1:21-cv-07619-VSB-VF     Document 94-1     Filed 05/03/24     Page 54 of 68

# Scope Details (continued)

## sub-Class Details  claims & awards GRID

| | Tier 1 | | Tier 2 | | Tier 3 (Special Master) | |
|---|---|---|---|---|---|---|
| | **Default Payment Award** | | **Out-of-Pocket Payment Award** | | **Additional Extraordinary Expenses** | |
| | Fixed Fee (up to $10k ***) | | no MAX (limited by Common Fund ***) | | remaining Common Fund $$ *** | |
| | Claim Process | up to $10k | Claim Process | no max *** | Claim Process | no max *** |
| **Category A** | no claim necessary | | must claim (same OOP) claim process as noted below for Category C under Tier 1 | | must file valid claim subject to Special Master review | |
| | auto-pay unless individual Opts-OUT | | paid only if Common Funds remaining after Primary Awards paid | | paid only if Common Funds remaining after Primary Awards paid | |
| **Category B** | MUST claim "attest" to being part of defined group | | must claim (same OOP) claim process and noted below for Category C under Tier 1 | paid only if Common Funds remaining after Primary Awards paid | must file valid claim | paid only if Common Funds remaining after Primary Awards paid |
| **Category C** | MUST claim "attest" to being part of defined group AND MUST submit actual OOP qualifying expenses | | must claim (same OOP) claim process and noted below for Category C under Tier 1 | paid only if Common Funds remaining after Primary Awards paid | must file valid claim | paid only if Common Funds remaining after Primary Awards paid |

Claims Quantity (%'s) assumed across all three Tier categories (pursuant to client direction)

**\*\*\*  Priority of Award payouts from the Common Fund:**
**1st:** Fixed Fee Default Award payments (up to $10k ea)
  note. If these payments exceed the total Common Fund --- there will be NO Tier 2 or Tier 3 awards paid.
**2nd:** Out-of-Pocket expenses Award payments (no max $$ amount)
  note. While these claims/awards have no $$$ limit, they are inherently limited by the limitation of the Common Fund
**3rd:** Extraordinary Expenses (no max $$ amount)
  note. While these claims/awards have no $$$ limit, they are inherently limited by the limitation of the Common Fund



# Thank you

 **ATTICUS**

## Chris Longley – CEO

612-315-9007 (Direct)
651-755-2552 (Cell)
clongley@atticusadmin.com

1295 Northland Drive Suite 160
St. Paul MN 55120

www.atticusadmin.com

# Published Notice Plan Overview and Approach

**Goidel v Aetna, 1:21-cv-07619 Settlement**



Class Action Administration

Media Plan Summary and Options
Aetna  Settlement

# Commonly Used Media Terms

Case 1:21-cv-07619-VSB-VF    Document 94-1    Filed 05/03/24    Page 57 of 68

**Target Audience:** Net number of persons or different persons exposed to a media vehicle. It is a larger than a publication's circulation because it includes pass along readers who may obtain the publication second hand, and through indirect means.

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given time period.

**Impressions or Exposure:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the total target market population size based on multiple exposure by any given time period.

**Reach or Coverage:** Net percentage of a specific population group or target audience exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given time period. Reach factors out duplication, representing the total of different net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population.   For planning purposes an index score of 100 is to be considered good. Any number over 100 is considered as better level of concentration versus the general population. We look for high index numbers for target and micro targeting our audience for notice plan purposes. Target Audience: Net number of persons or different persons exposed to a media vehicle. It is a larger than a publication's circulation because it includes pass- along readers who may obtain the publication second hand, and through indirect means.



Case 1:21-cv-07619-VSB-VF    Document 94-1    Filed 05/03/2    Page 58 of 68











# Media Resources Used

A leading cross-platform measurement company that precisely measures audiences, brands and consumer behavior everywhere. The ComScore 2000 is an index that measures traffic and index of audiences that visit the top 2000 websites on the internet.

The world's leading market intelligence information company, with over 40 years of data and data analysis tracking consumer and market trends across the world.

GfK is the trusted source of relevant market and consumer information that enables its clients to make smarter decisions. More than 13,000 market research experts combine their passion with GfK's long-standing data science experience. This allows GfK to deliver vital global insights matched with local market intelligence from more than 100 countries. By using innovative technologies and data sciences, GfK turns big data into smart data, enabling its clients to improve their competitive edge and enrich consumers' experiences and choices.

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 products and services across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out of home exposure. Based on yearly face to face interviews of more than 26,000 customers in their homes MRI's survey of the American Consumer is the primary source of audience data for the US Consumer magazine industry and the most comprehensive and reliable source of multimedia data available.



# Audience Population Estimates for Potential Aetna Class

Campaign Objectives:

78% reach into target audience, on a 4 times frequency informing unknown class of its rights and options under the settlement.

Basic Plan Assumptions:

- Awareness campaign for LGBTQ Class Members who sought insurance coverage from Aetna for fertility healthcare services and were denied coverage.

- Campaign search terms, social media platforms, may be coupled with other types of products to ensure broadest possible reach into target audience for notification.

- Building a social community on Facebook, Reddit, and other agreed-upon social media platforms concentrating on the following online outlets: NY Times, Gothamist, WNYC/Gothamist, Times Union, Buffalo Spree, Democrat & Chronical, The Advocate, Go Magazine, Gay City News, Gay Parent Magazine, Parents Magazine and Aetna searches.

Highest Indexing for Audience For Media Planning Purposes

- Audiences with household incomes above $55,000 to $250,000.

- Heavy newspaper and internet consumers (92% regularly consume information from the internet).

- 82% visit at least two websites for purchase information or to gather news and information.

- Demographic profile will consist of members of the LGBTQ community, and focus on searches associated with fertility treatments, becoming parents, same-sex parenting, parenting issues.

-  Combining profiling of known class to internet and social media platforms –data analysis.

- 97% according to the PEW Research Center, with household incomes greater than $55,000 use the internet frequently.

# Target Audience Analysis

Since the purchase and financing of common consumer brands either through the internet or through a direct sales environment, is not specifically measured in our syndicated data search, a broad **GfK MRI demographic** profiling is used to profile an over inclusive target group. In this case a Tri-State (NY, NJ, CT) adult population, between the ages of 23-54, in a committed relationship, and seeking or are of childbearing ages, who purchased healthcare insurance or related products, and sought fertility or related services, are members of the LGBTQ community,  with a household income over $55,000 but under $250,000. Those fitting the demographic profile of a purchaser/finance consumer- is **458,000** adults between the ages of 23-54.

Knowing the characteristics, the purchasing patterns, media consumption, interests and habits of the target audience of Class Members aids in our media selection process and planning for targeting and social media ad purchases.

**Class Members**
Those LGBTQ community members who sought coverage for fertility and insemination treatments to have a child but were denied coverage in New York during the  Class Period.

**Demographic Highlights-MRI GfK Data Set For Media Planning Purposes** (Red indicates our target focus for advertising)
- The Target audience will focus on a consumer in committed LGBTQ relationships, and of childbearing age.
- Highest potential targets will be the  Gen-X Market (48%) - followed by  Millennials (53%).
- Income ranges of our Target audience is $55,000 to $250,000.
- Average education level, with 62% having completed at least one year of college, and 82% having a high school degree.
- Heavier concentration in rural or suburban areas over major metropolitan areas.

**Media Consumption-*CommScore2000***
*CommScore2000* is a source that tracks the web traffic for the top 2000 websites on the internet, which accounts for more than 85% of all internet traffic in the United States.  Once engaged, we will provide the top 10 websites that our target audience will visit for purchase information, and our plan will be concentrated on ad placement for those sites. Identified platforms of interest includes the following platforms**: NYT, WNYC/Gothamist, Times Union, Buffalo Spree, Democrat & Chronicle, The Advocate, Go Magazine, Gay City News, Gay Parent Magazine, Parents Magazine.**



# Media Consumption of our Target Audience

ATTICUS

**Gen-X and Millennial**

➤ **Facebook** reach is strong
   72% of Adults, with heavy concentration within our targets use FACEBOOK.
      82% of those 18-29
      79% of those 30-49
      64% ages 50-64
   78% of individuals in households of HHI $75k+ are on Facebook

➤ **Mobile Device** Reach a Must for Notification Effort
   47% of Adults live in a household with mobile only internet access.
   92% of Adult population has a cell phone.
   92% use Mobile device for internet access when conducting purchase research.

➤ 97% of adults with access to the internet use **Search Engines**
   76% use Google
   20.7% use Bing
   10% use Yahoo

**Newspaper Readership is heaviest among the Gen X population, and least among the Millennial Market according to the PEW Research Center.**

➤ 20% of the Millennial Market reads a print Newspaper as compared to 32% who read an online version.
concentration among the demographic groupings.
➤ Social Media Platforms and local news platforms is still the preferred choice for local news-75% read a local community paper.





# Go-To-Market Strategy

Case 1:21-cv-07619-VSB-VF    Document 94-1    Filed 05/03/24    Page 62 of 68

**Overview**

Based on our research, Atticus recommends a mix of **digital notice banners and purchased Google search terms,** (mobile and desktop), **social media**, including a dedicated **Facebook** page along with Reddit, **Instagram** and **TikTok** targeted ads, to supplement the direct mail Notice to ensure proper reach into the target audience. Ad placement will be a regional concentrated to the Class demographic which will be emphasized to targets generated from Data File analysis and potential geographic areas of concentration.

**Plan Delivery**

The combination of verifiable impressions from published notice, digital notice banner ads, paid search and organic search terms, and social media, optimized to drive traffic to the Settlement Website with online claims filing capability. The website will have detailed information about the Class Member's rights and options. **Our Media Notice Plan will reach approximately 78%+ of the likely Class Members on an average of 4x times frequency, for an estimated 3 to 6 million impressions.**

**Campaign Launch**

In addition to direct mail notice and digital published notice, Atticus recommends *a Press Release be issued announcing the Settlement* to targeted platforms that Class Members will most likely read or follow, either in print or online. In some instances, Atticus may choose to pay for placement in target websites or news outlets to supplement reach efforts.

**Schedule**

The Notice campaign will commence after Preliminary Approval and shall continue for a 90-day period thereafter, during the claims filing period.

Additionally, our plan includes a **Settlement Website** with claims filing capability that will be linked through the digital notice campaign. The website will also provide the full Notice, key filing dates, Court documents, FAQs, and contact information such as Settlement email, address, and 1-800# toll-free line.

**Media Channel Considerations:**

- **Digital Notice – Mobile & Desktop**
    - Display Banner Ads - Programmatically optimized to hit 2 to 5 of the top ten websites visited by our target audience
    - Paid Search - Keyword advertising (Google, Yahoo, etc.)
    - Social Media (Facebook, X, Instagram, TikTok, etc.. Or TBD)
    - CommScore 2000 Banner Ad placement



# Appendix B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMMA GOIDEL, ILANA LEE, MADELEINE
LEE, And LESLEY BROWN, On Behalf Of
Themselves And All Others Similarly Situated,

Case No. 1:21-cv-07619 (VSB)

*Plaintiffs*,

-against-

AETNA LIFE INSURANCE COMPANY,

*Defendant*.

## ALLOCATION PLAN

1.      In connection with the Settlement Agreement ("Agreement") made and
entered into by the Parties as of April 18, 2024, filed herewith, this Allocation Plan has been
drafted by Plaintiffs, subject to the approval of the Court.

2.      Aetna has reviewed this Allocation Plan but takes no position as to
whether the Allocation Plan is appropriate, a determination that is solely in the hands of the
Plaintiffs and the Court.

3.      The purpose of this Allocation Plan is to outline the prioritization of
payments to eligible Class Members stemming from the Common Fund of $2,000,000.

4.      Unless otherwise indicated, capitalized terms in this Allocation Plan have
the same meaning as defined under the Agreement.

5.      As first priority, the Administrator will issue Default Common Fund
Amount payments, equal to $10,000, to eligible Class Members.  Eligibility will be determined
pursuant to Paragraph 65 of the Agreement.

1

6.      In the event that the total amount of the Common Fund is insufficient to fund payments of the Default Common Fund Amount to all eligible Class Members—*i.e.*, if there are more than 200 Class Members—the Class Members will receive equal pro-rata payments of the Default Common Fund Amount.

7.      All Class Members will have the opportunity to submit an Out-of-Pocket Expense Submission and/or a Miscellaneous Harm Submission, that may be reimbursed according to Paragraphs 9–12 below.

8.      The Administrator will send all Out-of-Pocket Expense Submission and Miscellaneous Harm Submissions to the Special Master for evaluation on a rolling basis, as they are received.  The Administrator will also send the Special Master, on a rolling basis, any Out-of-Pocket Expense Submissions or Miscellaneous Harm Submissions received after the Bar Date with good cause as determined by Class Counsel pursuant to Paragraph 68 of the Agreement.

9.      After all Default Common Fund Amount payments are made, as a second priority and to the extent money remains in the Common Fund, the Special Master will evaluate all submitted Out-of-Pocket Expense Submissions and determine the "Approved Out-of-Pocket Amount" to be paid to each eligible Class Member.

10.      The Approved Out-of-Pocket Amount will be equal to the costs represented on a Class Member's Out-of-Pocket Expense Submission, with the following limitations:

a.      Costs must have been incurred during the Class Period;

b.      Only the costs associated with the following out-of-pocket expenses are reimbursable up to the amount specified:

i.   IUI insemination, up to $1,200 per cycle;

2

    ii.  Consultations with medical professionals regarding IUI services, up to $640 per consultation;

    iii.  Donor sperm, up to $800 per vial beyond three vials for Class Members aged 37 years or younger;

    iv.  Ultrasound and bloodwork monitoring in connection with IUI cycles, including fertility check-ups, up to $1,200 per IUI cycle;

    v.  Medication related to fertility treatment, including Letrozole, Clomid, Gonadotropins, and trigger shots in connection with IUI cycles, if covered by the Class Member's plan, up to $6,000 total;

    vi.  Ovulation predictor kits, up to $60 per kit beyond three kits for Class Members aged 37 years or younger;

    vii.  Pregnancy tests, up to $20 per test beyond three tests aged 37 years or younger; and

    viii.  IVF insemination and related treatments, if covered by the Class Member's plan, and if the Class Member completed at least three IUI cycles for Class Members aged 37 years or younger, up to $10,000 per IVF treatment.

c.    After calculating the total reimbursable costs incurred pursuant to the above caps, the Administrator will offset the total costs incurred by the Dollars for Benefits Payment, as conveyed by Aetna to the Administrator within 90 days after the Bar Date pursuant to paragraph 66(d)(vi) of the

3

Agreement, to assist the Special Master in determining the final Approved Out-of-Pocket Amount.

11.     To the extent that insufficient funds remain in the Common Fund to reimburse all Approved Out-of-Pocket Amounts, the Special Master will instruct the Administrator to send pro-rata payments proportionate to the Approved Out-of-Pocket Amounts as determined pursuant to paragraphs 9-10, above.

12.     After all Default Common Fund Amount payments and payments for Approved Out-of-Pocket Amounts are made, as a third priority and to the extent there is money remaining in the Common Fund, the Special Master will evaluate any Miscellaneous Harm Submissions and determine whether any Miscellaneous Harm Submission warrants additional payment from the Common Fund and, if so, the amount of additional payment, in the Special Master's sole discretion.  The following harms are non-exhaustive examples of situations the Special Master may choose to consider "miscellaneous harms" warranting additional payment. The Special Master may determine that other harms are sufficiently extraordinary so as to warrant additional payment:

> a.     Extenuating circumstances rendering invasive medical fertility procedures uniquely traumatic for the individual, including for example, but not limited to, a history of sexual abuse, the need to terminate medically necessary but contraindicated medications while undergoing fertility treatments, miscarriage, or gender dysphoria;

> b.     Extreme delay or total loss of the ability to parent due to Aetna's challenged policy; and

4

    c.        Medical complications or miscarriage associated with having to undergo invasive medical fertility procedures.

    d.        Out-of-pocket costs not fully compensated under Paragraph 8(b) above or the Dollars for Benefits Payment.

13.     After all Default Common Fund Amount, Approved Out-of-Pocket Amount, and Miscellaneous Harm payments are made, to the extent there are funds remaining in the Common Fund that the Administrator determines are administratively feasible and reasonable to redistribute, the Administrator will divide the remaining funds equally among all Class Members in an additional payment.

14.     After all Default Common Fund Amount, Approved Out-of-Pocket Amount, and Miscellaneous Harm payments are made, to the extent there are funds remaining in the Common Fund that the Administrator determines are administratively infeasible and unreasonable to redistribute, the Parties will ask the Court that any funds remaining in the Common Fund be donated to a qualified charity agreed to by the Parties.

# Appendix B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMMA GOIDEL, ILANA LEE, MADELEINE
LEE, And LESLEY BROWN, On Behalf Of
Themselves And All Others Similarly Situated,

Case No. 1:21-cv-07619 (VSB)

*Plaintiffs*,

-against-

AETNA LIFE INSURANCE COMPANY,

*Defendant*.

## ALLOCATION PLAN

1.      In connection with the Settlement Agreement ("Agreement") made and entered into by the Parties as of April 18, 2024, filed herewith, this Allocation Plan has been drafted by Plaintiffs, subject to the approval of the Court.

2.      Aetna has reviewed this Allocation Plan but takes no position as to whether the Allocation Plan is appropriate, a determination that is solely in the hands of the Plaintiffs and the Court.

3.      The purpose of this Allocation Plan is to outline the prioritization of payments to eligible Class Members stemming from the Common Fund of $2,000,000.

4.      Unless otherwise indicated, capitalized terms in this Allocation Plan have the same meaning as defined under the Agreement.

5.      As first priority, the Administrator will issue Default Common Fund Amount payments, equal to $10,000, to eligible Class Members.  Eligibility will be determined pursuant to Paragraph 65 of the Agreement.

6.     In the event that the total amount of the Common Fund is insufficient to fund payments of the Default Common Fund Amount to all eligible Class Members—*i.e.*, if there are more than 200 Class Members—the Class Members will receive equal pro-rata payments of the Default Common Fund Amount.

7.     All Class Members will have the opportunity to submit an Out-of-Pocket Expense Submission and/or a Miscellaneous Harm Submission, that may be reimbursed according to Paragraphs 9–12 below.

8.     The Administrator will send all Out-of-Pocket Expense Submission and Miscellaneous Harm Submissions to the Special Master for evaluation on a rolling basis, as they are received.  The Administrator will also send the Special Master, on a rolling basis, any Out-of-Pocket Expense Submissions or Miscellaneous Harm Submissions received after the Bar Date with good cause as determined by Class Counsel pursuant to Paragraph 68 of the Agreement.

9.     After all Default Common Fund Amount payments are made, as a second priority and to the extent money remains in the Common Fund, the Special Master will evaluate all submitted Out-of-Pocket Expense Submissions and determine the "Approved Out-of-Pocket Amount" to be paid to each eligible Class Member.

10.     The Approved Out-of-Pocket Amount will be equal to the costs represented on a Class Member's Out-of-Pocket Expense Submission, with the following limitations:

a.     Costs must have been incurred during the Class Period;

b.     Only the costs associated with the following out-of-pocket expenses are reimbursable up to the amount specified:

i.   IUI insemination, up to $1,200 per cycle;

2

      ii.   Consultations with medical professionals regarding IUI services, up to $640 per consultation;

      iii.   Donor sperm, up to $800 per vial beyond three vials for Class Members aged 37 years or younger;

      iv.   Ultrasound and bloodwork monitoring in connection with IUI cycles, including fertility check-ups, up to $1,200 per IUI cycle;

      v.   Medication related to fertility treatment, including Letrozole, Clomid, Gonadotropins, and trigger shots in connection with IUI cycles, if covered by the Class Member's plan, up to $6,000 total;

      vi.   Ovulation predictor kits, up to $60 per kit beyond three kits for Class Members aged 37 years or younger;

      vii.   Pregnancy tests, up to $20 per test beyond three tests aged 37 years or younger; and

      viii.   IVF insemination and related treatments, if covered by the Class Member's plan, and if the Class Member completed at least three IUI cycles for Class Members aged 37 years or younger, up to $10,000 per IVF treatment.

c.   After calculating the total reimbursable costs incurred pursuant to the above caps, the Administrator will offset the total costs incurred by the Dollars for Benefits Payment, as conveyed by Aetna to the Administrator within 90 days after the Bar Date pursuant to paragraph 66(d)(vi) of the

3

Agreement, to assist the Special Master in determining the final Approved Out-of-Pocket Amount.

11.     To the extent that insufficient funds remain in the Common Fund to reimburse all Approved Out-of-Pocket Amounts, the Special Master will instruct the Administrator to send pro-rata payments proportionate to the Approved Out-of-Pocket Amounts as determined pursuant to paragraphs 9-10, above.

12.     After all Default Common Fund Amount payments and payments for Approved Out-of-Pocket Amounts are made, as a third priority and to the extent there is money remaining in the Common Fund, the Special Master will evaluate any Miscellaneous Harm Submissions and determine whether any Miscellaneous Harm Submission warrants additional payment from the Common Fund and, if so, the amount of additional payment, in the Special Master's sole discretion.  The following harms are non-exhaustive examples of situations the Special Master may choose to consider "miscellaneous harms" warranting additional payment. The Special Master may determine that other harms are sufficiently extraordinary so as to warrant additional payment:

      a.     Extenuating circumstances rendering invasive medical fertility procedures uniquely traumatic for the individual, including for example, but not limited to, a history of sexual abuse, the need to terminate medically necessary but contraindicated medications while undergoing fertility treatments, miscarriage, or gender dysphoria;

      b.     Extreme delay or total loss of the ability to parent due to Aetna's challenged policy; and

4

      c.      Medical complications or miscarriage associated with having to undergo invasive medical fertility procedures.

      d.      Out-of-pocket costs not fully compensated under Paragraph 8(b) above or the Dollars for Benefits Payment.

13.      After all Default Common Fund Amount, Approved Out-of-Pocket Amount, and Miscellaneous Harm payments are made, to the extent there are funds remaining in the Common Fund that the Administrator determines are administratively feasible and reasonable to redistribute, the Administrator will divide the remaining funds equally among all Class Members in an additional payment.

14.      After all Default Common Fund Amount, Approved Out-of-Pocket Amount, and Miscellaneous Harm payments are made, to the extent there are funds remaining in the Common Fund that the Administrator determines are administratively infeasible and unreasonable to redistribute, the Parties will ask the Court that any funds remaining in the Common Fund be donated to a qualified charity agreed to by the Parties.